Thomas S. Scott Jr.
        scott@scottandcain.com
Christopher T. Cain
        cain@scottandcain.com
SCOTT & CAIN
550 West Main Street, Suite 601
Knoxville, TN 37902
Phone: 865-525-2150

Laura L. Chapman
        lchapman@sheppardmullin.com
Yasamin Parsafar
        yparsafar@sheppardmullin.com
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111
Phone: (415) 434-9100
Fax: (415) 434-3947

Pro Hac Vice application to be pending

ATTORNEYS FOR PLAINTIFF, ACT, Inc.

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| ACT, Inc.,<br><br>                              Plaintiff,<br><br>v.<br><br>Worldwide Interactive Network, a Tennessee corporation,<br><br>                              Defendant. | CASE NO. _____<br><br>COMPLAINT FOR:<br><br>1. COPYRIGHT INFRINGEMENT<br><br>2. UNFAIR COMPETITION UNDER THE LANHAM ACT BY INFRINGEMENT OF COMMON LAW RIGHTS<br><br>3. FALSE DESIGNATION OF ORIGIN UNDER THE LANHAM ACT<br><br>4. FALSE ADVERTISING UNDER THE LANHAM ACT<br><br>5. BREACH OF CONTRACT<br><br>DEMAND FOR JURY TRIAL |

Plaintiff complains of defendant as follows:

## INTRODUCTION

1.      This is a case of copyright infringement, unfair competition, false designation of origin and false advertising under the Lanham Act. Defendant Worldwide Interactive Network ("Defendant" and/or "WIN") obtained and wrongfully used the copyrighted work and trademarks of Plaintiff ACT, Inc. ("Plaintiff" and/or "ACT") for Defendant's own benefit. Defendants also breached agreements between the parties that are governed by Iowa law.

2.      Plaintiff seeks injunctive relief to stop the infringement. Plaintiff also seeks money damages to compensate Plaintiff for the harm caused by Defendant and disgorgement of Defendant's ill-gotten gains, as well as attorneys' fees and costs.

## THE PARTIES

3.      Plaintiff ACT is, and at all times was, an Iowa corporation, having its principle place of business and headquarters located at 500 ACT Drive, P.O. Box 168, Iowa City, Iowa, 52243-1735. ACT was founded in 1959 and was formerly known as The American College Testing Program, Inc. It changed its name to ACT, Inc. in December 1996. ACT is a mission-driven, nonprofit organization dedicated to helping people achieve education and workplace success. ACT is a trusted as a leader in college and career readiness, providing high-quality assessments grounded in nearly 60 years of research. ACT offers a uniquely integrated set of solutions designed to provide personalized insights that help individuals succeed from elementary school through career. ACT provides more than a hundred assessments and research, information, and program management services in the broad areas of education and workforce development.

4.     Plaintiff is informed and believes, and on that basis alleges, that Defendant is a corporation organized and existing under the laws of the State of Tennessee, with its principal place of business located at 1000 Waterford Pl Ste 400 Kingston, TN 37763.

## JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction over the copyright claim pursuant to 28 U.S.C. §§ 1331 and 1338.

6.     This Court has subject matter jurisdiction over the Lanham Act claims pursuant to 28 U.S.C. § 1331.

7.     This Court has supplemental jurisdiction over the state law claim for breach of contract pursuant to 28 U.S.C. § 1367.

8.     This Court has diversity jurisdiction over all claims pursuant to 28 U.S.C. § 1332, as there is complete diversity, as Plaintiff is a citizen of the State of Iowa and Defendant is a citizen of the State of Tennessee and the amount in controversy exceeds, exclusive of interest and costs, the sum of seventy five thousand dollars ($75,000).

9.     This Court has personal jurisdiction over Defendant because Defendant is incorporated in and resides in Tennessee.

10.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because Defendant is incorporated in Tennessee and resides in this judicial district.

## FACTUAL ALLEGATIONS

**A.     ACT's WorkKeys® Assessments**

11.     ACT developed and makes available workforce development assessments called "WorkKeys." WorkKeys assessments are a collection of proctored tests that measure the most important workplace skills affecting an individual's job performance. WorkKeys assessments

indicate competency in math, reading and writing, and measure a range of hard and soft skills relevant to any occupation, at any level, across industries.

12.     WorkKeys assessments are a first step toward closing skills gaps and improving workforce quality, and are the basis for the National Career Readiness Certificate® (NCRC®)—the nation's most recognized work readiness credential that is recommended by thousands of employers.  The ACT NCRC is also recommended for college credit by the American Council on Education (ACE).  It certifies the essential skills for workplace success, and serves as the basis of state- and county-level workforce and economic development initiatives.

13.     The ACT NCRC is earned by completing specific WorkKeys Assessments.

14.     The original version of WorkKeys was introduced in 2006 as WorkKeys 1.0. WorkKeys 1.0 included the following eight assessments: Locating Information, Applied Mathematics, Reading for Information, Applied Technology, Listening for Understanding, Business Writing, Workplace Observation and Teamwork.  The NCRC included the following three assessments from WorkKeys 1.0: Applied Mathematics, Locating Information, and Reading for Information.

15.     Starting approximately a year ago, ACT implemented a new version of WorkKeys, called WorkKeys 2.0.  In WorkKeys 2.0., Applied Mathematics became Applied Math, Locating Information became Graphic Literacy, and Reading for Information became Workplace Documents.  Under WorkKeys 2.0, the ACT NCRC is earned by completing the following three WorkKeys Assessments: Applied Math, Workplace Documents and Graphic Literacy.

16.     At all relevant times, the ACT NCRC has been awarded at four levels of achievement—Bronze, Silver, Gold, and Platinum—based on performance on the WorkKeys assessments.

17.     WorkKeys assessments are the cornerstone of an ACT program called "Workforce Solutions for Career Readiness," a system of assessments, curriculum, and job profiles that build and measure essential workplace skills that affect job performance and increase opportunities for career changes and advancement. The ACT Workforce Solutions for Career Readiness consist of:

a.  WorkKeys for Job Seekers, a system of assessments and curriculum that build and measure essential workplace skills;

b.  WorkKeys for Employers, which are assessments and skill profiles to help pinpoint the skills needed to grow a business;

c.  WorkKeys for Educators, which ensures that students are career ready and boost their employability with the WorkKeys suite.

18.     ACT has developed and offers a WorkKeys Curriculum to help individuals—from students to longtime employees—build and master the career-relevant skills related to learning, personal development and effective job performance that are essential to succeed in the workplace.

19.     The WorkKeys Curriculum aligns with the WorkKeys assessments and the NCRC credential. For WorkKeys 1.0 Assessments, the related curriculum is called KeyTrain®. For WorkKeys 2.0 (especially NCRC 2.0) the related curriculum is called WorkKeys Curriculum.

20.     KeyTrain and the WorkKeys Curriculum courses help users reach foundational career readiness and enhance cognitive skills. KeyTrain and the WorkKeys Curriculum are based on the same skills and skill progressions found in the ACT WorkKeys Assessments. These courses prepare learners to earn the ACT WorkKeys NCRC.

21.     The Applied Mathematics course (previously called Applied Math) builds the ability to apply mathematic principles to problems encountered in the workplace. The Graphic Literacy course (previously called Locating Information) builds the ability to find, analyze and

apply information presented in workplace graphics. The Workplace Documents course (previously called Reading for Information) builds the ability to understand and apply written information presented in the workplace.

22.     The ACT WorkKeys Curriculum is a complete interactive training system that is easy to implement and can be accessed from any computer, tablet, or mobile device with a modern browser; the courses are delivered via a personalized, mobile-based learning management system. The platform provides users with a customized study schedule and detailed instructional content. Benefits of the WorkKeys Curriculum include efficiency for teachers and students, the ability to address individual learning styles, systematic learning and convenience.

### B.     ACT's Intellectual Property Rights

23.     ACT owns many intellectual property rights, including but not limited to rights related to WorkKeys and KeyTrain at issue in this action.

24.     ACT, WorkKeys, National Career Readiness Certificate, and NCRC are trademarks registered to ACT. ACT is protected by U.S. Trademark Registration Nos. 4517656 and 2888069. National Career Readiness Certificate is protected by U.S. Trademark Registration Nos. 3458645, 3445732, and 3445731. NCRC is protected by U.S. Trademark Registration No. 4339450.

25.     ACT has common law trademark rights in BRONZE, SILVER, GOLD and PLATINUM, as well as PLATINUM, GOLD, SILVER, and BRONZE, as well as each of these designations individually, for use with career readiness certification. ACT has used BRONZE, SILVER, GOLD and PLATINUM with career readiness certification since ACT introduced the NCRC in 2006. BRONZE, SILVER, GOLD and PLATINUM are trademarks of ACT.

26.     The ACT WorkKeys assessments and curriculum are original works of authorship created by or for ACT that consist of copyrightable subject matter.

27.     ACT owns the following Copyright Registration Nos. for ACT WorkKeys assessments:

| Copyright Registration No. | Title of Work | Date Issued |
|---|---|---|
| TX 8-504-108 | WorkKeys Applied Mathematics Technical Manual 2008 | March 22, 2018 |
| TX 8-504-109 | WorkKeys Locating Information Technical Manual 2008 | March 22, 2018 |
| TX 8-504-110 | WorkKeys Reading for Information Technical Manual 2008 | March 22, 2018 |

**C.     Defendant's Access To Plaintiff's Work: The WorkKeys Publisher Agreement**

28.     Defendant was and is in the business of developing training curriculum and previously developed training curriculum articulated with WorkKeys pursuant to a written agreement with Plaintiff ACT.  Specifically, on or about January 1, 2006, Plaintiff ACT and Defendant entered into a WorkKeys® Publisher Agreement ("Publisher Agreement") to permit Defendant to become a "Preferred Content Partner" of WorkKeys training products on the terms and conditions set forth in the Publisher Agreement.  Pursuant to the terms of the Publisher Agreement, as a Preferred Content Provider, Defendant was authorized to develop and sell WorkKeys Curricula, for which it paid ACT annual fees and royalty fees.

29.     Section 13 (a) of the Publisher Agreement states that "[e]ach party recognizes and acknowledges the ownership by the other party of all patents, copyrights, trademarks, service

marks, business names, know how, other corporate names and other intellectual property rights which such party owns related, in any way, to WorkKeys or to the WorkKeys Curricula."

30.     Section 13.b.1 of the Publisher Agreement states that "[n]o right or ownership interest shall be acquired by a party in any proprietary or confidential information, including technical, business or commercial information, specifications, drawings, sketches, models, surveys, plans samples, data, formulae, computer programs, software or other documentation, in whatever form recorded or orally provided by the other party and that is marked on each page or otherwise prominently identified as "Confidential."

31.     Section 13.b.2 of the Publisher Agreement states that confidential information shall be used only to further the purpose of the Publisher Agreement and shall not be reproduced or copied in whole or in part except as necessary for use pursuant to the Publisher Agreement and shall be disseminated only to those employees or agents of the receiving party or third parties who have agreed or are otherwise under a duty to maintain such information in confidence and shall be returned or destroyed when no longer needed.

32.     Section 13.b.3 of the Publisher Agreement states that "[b]oth parties recognize and acknowledge that any breach of this Section 13 would injure the other irreparably, the amount of damage being impossible to ascertain. Either party may, therefore, in addition to pursuing any and all remedies provided by law, obtain an injunction against the other party from any court having jurisdiction, restraining any violation of this Section 13."

33.     The Publisher Agreement has various exhibits, including Exhibit D. Exhibit D to the Publisher Agreement is "ACT's Intellectual Property Guidelines." Section II of the Intellectual Property Guidelines states that "[t]he copyrights of all the WorkKeys® materials, including, but not limited to the assessments, answer documents, Occupational Profiles, Targets

for Instruction, handbooks, descriptions, definitions and sample items, are owned by ACT, Inc. Except as otherwise set forth herein, ACT, Inc. has the exclusive right to reproduce the WorkKeys materials, to prepare derivative works based upon the materials, to sell the materials to the public and to display the materials publicly."

34.     Section II of the Intellectual Property Guidelines also states that no reproduction is permitted of certain documents.  Specifically, it states that "The following materials may not be produced, wholly or in part, under any circumstances: WorkKeys assessments, including all print, audio and video assessment materials [and] WorkKeys answer documents."

35.     Section 16 of the Publisher Agreement states that it shall be construed in accordance with the substantive law of the State of Iowa.

36.     Teresa C. Chasteen, President of Defendant, signed the Publisher Agreement on behalf of WIN.

37.     WIN had access to the WorkKeys assessments and KeyTrain curriculum pursuant to the Publisher Agreement.

### D.     Defendant's Access To Plaintiff's Work: The Florida Ready to Work Credential Program

38.     The State of Florida is one of many states that sponsors workforce and economic development initiatives.  Florida has a Ready to Work Credential Program, an employee credentialing program that tests and scores job skills and work habits.  Jobseekers can obtain a credential regarding skills and attitude, helping employers to take the guesswork out of hiring, saving them time and money. The program was first approved and received initial funding from the Florida Legislature in 2006 and was officially launched in April 2007.

39.     WIN had a contract with the State of Florida to support the Florida Ready to Work Credential Program (the "Florida Prime Contract").  In the Florida Prime Contract, WIN contracted

with the State of Florida to provide products and services related to assessing and improving the workplace skills of Floridians. As part of the Florida Prime Contract, WIN was to provide ACT's WorkKeys assessments and certain other services to Floridians through a network of distribution outlets in Florida. Also as part of the Florida Prime Contract, WIN was to provide job profiling services (using ACT's SkillPro® software), reporting services, and certain certificate services.

40.    On or about March 1, 2007, Plaintiff and Defendant entered into a Subcontract Agreement for ACT to furnish and WIN to purchase specific services to support the Florida Prime Contract and the Florida Ready to Work Credential Program (the "Florida Subcontract").

41.    Pursuant to the Florida Subcontract, and by virtue of the Florida Subcontract, WIN delivered ACT's WorkKeys assessments and certain other services to Floridians through a network of distribution outlets in Florida.

42.    Pursuant to the Florida Prime Contract, and by virtue of the Florida Subcontract, WIN was to provide job profiling services, using ACT's SkillPro software, as well as reporting services and certain certificate services.

43.    Pursuant to the Florida Prime Contract, and by virtue of the Florida Subcontract, ACT was to provide the following services: Program Management; Delivery of WorkKeys Assessments; Reporting; Web-based Portfolio for Individuals; Certificate Fulfillment; and Profiler Training.

44.    Paragraph 5 of the Florida Subcontract contains a "Confidentiality" provision, pursuant to which "the parties acknowledge that, during the term of this Agreement, they will disclose certain Confidential Information of a special and unique nature to each other." Pursuant to this Confidentiality provision, WIN covenanted and agreed that neither it nor its employees would, at any time during or following the term of the Florida Subcontract, either directly or

Case 3:18-cv-00186-TRM-JEM   Document 1   Filed 05/14/18   Page 10 of 32   PageID #: 10

indirectly, disclose to any person ACT's Confidential Information without prior written permission from ACT and/or use ACT's Confidential Information for any purpose whatsoever, except as strictly necessary to perform the services called for in the Florida Subcontract or as otherwise permitted by the Florida Subcontract. Section 5 of the Florida Subcontract further states that "[e]ach party shall restrict disclosure of the Confidential Information to its employees (or others as permitted by this Agreement) with a need to know such information in order to perform the Services and shall advise such employees (or others as permitted by this Agreement) of their obligations with respect to the Confidential Information. Each party shall protect the other party's Confidential Information using the same standard of care it uses to protect its own confidential and proprietary information, but in any event not less than a reasonable standard of care."

45.     Paragraph 5 of the Florida Subcontract further states that "[i]n the event of a breach or threatened breach of this Paragraph 5, the Disclosing Party, in addition to and not in limitation of any of the rights, remedies or damages available to it at law or in equity, shall be entitled to a temporary or permanent injunction to prevent or restrain any such breach by the Receiving Party."

46.     Paragraph 6 of the Florida Subcontract states, in part, that "[e]ach party will retain all rights in intellectual property that it owns or develops prior to the date of this Agreement, or acquires or develops after the date of this Agreement without reference to or use of the intellectual property of the other party." That paragraph also states that "ACT will retain all right, title, and interest in and to all information, know-how, methodologies, processes, specifications, programs, technologies, algorithms or software, or other development tools used in performing the Services or producing the Deliverables."

47.     Paragraph 15 of the Florida Subcontract states that it "shall be governed by the laws of the State of Iowa without giving effect to conflict of law principles."

48.     The Florida Subcontract has various exhibits, including Exhibit C, which is entitled "WorkKeys Paper and Pencil Terms and Conditions." Exhibit C states, among other things that ACT owns WorkKeys Assessments and intellectual property:

> "Ownership of the WorkKeys Assessments, related materials and other intellectual property.
>
> ACT owns the Assessments, including all testing materials, documentation, related materials, and all intellectual property rights therein (collectively the 'ACT Materials'). WIN does not acquire any right, title or interest in or to the ACT Materials. WIN shall not, and shall ensure that the Participating Locations do not, copy, modify, enhance, reverse engineer, or make any addition to the ACT Materials.
>
> ACT owns the WorkKeys system and all component parts, modifications and updates thereto. ACT owns the copyrights on the Assessments and related publications and materials, and ACT owns the trademark 'WorkKeys.' Except as specifically granted in the Agreement, WIN does not, and the Participating Locations do not, acquire any right, title, or interest in or to the WorkKeys system, including the Assessments or the related materials, any rights in patents and copyright applicable thereto, or any right, title or interest in or to the trademark 'WorkKeys.' WIN shall not, and shall ensure that the Participating Locations do not, use the trademark WorkKeys without the prior written consent of ACT."

49.     Exhibit C to the Florida Subcontract has a confidentiality provision, which states:

WorkKeys Confidentiality

WIN agrees that neither it nor its Participating Locations shall at any time during or following the term of this Agreement, either directly or indirectly, publish, display or otherwise disclose to any person, organization or entity in any manner whatsoever any ACT Materials, except as strictly necessary for WIN and the Participating Locations to use the ACT Materials for their intended purpose under this Agreement.

***

WIN shall not copy, or allow anyone else to copy, in whole or in part, any of the Assessments or related materials.

WIN shall protect, and shall ensure that the Participating Locations and examinees protect the ACT Materials in accordance with ACT's procedures and using a standard of care appropriate for secure test materials.

All ACT Materials shall be and remain the property of ACT, notwithstanding any subsequent termination of this Agreement.

WIN shall not … assign, license, sell, loan, lease, copy or otherwise transfer the Assessments or related materials, in whole or in part."

50.     Exhibit D to the Florida Subcontract is a WorkKeys Assessment Use and License Agreement customized for use with Florida Ready to Work Credential Program Participating Locations, intended for signature by each Participating Location.  The WorkKeys Assessment Use and License Agreement states, in paragraph 9, that "ACT owns the WorkKeys system and all component parts, modifications, and updates thereto.  ACT owns the copyrights on the Assessments and related publications and materials, and ACT owns the trademark "WorkKeys." Except as specifically granted in this License Agreement, Licensee does not acquire any right, title, or interest in or to the WorkKeys system, including the Software, the Assessments, the Documentation, the related materials, any rights in patents and copyrights applicable thereto, or any right, title or interest in or to the trademark "WorkKeys." Licensee shall not use the trademark WorkKeys without the prior written consent of ACT."

51.     Teresa C. Chasteen, President of Defendant WIN, signed the Subcontract on behalf of WIN.

52.     ACT and WIN entered into a First Amendment to the Florida Subcontract on or about October 9, 2009.

53.     The Florida Subcontract had an original term of March 1, 2007 to December 31, 2010.  The December 31, 2010 termination date was after the termination date of the Prime Contract of June 30, 2010 so that WIN could access the assessment data for a period of six months after the termination of the Prime Contract.

54.     On October 8, 2009, the State of Florida and WIN extended the Prime Contract for an additional year.  As a result, WIN needed access to the ACT products and services in order to avoid breaching the Prime Contract.

55.     ACT and WIN entered into a Second Amendment to the Florida Subcontract on December 21, 2010.  The Second Amendment extended the term of the Florida Subcontract to June 30, 2011 and provided WIN access to the assessment data until September 30, 2011.

56.     On June 28, 2011, Plaintiff sent a letter to Teressa Chasteen, President and CEO of WIN in anticipation of the termination of the Florida Subcontract on June 30, 2011.  The letter states, among other things, that WIN must fully respect ACT's intellectual property rights and that WIN does not have the right to create an alternate assessment to ACT's WorkKeys based on or derivative of ACT's WorkKeys assessments.

57.     The June 28, 2011 letter states, "ACT hereby puts WIN on formal notice that your creation and/or use of systems or materials, such as curriculum, pre-tests, or post-tests, that are derived from ACT's WorkKeys systems or materials would clearly violate ACT's intellectual property rights.  This includes, without limitation, use of the WorkKeys-based system of levels and certificates.  ACT will not hesitate to take appropriate legal action to protect its intellectual property."

58.     The June 28, 2011 letter also states that under the Florida Subcontract, "the job profiler and SkillPro license agreements will expire on June 30, 2011.  Please be advised that use of ACT's job profiling system (or any component thereof) after expiration of the Subcontract would violate ACT's intellectual property rights in those works.  ACT's job profiling system was not designed nor is it permitted by ACT, to be used in connection with assessments other than the WorkKeys assessments."

59.     ACT and WIN entered into a Third Amendment to the Florida Subcontract on June 30, 2011.  The Third Amendment to the Florida Subcontract extended the Subcontract on a month-

to-month basis up to a maximum of six months. The Third Amendment was signed by Teresa Chasteen on behalf of WIN.

60.     ACT and WIN entered into a Fourth Amendment to the Florida Subcontract on October 28, 2011. The Fourth Amendment to the Subcontract extended the Subcontract on a month-to-month basis up to a maximum of four months. The Fourth Amendment was signed by Teresa Chasteen on behalf of WIN.

61.     WIN had access to the WorkKeys assessments and KeyTrain curriculum pursuant to the Florida Subcontract and the amendments thereto.

E.     **Prior Disputes**

62.     After the Publisher Agreement expired, ACT and WIN exchanged correspondence regarding various disputes that are described at least in a letter from WIN's counsel to ACT dated August 17, 2010 and in a letter from ACT's counsel to WIN dated August 24, 2010 (the "Disputes").

63.     ACT and WIN resolved the Disputes by entering into a Settlement Agreement that was signed by Teresa Chasteen on behalf of WIN on December 10, 2010, which became effective on December 21, 2010. Pursuant to the Settlement Agreement, among other things, the parties agreed that the  Publisher Agreement would not be reinstated; that ACT would extend the Florida Subcontract one final time to June 30, 2011 on terms set forth in the Settlement Agreement; WIN would continue to honor WIN curriculum license agreements extended by ACT Centers; both ACT and WIN would remain responsible for paying routine charges for products and services incurred under the active agreements and extended by ACT centers; and ACT and WIN each released the other from all claims, known or unknown, that may have arisen prior to the date of the Settlement Agreement.

64.     Sections 6 (a) and (b) of the Settlement Agreement contain certain releases for acts and omissions that occurred prior to the date of the Settlement Agreement.  Section 6 (c) of the Settlement Agreement states in pertinent part that neither Party relinquishes any rights it has in its intellectual property or is precluded from prospectively enforcing its intellectual property rights against the other.

65.     In the Settlement Agreement, WIN represented and warranted that, to the best of its knowledge and belief, it is currently respecting, and not infringing ACT's intellectual property rights; and that it did not have in its custody or control any confidential or secure materials of ACT's which it was not legally entitled to possess.

**F.      The South Carolina RFP**

66.     On or about November 14, 2017, the State of South Carolina's Statewide Term Contract governmental unit issued a Request for Proposal ("RFP") for a "Career Ready Test."

67.     The RFP states that the "Scope of Solicitation" is to "establish a State Term Contract to provide a turnkey solution, to include Contractor administration, scoring and reporting, for an off-the-shelf software of career readiness skills and aptitudes" that "may be administered to approximately 70,000 students and adults across the state annually and include both online and paper administrations."

68.     The estimated contract period as stated in the RFP is from February 5, 2018 to February 4, 2023, consisting of an initial one year term and four optional one year renewal terms.

69.     The RFP provides that submitting a bid or proposal is an offer to enter into a contract with the Using Governmental Unit and a binding contract will result upon a final award.

70.     Section III of the RFP states that its purpose is to "delineate the requirements and to solicit proposal for a career readiness assessment.  Administration of this career readiness

assessment will include, but not be limited to SCDE 11th grade students, SCDEW job-seeking adults and will provide scores that are valid indicators of career readiness skills and aptitudes."

71. ACT submitted a written proposal in response to the RFP on or about December 22, 2017.

72. WIN submitted a written proposal in response to the RFP on or about December 22, 2017.

**G.** **WIN's Unlawful Copying in Its Response to the South Carolina RFP**

73. WIN copied ACT's copyrighted work in WIN's response to the RFP. For example:

a. WIN's "Reading for Information" "Level/Learning Objectives" on pages 39-40 of its RFP response are substantially similar and/or virtually identical to ACT's "Reading for Information Skill Definitions" set forth in the "WorkKeys Reading for Information Technical Manual 2008," which is the subject of Copyright Registration No. TX 8-504-110. Below are examples of substantial similarity and virtual identity between ACT's copyrighted work and the text in the WIN RFP submission.

| Level 3 Skills/Objectives | |
|---|---|
| **ACT WorkKeys Reading for Information Skill Definitions** | **WIN Reading for Information Learning Objectives** |
| Identify main ideas and clearly stated details | Identify main idea and clearly stated details |
| Choose the correct meaning of a word that is clearly defined in the reading | Choose the correct meaning of a word that is clearly defined in the reading |
| Choose when to perform each step in a short series of steps | Choose when to perform each step in a short series of steps |

Case 3:18-cv-00186-TRM-JEM   Document 1   Filed 05/14/18   Page 17 of 32   PageID #: 17

| | |
|---|---|
| Apply instructions to a situation that is the same as the one in the reading materials | Apply instructions to a situation that is the same as the one in the reading materials |

| | |
|---|---|
| **Level 4 Skills/Objectives** ||
| Identify important details that may not be clearly stated | Identify important details that may not be clearly stated |
| Use the reading material to figure out the meaning of words that are not defined | Use the reading material to figure out the meaning of words that are not defined |
| Choose what to do when changing conditions call for a different action (follow directions that include "if-then" statements) | Choose what to do when changing conditions call for a different action (follow directions that contain "if-then" statements) |
| **Level 5 Skills/Objectives** ||
| Figure out the correct meaning of a word based on how the word is used | Figure out the meaning of a word based on how the word is used. |
| Identify the correct meaning of an acronym that is defined in the document | Identify the correct meaning of an acronym that is defined in the document. |
| Identify the paraphrased definition of a technical term or jargon that is defined in the document | Identify the paraphrased definition of a technical term or jargon that is defined in the document. |
| Apply technical terms and jargon and relate them to stated situations | Apply technical terms and jargon and relate them to stated situations. |
| Apply straightforward instructions to a new situation that is similar to the one described in the material | Apply complex instructions that include conditionals to situations described in the materials. |
| Apply complex instructions that include conditionals to situations described in the materials | Apply complex instructions that include conditionals to situations described in the materials. |
| **Level 6 Skills/Objectives** ||
| Identify implied details | Identify implied details |
| Figure out the less common meaning of a word based on the context | Figure out the less common meaning of a word based on context |

| | |
|---|---|
| Apply complicated instructions to new situations | Apply complicated instructions to new situations |
| Use technical terms and jargon in new situations | Use technical terms and jargon in new situations |
| Figure out the principles behind policies, rules, and procedures | Figure out the principles behind policies, rules, and procedures |
| Apply general principles from the materials to similar and new situations | Apply general principles from the materials to similar and new situations |
| Explain the rationale behind a procedure, policy, or communication | Explain the rationale behind a procedure, policy, or communication |
| **Level 7 Skills/Objectives** ||
| Figure out the definitions of difficult, uncommon words based on how they are used | Figure out the meaning of difficult, uncommon words based on how they are used |
| Figure out the meaning of jargon or technical terms based on how they are used | Figure out the meaning of jargon or technical terms based on how they are used |
| Figure out the general principles behind the policies and apply them to situations that are quite different from any described in the materials | Figure out the general principles behind policies and apply them to situations that are quite different from any described in the materials |

b. WIN's "Locating Information" "Level/ Learning Objectives" on page 38 of its RFP response are substantially similar and/or virtually identical to ACT's "Locating Information Learning Objectives" in the "WorkKeys Locating Information Technical Manual 2008," which is the subject of Copyright Registration No. TX 8-504-109. Below are examples of substantial similarity and virtual identity between ACT's copyrighted work and the text in the WIN RFP submission:

| **Level 3 Skills/Objectives** ||
|---|---|
| **WorkKeys Locating Information Skill Definitions** | **WIN Locating Information Learning Objectives** |

| | |
|---|---|
| Fill in one or two pieces of information that are missing from a graphic | Fill in one or two pieces of information that are missing from a graphic |
| Find one or two pieces of information in a graphic | Find one or two pieces of information in a graphic |
| **Level 4 Skills/Objectives** | |
| Find several pieces of information in graphics | Find several pieces of information in one or two graphics |
| Notice how graphics are related to each other | Understand how graphics are related to each other |
| Sum up information shown in straightforward graphics | Summarize information from one or two straightforward graphics |
| Identify trends shown in straightforward graphics | Identify trends in one or two straightforward graphics |
| Compare information and trends shown in straightforward graphics | Compare information and trends shown in one or two straightforward graphics |
| **Level 5 Skills/Objectives** | |
| Sort through distracting information | Sort through distracting information |
| Sum up information shown in detailed graphics | Summarize information from one or more detailed graphics |
| Identify trends shown in detailed graphics | Identify trends shown in one or more detailed or complicated graphics |
| Compare information and trends shown in detailed graphics | Compare information and trends from one or more complicated graphics |

c.  WIN's "Applied Mathematics Assessment" "Level/Learning Objectives," on pages 37-38 of its RFP response are substantially similar and/or virtually identical ACT's "Applied Mathematics Learning Objectives" in the "WorkKeys Applied Mathematics Technical Manual 2008," which is the subject of Copyright Registration No. TX 8-504-108. Below are examples of substantial similarity and

virtual identity between ACT's copyrighted work and text in the WIN RFP submission:

| Level 3 Skills/Objectives | |
|---|---|
| **WorkKeys Applied Mathematics Skill Definitions** | **WIN Applied Mathematics Learning Objectives** |
| Solve problems that require a single type of mathematics operation (addition, subtraction, multiplication, and division) using whole numbers | Solve problems that require a single type of mathematical operation (addition, subtraction, multiplication, and division) using whole numbers |
| Add or subtract negative numbers | Add or subtract negative numbers |
| Change numbers from one form to another using whole numbers, fractions, decimals, or percentages | Change numbers from one form to another using whole numbers, fractions, decimals, or percentages |
| Convert simple money and time units (e.g., hours to minutes) | Convert simple money and time units (e.g., hours to minutes) |
| **Level 4 Skills/Objectives** | |
| Solve problems that require one or two operations | Solve problems that require one or two operations |
| Multiply negative numbers | Multiply negative numbers |
| Calculate averages, simple ratios, simple proportions, or rates using whole numbers and decimals | Calculate averages, simple ratios, simple proportions, or rates using whole numbers or decimals |
| Add three fractions that share a common denominator | Add up to three fractions that share a common denominator |
| Add commonly known fractions, decimals, or percentages (e.g., ½, .75, 25%) | Add commonly known fractions, decimals, or percentages (e.g., ½, .75, 25%) |
| Multiply a mixed number by a whole number or decimal | Multiply a mixed number by a whole number or decimal |
| Put the information in the right order before performing calculations | Put information in the right order before performing calculations |

| Level 5 Skills/Objectives | |
|---|---|
| Decide what information, calculations, or unit conversions to use to solve the problem | Decide what information, calculations, or unit conversion to use to solve the problem |
| Look up a formula and perform single-step conversions within or between systems of measurement | Look up a formula and perform a single-step conversion within or between systems of measurement |
| Calculate using mixed units (e.g., 3.5 hours and 4 hours and 30 minutes) | Calculate using mixed units (e.g., 3.5 hours and 4 hours 30 minutes) |
| Divide negative numbers | Divide negative numbers |
| Find the best deal using one- and two-step calculations and then comparing results | Find the best deals using one- and two-step calculations and then compare results |
| Calculate perimeters and areas of basic shapes (rectangles and circles) | Calculate the perimeters and areas of basic shapes (circles and rectangles) |
| Calculate percentage discounts or markups | Calculate percent discounts and markups |
| Level 6 Skills/Objectives | |
| Use fractions, negative numbers, ratios, percentages, or mixed numbers | Use fractions, negative numbers, ratios, percentages, or mixed numbers |
| Rearrange a formula before solving a problem | Rearrange a formula before solving a problem |
| Use two formulas to change from one unit to another within the same system of measurement | Use two formulas to change from one unit to another within the same system of measurement |
| Find mistakes in items that belong at Levels 3, 4, and 5 | Find mistakes in questions that belong at Levels 3, 4, and 5 |
| Find the best deal and use the result for another calculation | Find the best deal and use the result for another calculation |
| Find areas of basic shapes when it may be necessary to rearrange the formula, convert units of measurement in the | Find areas of basic shapes when it may be necessary to rearrange the formula, convert units of measurement in the |

| | |
|---|---|
| calculations, or use the result in further calculations. | calculation, or use the result in further calculation |
| Find the volume of rectangular solids | Find the volume of rectangular solids |
| Calculate multiple rates | Calculate multiple rates |
| **Level 7 Skills/Objectives** | |
| Solve problems that include nonlinear functions and/or that involve more than one unknown | Solve problems that include nonlinear functions and/or that involve more than one unknown |
| Find mistakes in Level 6 items | Find mistakes in Level 6 questions |
| Convert between systems of measurement that involve fractions, mixed numbers, decimals, and/or percentages | Convert between systems of measurement that involve fractions, mixed numbers, decimals, and/or percentages |
| Calculate multiple areas and volumes of spheres, cylinders, or cones | Calculate multiple areas and volumes of spheres, cylinders, or cones |
| Set up and manipulate complex ratios or proportions | Set up and manipulate complex ratios or proportions |
| Find the best deal when there are several choices | Find the best deal when there are several choices |
| Apply basic statistical concepts | Apply basic statistical concepts (calculate percent change) |

74.     At no time has Plaintiff authorized Defendant to reproduce, adapt, distribute or use any of its content for use by Defendant in any response to any request for proposal.

## H.     WIN's Unlawful Use of ACT's Trademarks

75.     WIN used the names of ACT's assessments in WIN's response to the RFP, including PLATINUM, GOLD, SILVER and BRONZE without ACT's consent.

## I.     WIN's False Advertising

76.     Page six of WIN's response to the RFP states, "At the state, regional, or community level, the aggregate results can also be used to inform education and workforce policy and support

Work Ready Community and other talent and economic development initiatives." The Work Ready Community initiative is an ACT led movement. ACT has not authorized WIN to state that their assessments can support this initiative.

77. Page seven of WIN's response to the RFP states that its assessments are "aligned and comparable to the ACT WorkKeys assessments currently being used by the State of South Carolina." This statement is false. Moreover, ACT has not authorized WIN to align their assessments to ACT's assessments.

**J.** **The Winning Bid**

78. On or about January 26, 2018, the State of South Carolina issued the contract for the Career Ready Test to WIN.

79. Plaintiff is informed and believes, and on that basis alleges, that Defendant intends to continue to copy its copyrighted works and use them without authorization, infringe its trademarks, and breach the Confidentiality provision of the Publisher Agreement and Florida Subcontract in responses to other RFPs, unless restrained by the Court.

## FIRST CLAIM FOR RELIEF

(Copyright Infringement; 17 U.S.C. § 101 et. seq.)

80. Plaintiff incorporates the allegations above as though set forth fully herein.

81. This Count arises under the Copyright Act of 1976, 17 U.S.C. §101 et seq.

82. ACT's WorkKeys assessments and the contents of U.S. Copyright Registration Nos. TX 8-504-108, TX 8-504-109 and TX 8-504-110 are original works of authorship that constitute copyrightable subject matter under the Copyright Act, 17 U.S.C. § 101 et seq. Plaintiff owns the exclusive rights and privileges in and to the above-referenced copyrighted works, and in compliance with the law, has received from the Register of Copyrights the appropriate certificates

Case 3:18-cv-00186-TRM-JEM   Document 1   Filed 05/14/18   Page 24 of 32   PageID #: 24

of registration, which constitute prima facie evidence of the validity of the copyrights in the works and of the facts stated in the certificates. At all relevant times, Plaintiff has owned all applicable right, title and interest in and to these copyrighted works.

83.     Defendant intentionally copied ACT's copyrighted works in WIN's response to the RFP by the actions described above, and has infringed and will continue to infringe Plaintiff's copyrights by reproducing without permission Plaintiff's copyrighted work.     Defendant's infringement of Plaintiff's copyrights has been deliberate, willful and in utter disregard of Plaintiff's rights.

84.     By reason of Defendant's infringement, Plaintiff has sustained and will continue to sustain substantial injury, loss and damage to its ownership rights in the copyrighted works.

85.     Plaintiff has no adequate remedy at law for the injuries currently being suffered, and additional injuries that are threatened.  Defendant will continue to engage in its wrongful conduct, and Plaintiff will continue to suffer irreparable injury that cannot be adequately remedied at law unless Defendant is enjoined from engaging in any further such acts of infringement. Plaintiff is entitled to a preliminary and permanent injunction restraining Defendant, its officers, directors, agents, employees, representatives and all persons acting in concert with them from engaging in further such acts of copyright infringement.

86.     As a direct and proximate result of Defendant's willful copyright infringement, Plaintiff has suffered, and will continue to suffer actual damages, in an amount to be proven at trial.

87.     Defendant has obtained unjust profits, gains and advantages as a result of its infringement, and will continue to realize unjust profits, gains and advantages as a result of its

infringement as long as such infringement is permitted to continue. Plaintiff is entitled to recover from Defendant Defendant's profits, in an amount to be proven at trial.

## SECOND CLAIM FOR RELIEF

(Unfair Competition by Infringement of Common Law Rights Under the Lanham Act;
15 U.S.C. § 1125(a)(1)(A))

88.     Plaintiff incorporates the allegations above as though set forth fully herein.

89.     This count arises under the Lanham Act, Title 15 of United States Code § 1051, et seq.

90.     Plaintiff has used PLATINUM, GOLD, SILVER and BRONZE to identify its goods and services and to distinguish them from those offered and sold by others consistently since 2006.

91.     Defendant's use of the PLATINUM, GOLD, SILVER and BRONZE marks is likely to cause confusion, to cause mistake and/or to deceive as to the affiliation, connection or association of Defendant with Plaintiff and/or as to the origin, sponsorship and approval of Defendant's goods, services and commercial activities, in violation of in violation of 15 U.S.C. § 1125(a)(1)(A).

92.     Plaintiff is experiencing irreparable harm and further irreparable harm to Plaintiff is imminent as a result of Defendant's unlawful conduct, and Plaintiff is without an adequate remedy at law. Plaintiff is entitled to an injunction restraining Defendant, its officers, directors, agents, employees, representatives and all persons acting in concert with them from engaging in further such acts of infringement.

93.     As a result of Defendant's wrongful conduct, Plaintiff has suffered, and will continue to suffer, substantial damages. Plaintiff is entitled to recover damages in an amount to be proven at trial.

94.     Defendant has obtained unjust profits, gains and advantages as a result of its infringement, and will continue to realize unjust profits, gains and advantages as a result of its infringement as long as such infringement is permitted to continue. Plaintiff is entitled to recover from Defendant Defendant's profits, in an amount to be proven at trial.

95.     Defendant's infringement of the PLATINUM, GOLD, SILVER and BRONZE marks was knowing and willfully intended to reap the benefit of the goodwill of Plaintiff and cause confusion, deception or mistake and/or has occurred with willful blindness. Because Defendant's infringement of Plaintiff's marks has been willful, the award of actual damages and profits should be trebled.

96.     Plaintiff is also entitled to expenses of litigation, including Plaintiff's attorneys' fees and costs.

### THIRD CLAIM FOR RELIEF

(Violation of Lanham Act by Use of False Designation
15 U.S.C. § 1125(a)(1)(A))

97.     Plaintiff incorporates the allegations above as though set forth fully herein.

98.     This count arises under the Lanham Act, Title 15 of United States Code § 1051, et seq.

99.     Plaintiff has used PLATINUM, GOLD, SILVER and BRONZE to identify its goods and services and to distinguish them from those offered and sold by others consistently since 2006.

100.    Defendant's use of PLATINUM, GOLD, SILVER and BRONZE is a false designation of origin, and/or a false or misleading description or representation of fact, which is likely to cause confusion, to cause mistake and/or to deceive as to the affiliation, connection or

association of Defendant with Plaintiff and/or as to the origin, sponsorship and approval of Defendant's goods, services and commercial activities, in violation of 15 U.S.C. § 1125(a)(1)(A).

101.    Plaintiff is experiencing irreparable harm and further irreparable harm to Plaintiff is imminent as a result of Defendant's unlawful conduct, and Plaintiff is without an adequate remedy at law. Plaintiff is entitled to an injunction restraining Defendant, its officers, directors, agents, employees, representatives and all persons acting in concert with them from engaging in further such acts of false designation of origin.

102.    As a result of Defendant's wrongful conduct, Plaintiff has suffered, and will continue to suffer, substantial damages. Plaintiff is entitled to recover damages in an amount to be proven at trial.

103.    Defendant has obtained unjust profits, gains and advantages as a result of its false designation of origin, and will continue to realize unjust profits, gains and advantages as a result of its wrongful conduct as long as such conduct is permitted to continue. Plaintiff is entitled to recover from Defendant Defendant's profits, in an amount to be proven at trial.

104.    Defendant's actions were knowing and willfully intended to reap the benefit of the goodwill of Plaintiff and cause confusion, deception or mistake and/or has occurred with willful blindness. Because Defendant's infringement of Plaintiff's marks has been willful, the award of actual damages and profits should be trebled.

105.    Plaintiff is also entitled to expenses of litigation, including Plaintiff's attorneys' fees.

## FOURTH CLAIM FOR RELIEF

(False Advertising Under the Lanham Act
15 U.S.C. § 1125(a)(1)(B))

106.    Plaintiff incorporates the allegations above as though set forth fully herein.

107.    This count arises under the Lanham Act, Title 15 of United States Code § 1051, et seq.

108.    Plaintiff has used PLATINUM, GOLD, SILVER and BRONZE to identify its goods and services and to distinguish them from those offered and sold by others consistently since 2006. Defendant's use of PLATINUM, GOLD, SILVER and BRONZE in commercial advertising or promotion is a misrepresentation of the nature, characteristics, qualities or geographic origin of its goods, services or commercial activities, in violation of 15 U.S.C. § 1125(a)(1)(B).

109.    Defendant's statement that its "aggregate results can also be used to inform education and workforce policy and support Work Ready Community and other talent and economic development initiatives" is false, was knowingly false when made and was material.

110.    Defendant's statement that its assessments are "aligned and comparable to the ACT WorkKeys assessments currently being used by the State of South Carolina" is false, was knowingly false when made and was material.

111.    Plaintiff is experiencing irreparable harm and further irreparable harm to Plaintiff is imminent as a result of Defendant's unlawful conduct, and Plaintiff is without an adequate remedy at law. Plaintiff is entitled to an injunction restraining Defendant, its officers, directors, agents, employees, representatives and all persons acting in concert with them from engaging in further such acts of false advertising.

112.    As a result of Defendant's wrongful conduct, Plaintiff has suffered, and will continue to suffer, substantial damages. Plaintiff is entitled to recover damages in an amount to be proven at trial.

113.    Defendant has obtained unjust profits, gains and advantages as a result of its wrongful conduct, and will continue to realize unjust profits, gains and advantages as a result of

its wrongful conduct as long as such infringement is permitted to continue. Plaintiff is entitled to recover from Defendant Defendant's profits, in an amount to be proven at trial.

114.    Defendant's actions were knowing and willfully intended to reap the benefit of the goodwill of Plaintiff and cause confusion, deception or mistake and/or has occurred with willful blindness. Because Defendant's infringement of Plaintiff's marks has been willful, the award of actual damages and profits should be trebled.

115.    Plaintiff is also entitled to expenses of litigation, including Plaintiff's attorneys' fees.

## FIFTH CLAIM FOR RELIEF

(Breach of Contract
Iowa Law)

116.    Plaintiff incorporates the allegations above as though set forth fully herein.

117.    This count arises under Iowa common law.

118.    By using ACT's confidential information without authorization, Defendant has breached the Publisher Agreement and the Florida Subcontract.

119.    By reason of Defendant's breach, Plaintiff has sustained and will continue to sustain substantial injury, loss and damage, in an amount to be proven at trial.

120.    Further irreparable harm to Plaintiff is imminent as a result of Defendant's conduct, and Plaintiffs are without an adequate remedy at law. Plaintiffs are entitled to an injunction restraining Defendant, its officers, directors, agents, employees, representatives and all persons acting in concert with them from engaging in further such acts of breach of contract.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs prays as follows:

1.    For a preliminary and permanent injunction enjoining and restraining Defendant and all persons acting in concert with it from manufacturing, reproducing, distributing, adapting, displaying, advertising, promoting, offering for sale and/or selling, or using any copyrighted work and/or materials that are substantially similar to the copyrighted work, and/or confidential information, and to deliver to the Court for destruction or other reasonable disposition all such materials and means for producing same in Defendant's possession or control.

2.    For actual damages, treble damages, any awardable statutory damages, Defendant's profits, treble the amount of Defendant's profits and punitive damages, all in amounts to be proven at trial, plus interest.

3.    For attorneys' fees and costs.

4.    For such other and further relief as the Court deems just and proper.

5.    Plaintiff demands a trial by jury.


Dated: May 14, 2018
SCOTT & CAIN
By: */s/ Thomas S. Scott Jr.*
    Thomas S. Scott Jr.
    Christopher T. Cain
    Attorneys for Plaintiff ACT, Inc.
SHEPPARD, MULLIN, RICHTER & HAMPTON, LLP
By: */s/ Laura Lindsay Chapman*
    Laura Lindsay Chapman
    Attorneys for Plaintiff ACT, Inc.
Pro Hac Vice application to be pending

Dated: May 11, 2018

Thomas S. Scott Jr.
    scott@scottandcain.com
Christopher T. Cain
    cain@scottandcain.com
SCOTT & CAIN
550 West Main Street, Suite 601
Knoxville, TN 37902
Phone: 865-525-2150

Laura L. Chapman
    lchapman@sheppardmullin.com
Yasamin Parsafar
    yparsafar@sheppardmullin.com
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111
Phone: (415) 434-9100
Fax: (415) 434-3947

Pro Hac Vice application to be pending


ATTORNEYS FOR PLAINTIFF, ACT, Inc.