UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| ACT, INC., | ) | |
| | ) | Case No. 3:18-cv-186 |
| *Plaintiff & Counter-Defendant*, | ) | |
| | ) | Judge Travis R. McDonough |
| v. | ) | |
| | ) | Magistrate Judge H. Bruce Guyton |
| WORLDWIDE INTERACTIVE | ) | |
| NETWORK, | ) | |
| | ) | |
| *Defendant & Counter-Claimant*. | ) | |

---

## MEMORANDUM OPINION

---

Before the Court is Defendant and Counter-Claimant Worldwide Interactive Network's

("WIN") motion for partial summary judgment (Doc. 80). For the reasons stated hereafter,

WIN's motion will be **GRANTED IN PART** and **DENIED IN PART.**[1]

## I.     BACKGROUND[2]

At the heart of this trademark- and copyright-infringement dispute is a product known as

"WorkKeys." ACT developed WorkKeys, a series of workforce-development assessments that

measure workplace skills affecting an individual's job performance. (Doc. 121, at 4.)

WorkKeys assessments are the "cornerstone" of ACT's "Workforce Solutions for Career

---

[1] Also before the Court are Plaintiff and Counter-Defendant ACT, Inc.'s ("ACT") motion to
strike pages in excess of ten from WIN's reply brief (Doc. 97) and WIN's motion for leave to
file excess pages in its reply brief (Doc. 98). Given the complexity of this case and the number
of arguments raised by ACT in its response, the Court **GRANTS** WIN's motion for leave to file
excess pages in its reply brief (Doc. 98) and **DENIES** ACT's motion to strike excess pages (Doc.
97). *See United States v. Life Care Centers of Am., Inc.*, No. 1:08-CV-251, 2014 WL 11429265,
at *6 (E.D. Tenn. Mar. 26, 2014).

[2] The following factual background does not encompass all facts in this case and includes only
those relevant to the Lanham Act claims on which WIN has moved for summary judgment.

Readiness" program.  (*Id.* at 6.)  Completion of WorkKeys is also the basis for the National

Career Readiness Certificate® ("NCRC"), "the nation's most recognized work readiness

credential that is recommended by thousands of employers."  (*Id.* at 5.)  ACT has been offering

the NCRC since 2006.  (Doc. 83, at 867.)  The NCRC is awarded at four levels, "BRONZE,"

"SILVER," "GOLD," or "PLATINUM," depending on an individual's performance on the

WorkKeys assessments (*id.* at 887, 889), and an individual's certificate will reflect this level of

achievement (*id.* at 4–19).  Specifically, "BRONZE" requires minimum scores of 3 or above,

"SILVER" requires minimum scores of 4 or above, "GOLD" requires minimum scores of 5 or

above, and "PLATINUM" requires minimum scores of 6 or above.  (*Id.* at 884, 886.)

All four of these levels together, "BRONZE SILVER GOLD PLATINUM" or

"PLATINUM GOLD SILVER BRONZE" can be found on many of ACT's advertisements and

marketing materials, employer guides, and technical documentation.  (*See e.g.*, Doc. 83-1, at 84

("Recipients are awarded certificates of Platinum, Gold, Silver, or Bronze levels, depending on

their skill levels in Applied Mathematics, Reading for Information, and Locating Information.");

*id.* at 88–89 ("describing that the ACT NCRC is "[a]warded at four levels—Platinum, Gold,

Silver, and Bronze"); Doc. 83, at 906 (article explaining that,"[f]or any participating county,

ACT's Work Ready Communities website displays a list of employers in an area who recognize

the [NCRC], as well as the number of individuals who have achieved one of four levels of

NCRC certification, based on test results: bronze, silver, gold or platinum").

WIN developed the "Career Readiness System," a product similar to ACT's WorkKeys

system, which also uses career-readiness assessments to assess an individual's job skills.  And,

like WorkKeys, a credential earned by completion of these assessments is also awarded at four

levels of achievement, "Bronze," "Silver," "Gold," and "Platinum."  (*Id.* at 20–27.)

In 2017, the State of South Carolina issued a Request for Proposal ("RFP") for a "Career Ready Test." (Doc. 83, at 28.) Both ACT and WIN submitted written proposals in response to the RFP, but the contract was ultimately awarded to WIN. (*Id.*; *see also* Doc. 101-1, at 22.)

After WIN was awarded the contract but prior to filing this lawsuit, ACT filed six United States Federal Trademark Applications (the "Trademark Applications") for the words "PLATINUM," "GOLD," "SILVER," and "BRONZE" and the phrases "PLATINUM GOLD SILVER BRONZE" and "BRONZE SILVER GOLD PLATINUM." (*See generally* Doc. 83, at 135–828.) In each of these Trademark Applications, ACT identified the services connected with the use of the alleged marks as: "Providing an assessment-based credential which measures and certifies the essential work skills needed for success in jobs across multiple industries and occupations; advisory and consultancy services relating to workforce development programs." (Doc. 83, at 261, 308, 585, 684, 754, 821.) Between September 5 and September 7, 2018, the United States Patent and Trademark Office ("USPTO") issued nonfinal Office Actions, in which it rejected all six of ACT's federal trademark applications. (Doc. 83, at 243–47 ("PLATINUM"), 433–40 ("GOLD"), 569–73 ("SILVER"), 669–73 ("BRONZE"), 739–42 ("PLATINUM GOLD SILVER BRONZE"), 807–10 ("BRONZE SILVER GOLD PLATINUM").) Specifically, as relevant here, the USPTO included the following as bases for its rejection: (1) "the applied-for mark is a slogan or term that does not function as a trademark or service mark to indicate the source of applicant's services and to identify and distinguish them from others"; and (2) "[t]he record is unclear as to whether applicant is seeking registration of a certification mark or a trademark/service mark." (*Id.* at 244–46, 437–39, 570–72, 670–72, 740–41, 808–09.)

With respect to "PLATINUM," the USPTO's Office Action explained that:

> Registration is refused because the applied-for mark is a slogan or term that does not function as a trademark or service mark to indicate the source of applicant's services and to identify and distinguish them from others. Trademark Act Sections 1, 2, 3, and 45, 15 U.S.C. §§1051-1053, 1127. In this case, the applied-for mark is a commonplace term, message, or expression widely used by a variety of sources that merely conveys an ordinary, familiar, well-recognized concept or sentiment. *See In re Volvo Cars of N. Am., Inc.*, 46 USPQ2d 1455, 1460-61 (TTAB 1998) (holding DRIVE SAFELY not registrable for automobiles and automobile parts because the mark would be perceived merely as an "everyday, commonplace safety admonition"); *In re Remington Prods., Inc.*, 3 USPQ2d 1714, 1715-16 (TTAB 1987) (holding PROUDLY MADE IN USA not registrable for electric shavers because the mark would be perceived merely as a common message encouraging the purchase of domestic-made products); TMEP §1202.04(b).

> Terms and expressions that merely convey an informational message are not registrable. *In re Eagle Crest, Inc.*, 96 USPQ2d 1227, 1229 (TTAB 2010). Determining whether the term or expression functions as a trademark or service mark depends on how it would be perceived by the relevant public. *In re Eagle Crest, Inc.*, 96 USPQ2d at 1229; *In re Aerospace Optics, Inc.*, 78 USPQ2d 1861, 1862 (TTAB 2006); TMEP §1202.04. "The more commonly a [term or expression] is used, the less likely that the public will use it to identify only one source and the less likely that it will be recognized by purchasers as a trademark [or service mark]." *In re Hulting*, 107 USPQ2d 1175, 1177 (TTAB 2013) (quoting *In re Eagle Crest, Inc*., 96 USPQ2d at 1229); TMEP §1202.04(b).

> [T]his term or expression is commonly used to refer to a specific level of membership, success, quality or rating and conveys that a person or entity has received such a rating.

(Doc. 83, at 244.) The nonfinal Office Actions rejecting ACT's trademark applications for

"GOLD," "SILVER," and "BRONZE" contain almost identical language. (*Id.* at 437, 570, 670.)

With respect to "BRONZE SILVER GOLD PLATINUM," the USPTO's nonfinal Office Action

explains that:

> Registration is refused because the applied-for mark, as used on the specimen of record, does not function as a service mark to identify and distinguish applicant's services from those of others and to indicate the source of applicant's services.

> Determining whether a designation functions as a mark depends on the commercial impression it makes on the relevant public and whether purchasers would be likely to regard it as a source-indicator for the services.

The specimen of record, along with any other relevant evidence of record, is reviewed to determine whether an applied-for mark is being used as a service mark.

In this instance, the applied-for mark, as shown on the specimen, does not function as a service mark because the wording "BRONZE SILVER GOLD PLATINUM" is being used to describe the four different levels an individual can be awarded through applicant's National Career Readiness Certificate program. This is underlined by the manner in which the mark is being presented, namely, "Bronze, Silver, Gold and Platinum", which doesn't lend itself to be viewed as a whole mark, but rather individual words, and by the fact that the specimen states that participants can earn these four different NCRC certificates. This use conveys to consumers that these credential levels are part of the ACT National Career Readiness Certificate program, and not the actual source of the credential program.

Further, the second page of the specimen shows each of the words separated into different sections listing out the requirements needed to obtain each ACT National Career Readiness Certificate at each of those levels. This specimen in particular highlights the use of the wording Bronze, Silver, Gold and Platinum to indicate a level of achievement, membership or status that is widely used across industries to indicate the exact same thing.

(Doc. 83, at 808 (internal citations omitted); *see also id.* at 743 (almost identical language pertaining to "PLATINUM GOLD SILVER BRONZE").)

After the initial rejections, ACT submitted its responses to the USPTO's nonfinal Office Actions. As part of its response, ACT requested that its Trademark Applications for "PLATINUM," "GOLD," "SILVER," and "BRONZE" be amended to seek registration of the terms as "certification marks," rather than "service marks." (Doc. 83, at 148–150, 297–99, 491–93, 606–08.)

On May 14, 2019, the USPTO issued further nonfinal Office Actions in which it rejected "PLATINUM," "GOLD," "SILVER," and "BRONZE" as certification marks:

Applicant's response does not show that others are authorized to use the applied-for mark and provide the applied-for services as the argument and exhibits provided both indicate that applicant utilizes and issues the applied-for mark. Specifically, applicant states that to earn an ACT NCRC credential at one of the four levels, consumers must successfully complete three ACT Work Keys

assessments.  Based on applicant's Exhibit B evidence, it appears as though applicant is providing the educational training related to this credential as it is the one conducting the courses needed to pass the required assessments and ultimately the party that conveys the credential to the consumer.  *See* Pages 15-19 of applicant's response.  It does not appear from this evidence or the rest of the exhibit that the mark is being used by other persons on their own services, with authorization from applicant.

. . . .

Lastly, a certification mark specimen must show how an authorized party other than the owner uses the mark in commerce to certify "regional or other origin, material, mode of manufacture, quality, accuracy, or other characteristics of that person's goods or services; or that members of a union or other organization performed the work or labor on the goods or services."  37 C.F.R. §2.56(bX5); TMEP §1306.02(aXi)(B).

In the present case, the specimen consists of a certificate issued by applicant.  The specimen does not show proper certification mark use because it highlights the fact that applicant is using the applied-for mark on a certificate that it provides to consumers.  There is nothing showing that the mark [is] used by others on their own services.

In this case, applicant is performing the services in connection with which the mark is used and thus is not a certification mark.  *See* TMEP §1306.01(a).

(Doc. 88-6, at 59 ("BRONZE"); *see also* Doc. 88-10, at 6 ("PLATINUM"); Doc. 88-11, at 13 ("GOLD"); Doc. 88-13, at 1 ("SILVER").)  The USPTO also issued further nonfinal Office Actions with respect to "BRONZE SILVER GOLD PLATINUM," and "PLATINUM GOLD SILVER BRONZE," reiterating its conclusion that the applied-for marks, "as used on the specimen of record," do not indicate the source of ACT's services or identify and distinguish them from others:

The applied-for mark, as shown on the specimen, does not function as a trademark because the mark simply appears as various levels or performance designators rather than the source of the applied-for services.  The term "PLATINUM GOLD SILVER BRONZE" does not appear to indicate the source of the services as each work is placed separately from each other and is placed in a "level of proficiency" category that invites consumers to view them as achievement designators rather than source designators.  ACT, WORKKEYS, NCRC, or ACT WORKKEYS NCRC appear to be the source designators here as

the specimen states that "the ACT NCRC is awarded at four levels". Thus, consumers view ACT NCRC as the source and "PLATINUM GOLD SILVER BRONZE" as merely the levels of achievement.

(Doc. 88-8, at 5–6 (""PLATINUM GOLD SILVER BRONZE"); *see also* Doc. 88-9, at 9–10 ("BRONZE SILVER GOLD PLATINUM").

In Counts III through V of its amended complaint,[3] ACT asserts claims against WIN under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), for: (1) unfair competition by infringement; (2) use of false designation; and (3) false advertising.[4] (Doc. 121, at 39–47.) WIN filed a motion for partial summary judgment only as to these claims (Doc. 80), and this motion is now ripe for the Court's review.

## II. STANDARD OF REVIEW

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court views the evidence in the light most favorable to the nonmoving party and makes all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

---

[3] Although WIN initially moved for summary judgment on Counts II through IV (*see* Doc. 80), ACT has since filed an amended complaint, and the claims on which WIN seeks summary judgment are now Counts III through V (*see* Doc. 121). During a telephone conference with the Court, the parties agreed that ACT's amendment did not change the substance of the Lanham Act claims and WIN's motion for summary judgment remains ripe for review.

[4] Count V of ACT's complaint alleges "false advertising" under the Lanham Act based on WIN's use of the alleged trademarks "PLATINUM GOLD SILVER BRONZE," "BRONZE SILVER GOLD PLATINUM," "PLATINUM," "GOLD," "SILVER," and "BRONZE," as well as statements by WIN concerning alignment of WIN's and ACT's respective products. (Doc. 121, at 43–47.) However, WIN only seeks summary judgment with respect to ACT's false advertising claim premised on WIN's alleged use of "PLATINUM GOLD SILVER BRONZE," "BRONZE SILVER GOLD PLATINUM," "PLATINUM," "GOLD," "SILVER," and "BRONZE." (Doc. 81, at 1 n.1.)

The moving party bears the burden of demonstrating that there is no genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). The moving party may meet this burden either by affirmatively producing evidence establishing that there is no genuine issue of material fact or by pointing out the absence of support in the record for the nonmoving party's case. *Celotex*, 477 U.S. at 325. Once the movant has discharged this burden, the nonmoving party can no longer rest upon the allegations in the pleadings; rather, it must point to specific facts supported by evidence in the record demonstrating that there is a genuine issue for trial. *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002).

At summary judgment, the Court may not weigh the evidence; its role is limited to determining whether the record contains sufficient evidence from which a jury could reasonably find for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). A mere scintilla of evidence is not enough; the Court must determine whether a fair-minded jury could return a verdict in favor of the non-movant based on the record. *Id.* at 251–52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994). If not, the Court must grant summary judgment. *Celotex*, 477 U.S. at 323.

III. **ANALYSIS**

A. **Timing of WIN's Motion for Partial Summary Judgment**

As a threshold matter, ACT argues that summary judgment is improper at this stage because, at the time of WIN's filing, there were eleven weeks remaining until the close of discovery and "ACT has been producing documents on a rolling basis." (Doc. 88, at 11–13.) ACT also asserts that WIN has taken no depositions in this case. (*Id.* at 13.) In response, WIN contends that ACT has not complied with the requirements of Rule 56(d) of the Federal Rules of

Civil Procedure, including the filing of a sworn affidavit or declaration setting forth the "specified reasons" why it cannot adequately defend a motion for summary judgment. (Doc. 90, at 3–5.) WIN also argues that ACT's current position is, in large part, due to its own failure to cooperate with discovery. (*Id.* at 3, 5.)

A litigant complaining that summary judgment is premature due to inadequate discovery "must, at a minimum, be able to show that [it] could obtain information through discovery that would disclose material facts." *Phillips v. Anderson Cty. Bd. of Educ.*, 259 F. App'x 842, 846 (6th Cir. 2008) (citing *Sierra Club v. Slater*, 120 F.3d 623, 638 (6th Cir. 1997)). "In other words, a plaintiff opposing a motion for summary judgment cannot simply argue that it needs more discovery—instead, the plaintiff must file a Rule [56(d)] affidavit or a motion that indicates to the district court 'what material facts it hopes to uncover' by the additional discovery requested." *Short v. Oaks Corr. Facility*, 129 F. App'x 278, 281 (6th Cir. 2005). In *Short*, the plaintiff filed a response to the motions for summary judgment, but did not file a Rule 56(d) affidavit; rather she "simply requested that she be given the opportunity for adequate discovery in the case, but did not request any specific discovery and did not in any way state what material facts she hoped to uncover as a result of additional discovery." *Id.* at 282. As a result, the Sixth Circuit determined the district court did not abuse its discretion in ruling on the motions for summary judgment. *Id.* Likewise, in this case, ACT has neither filed a Rule 56(d) motion nor specified what facts it seeks to uncover from further discovery. Accordingly, the Court finds no basis to defer ruling on WIN's motion for partial summary judgment.[5]

---

[5] Although the Sixth Circuit "has suggested that failure to file a motion or Rule 56[(d)] affidavit will be excused where the opposing party nonetheless explains its need for discovery," *Short*, 129 F. App'x at 282 n.2, ACT has not satisfied this minimum threshold.

**B.      Federal Trademark Infringement**

Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), creates a "federal cause of action

for infringement of marks and trade dress that have not obtained federal registration."

*T. Marzetti Co. v. Roskam Baking Co.*, 680 F.3d 629, 633 (6th Cir. 2012) (citing *Tumblebus v.*

*Cranmer*, 399 F.3d 754, 760–61 (6th Cir. 2005)).  Specifically, Section 43(a) provides that:

> **(1)** Any person who, on or in connection with any goods or services, or any
> container for goods, uses in commerce any word, term, name, symbol, or
> device, or any combination thereof, or any false designation of origin, false or
> misleading description of fact, or false or misleading representation of fact,
> which—
>
> > **(A)** is likely to cause confusion, or to cause mistake, or to deceive as to the
> > affiliation, connection, or association of such person with another person,
> > or as to the origin, sponsorship, or approval of his or her goods, services,
> > or commercial activities by another person, or
> >
> > **(B)** in commercial advertising or promotion, misrepresents the nature,
> > characteristics, qualities, or geographic origin of his or her or another
> > person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is
> likely to be damaged by such act.

15 U.S.C. § 1125.  "When evaluating a Lanham Act claim for infringement of an unregistered

mark, courts must determine whether the mark is protectable, and if so, whether there is a

likelihood of confusion as a result of the would-be infringer's use of the mark."  *T. Marzetti Co.*,

680 F.3d at 633 (citation omitted).  Thus, the threshold inquiry for any infringement claim under

this section is whether the mark in question is protectable.  *Id.* ("Obviously, if the mark is not

protectable, our inquiry ends there."); *see also Donchez v. Coors Brewing Co.*, 392 F.3d 1211,

1215–16 (10th Cir. 2004); *Rockland Exposition, Inc. v. All. of Auto. Serv. Providers of New*

*Jersey*, 894 F. Supp. 2d 288, 304 (S.D.N.Y. 2012), *as amended* (Sept. 19, 2012).  It is the

plaintiff's burden to demonstrate that an unregistered term is protectable under Section 43(a). *E.g.. Donchez*, 392 F.3d at 1216.

"Not every single word, phrase, design or picture that appears on a label, webpage or in an advertisement qualifies as a protectable mark . . . ." 3 McCarthy on Trademarks and Unfair Competition § 3:4 (5th ed. 2019). "[T]he general principles qualifying a mark for registration under . . . the Lanham Act are for the most part applicable in determining whether an unregistered mark is entitled to protection under § 43(a)." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992). A designation that is used to identify and distinguish the source of services can be federally registered as a "service mark." 3 McCarthy on Trademarks and Unfair Competition § 4:7 (5th ed. 2019). In other words, such a designation is protectable. Likewise, a designation that is used to certify "regional or other origin, material, mode of manufacture, quality, accuracy, or other characteristics of such person's goods or services or that the work or labor on the goods or services was performed by members of a union or other organization" can be federally registered or is protectable as a certification mark. *Id.* § 4.8.

As a threshold issue, WIN relies heavily on the logic in the USPTO's Office Actions rejecting ACT's federal trademark applications. (Doc. 81, at 17–19.) But "a trademark examining attorney's opinion is not entitled to a procedural presumption or a reasonable inference drawn in its favor in circumstances when the USPTO fails to consider the same evidence that is subsequently placed in front of the district court." *Progressive Distrib. Servs., Inc. v. United Parcel Serv., Inc.*, 856 F.3d 416, 426 (6th Cir. 2017) (citation omitted). The same is true when the examiner's decision is a preliminary one that does "not even bind the examiner, let alone speak with the full weight of the Trademark Trial and Appeal Board." *Id.* at 427.

Here, the USPTO Office Actions at issue are all nonfinal. (Doc. 83, at 246, 436, 572, 672, 742, 810; Doc. 88-6, at 59; Doc. 88-8, at 3; Doc. 88-9, at 7; Doc. 88-10, at 5; Doc. 88-11, at 12, Doc. 88-12, at 19); *see also* United States Patent and Trademark Office, *Responding to office actions*, https://www.uspto.gov/trademarks-maintaining-trademark-registration/responding-office-actions (June 7, 2019) (describing that an applicant has six months to respond to a nonfinal office action). Additionally, ACT has submitted extensive evidence to this Court that was not before the USPTO when it issued its Office Actions. (Doc. 83, at 867–918; Doc. 83-1, at 1–283; Doc. 83-2, at 1–223; Doc. 83-3, at 1–229; Doc. 88-1, at 10–105; Doc. 88-2, at 1–88; Doc. 88-3, at 1–33; Doc. 88-4, at 1–56; Doc. 88-5, at 1–56; Doc. 88-6, at 1–59; Doc. 88-7, at 1–18; Doc. 88-8, at 1–22; Doc. 88-9, at 1–21; Doc. 88-10, at 1–15; Doc. 88-11, at 1–15; Doc. 88-12, at 1–19; Doc. 88-13, at 1–13; Doc. 88-14, at 1–200; Doc. 88-15, at 1–75.) Accordingly, although the Court may look to the USPTO Office Actions "to inform its conclusions on trademark analysis," *Progressive*, 856 F.3d at 427, it will not assign them any weight in analyzing the instant motion for summary judgment.[6] *Accord A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 221 (3d Cir. 2000) ("[A]lthough an initial PTO

---

[6] ACT also argues—in response to WIN's reliance on the USPTO Office Actions—that, even if the USPTO ultimately denies its trademark applications, it may still have valid trademarks if it can demonstrate "prior continuous use of its mark." (Doc. 88, at 13–14.) However, this priority argument is inapposite; it presupposes that both WIN and ACT are using the alleged marks *as trademarks*, but whether ACT uses "PLATINUM," "GOLD," "SILVER," "BRONZE," "PLATINUM GOLD SILVER BRONZE" and "BRONZE SILVER GOLD PLATINUM" as trademarks is precisely the issue WIN raises in its motion for partial summary judgment. *Cf. LFP IP, LLC v. Hustler Cincinnati, Inc.*, 810 F.3d 424, 429 (6th Cir. 2016) (affirming district court's finding that plaintiff's mark was valid despite USPTO's denial because he "presented evidence that he *used* the mark in connection with a wide range of [products]"); *see also Rock & Roll Hall of Fame & Museum, Inc. v. Gentile Prods.*, 134 F.3d 749, 753–54 (6th Cir. 1998) (plaintiff alleging infringement of a service mark "must show that it has actually used the designation at issue *as a trademark*").

determination by an examining attorney may be considered, it need not be given weight when the PTO attorney did not review all the evidence available to the District Court.").

WIN argues that it is entitled to summary judgment on ACT's trademark-infringement claim because the terms "PLATINUM," "GOLD," "SILVER," "BRONZE," and the phrases "PLATINUM GOLD SILVER BRONZE" and "BRONZE SILVER GOLD PLATINUM," are not used by ACT as trademarks, either as service marks or certification marks. WIN asserts that ACT cannot establish that these words and phrases are protectable. (Doc. 81, at 1–2, 14–21.) Thus, the Court's analysis of WIN's motion for summary judgment on ACT's infringement claim necessarily begins with the question of whether ACT has a valid, protectable trademark, whether defined as a service mark or a certification mark.

### i. Whether ACT Used "PLATINUM GOLD SILVER BRONZE" and "BRONZE SILVER GOLD PLATINUM" as Service Marks

WIN argues that ACT does not use the words "BRONZE," "SILVER," "GOLD," or "PLATINUM" or the phrases "PLATINUM GOLD SILVER BRONZE" and "BRONZE SILVER GOLD PLATINUM" as service marks. Although ACT maintains that it uses "PLATINUM GOLD SILVER BRONZE" and "BRONZE SILVER GOLD PLATINUM" as service marks, it does not attempt to argue that any one of "BRONZE," "SILVER," "GOLD," or "PLATINUM" is a service mark. Instead, as discussed more fully below, ACT argues only that "BRONZE," "SILVER," "GOLD," and "PLATINUM" individually qualify as certification marks. (Doc. 88, at 15–25.) Accordingly, ACT has abandoned any argument that "BRONZE," "SILVER," "GOLD," or "PLATINUM" is a service mark. *See Emerson v. Novartis Pharm. Corp.*, 446 F. App'x 733, 736 (6th Cir. 2011) ("A district court is not required to 'search the entire record to establish that it is bereft of a genuine issue of material fact.'"); *United States v.*

*Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs.").

The Lanham Act defines a service mark as a mark used "to identify and distinguish the services of one person, including a unique service, from the services of others and ***to indicate the source of the services, even if that source is unknown***." 15 U.S.C. § 1127 (emphasis added). "A 'service mark' is identical to a trademark in all respects except that it is intended to indicate the origin of services, rather than goods." *Caliber Auto. Liquidators, Inc. v. Premier Chrysler, Jeep, Dodge, LLC*, 605 F.3d 931, 934 (11th Cir. 2010) (citation omitted). For example, "TENNESSEE WALKING HORSE BREEDERS' AND EXHIBITORS' ASSOCIATION" is used as a service mark in connection with specific services including maintenance of the TWHBEA Registry, sporting events, and competitions for the Tennessee Walking Horse. *See Tennessee Walking Horse Breeders' & Exhibitors' Ass'n v. National Walking Horse Ass'n*, 528 F. Supp. 2d 772, 775 (M.D. Tenn. 2007); *see also Lebewohl v. Heart Attack Grill LLC*, 890 F. Supp. 2d 278, 290 (S.D.N.Y. 2012) (describing that the "Instant Heart Attack Sandwich" possesses dimensions of a service mark because "[t]he sandwich is, at once, a product that can be readily identified as a . . . part of the services offered by the Deli, a service establishment, to patrons").

To claim a valid service mark, or to have a protectable mark, it is not enough for ACT "to be a provider of services; ***[ACT] also must have used the mark to identify the named services*** . . . ." *In re Advert. & Mktg. Dev., Inc.*, 821 F.2d 614, 620 (Fed. Cir. 1987) (emphasis added) (holding that advertising firm had used THE NOW GENERATION as a mark for its promotional services based on letterhead naming itself as the "creators, producers and *suppliers* of THE NOW GENERATION sales *promotion services*" as well as "postcard and magazine advertising

specimens to the same effect"); *see, e.g.*, *St. Luke's Cataract & Laser Inst., P.A. v. Sanderson*, 573 F.3d 1186, 1207 (11th Cir. 2009) (holding that plaintiff produced sufficient evidence for a jury to find that its use of "LaserSpecialist.com" was a service mark where it used the mark on its website "to identify St. Luke's as a source of oculoplastic surgery"). In other words, a plaintiff alleging infringement of a service mark "must show that it has actually used the designation at issue *as a trademark* [or service mark]." *Rock & Roll Hall of Fame & Museum, Inc. v. Gentile Prods.*, 134 F.3d 749, 753–54 (6th Cir. 1998) (emphasis in original); *accord Am. Express Co. v. Goetz*, 515 F.3d 156, 159 (2d Cir. 2008) (describing that "a mark that does not perform the role of identifying a source is not a trademark").

Specifically, WIN argues that ACT's alleged marks "merely indicate levels of achievement and are not source indicative." (Doc. 81, at 18.) In response, ACT argues that it has used the phrases "PLATINUM GOLD SILVER BRONZE" and "BRONZE SILVER GOLD PLATINUM" since at least 2009 to "denote the source of its national career readiness certification program." (Doc. 88, at 24.) ACT also points to multiple sources it contends show it uses "PLATINUM GOLD SILVER BRONZE" and "BRONZE SILVER GOLD PLATINUM" as service marks, including advertisements and marketing materials, employer guides, technical documentation, and evidence from third parties showing that these phrases create "the commercial impression of a source-indicator to the relevant public." (*Id.*)

"Unlike trademarks, service marks usually cannot be 'affixed' or displayed in close connection with the services, so advertisements and solicitations are often used as evidence of use." *Am. Express*, 515 F.3d at 161; *see also In Re Moody's Inv'rs Serv. Inc.*, 13 U.S.P.Q.2d 2043 (T.T.A.B. 1989) ("Whether a designation sought to be registered has been used as a mark for the goods or services recited in an application must be determined by examining the

specimens of record in the application."). For example, in *Advertising & Marketing*, the Federal

Circuit held that the Trademark and Trial Appeal Board erred in refusing to allow the plaintiff to

register his alleged service mark and determined that the plaintiff had in fact used THE NOW

GENERATION as a mark for its promotional services after reviewing the plaintiff's submitted

evidence:

> [The plaintiff] submitted a letterhead specimen naming itself as the "creators,
> producers and *suppliers* of THE NOW GENERATION sales *promotion services*
> and specialized advertising campaigns *for* automobile dealers, financial
> institutions and retailers." This letterhead was actually used in correspondence
> with financial institutions and automobile dealers regarding [the plaintiff's]
> promotional services. It is difficult to imagine how [the plaintiff] could have
> made a clearer use of the mark to identify its promotional services. However, if
> any doubt remained, on remand [the plaintiff] submitted postcard and magazine
> advertising specimens to the same effect, as well as affidavits from purchasers of
> [its] services stating that they considered THE NOW GENERATION to identify
> [the plaintiff's] promotional services.

821 F.2d at 621. Similarly, in *Rockland Exposition*, the district court denied summary judgment,

finding that the plaintiff had provided at least some evidence to show it used "Northeast" in

connection with its service of organizing and promoting automotive trade shows because the

show promotional materials identified the plaintiff as the show's producer and displayed its

"Northeast" slogan to consumers. 894 F. Supp. 2d at 304.

Thus, determining whether ACT utilizes "PLATINUM GOLD SILVER BRONZE" and

"BRONZE SILVER GOLD PLATINUM" as service marks requires a review of the

specimens—the advertisements, employer guides, technical documentation, and evidence from

third parties—that ACT relies on. WIN does not specifically address any of ACT's

supplemental evidence in its reply. (*See generally* Doc. 90.) Instead, WIN reverts to its

argument that the USPTO has so far rejected ACT's Trademark Applications and argues

generally that ACT fails "to identify any evidence" that it uses 'PLATINUM GOLD SILVER

BRONZE' and 'BRONZE SILVER GOLD PLATINUM' in any way other than as 'levels of achievement on its [NCRC].'"  (Doc. 90, at 2, 6.)

After conducting an independent review of the evidence pointed to by ACT, the Court is unconvinced that ACT uses "PLATINUM GOLD SILVER BRONZE" and "BRONZE SILVER GOLD PLATINUM" as service marks.  Specifically, it does not appear that ACT uses "PLATINUM GOLD SILVER BRONZE" and "BRONZE SILVER GOLD PLATINUM" to identify or designate the source of its stated service of "[p]roviding an assessment-based credential which measures and certifies the essential work skills needed for success in jobs across multiple industries and occupations."  (Doc. 83, at 261, 308, 585, 684, 754, 821.)  Rather, like the specimens previously submitted to the USPTO in its Trademark Applications, the supplemental specimens before the Court all appear to use "PLATINUM GOLD SILVER BRONZE" and "BRONZE SILVER GOLD PLATINUM" as levels of achievement rather than as marks used "to identify and distinguish the services of [ACT] . . . from the services of others and *to indicate the source of the services* . . . ."  15 U.S.C. § 1127 (emphasis added).

For example, one of ACT's marketing materials—under a bolded "National Career Readiness Certificate" heading—describes that "[r]ecipients are awarded certificates of Platinum, Gold, Silver, or Bronze levels, depending on their skill levels in Applied Mathematics, Reading for Information, and Locating Information."  (Doc. 83-1, at 84.)  Similarly, another of ACT's marketing materials describes that the ACT NCRC is "[a]warded at four levels—Platinum, Gold, Silver, and Bronze" and goes on to describe the "score" recipients must achieve in order to reach that level.  (*Id.* at 88–89.)

Yet another example, an employer guide cited by ACT, discusses Bronze, Silver, Gold, and Platinum only with reference to the levels at which individuals can earn NCRC certificates.

(Doc. 83, at 889.)  And a research study cited by ACT includes the "Platinum," "Gold," "Silver," "Bronze," levels in a bar graph demonstrating the "Percent of NCRC Qualifiers by NCRC Level."  (Doc. 83-2, at 9.)  ACT also highlights three pieces of evidence from third parties, but each of these specimens displays or discusses the alleged marks only in the context of an achievement level.  For example, an article notes that "[f]or any participating county, ACT's Work Ready Communities website displays a list of employers in an area who recognize the credential, as well as the number of individuals who have achieved *one of four levels of NCRC certification, based on test results: bronze, silver, gold or platinum*."  (Doc. 83, at 906; *see also* Doc. 83-1, at 81; Doc. 83-3, at 173.)  Based on the similarity between the supplemental specimens before the Court and the specimens submitted to USPTO, the Court agrees with and adopts the USPTO's reasoning that the applied-for marks do not function as service marks because the wording "BRONZE SILVER GOLD PLATINUM" and "PLATINUM GOLD SILVER BRONZE":

> is being used to describe the four different levels an individual can be awarded through applicant's National Career Readiness Certificate program.  This is underlined by the manner in which the mark is being presented, namely, "Bronze, Silver, Gold and Platinum", which doesn't lend itself to be viewed as a whole mark, but rather individual words, and by the fact that the specimen states that participants can earn these four different NCRC certificates.  This use conveys to consumers that these credential levels are part of the ACT National Career Readiness Certificate program, and not the actual source of the credential program.

(Doc. 83, at 808 (internal citations omitted); *see also id.* at 743 (almost identical language pertaining to "PLATINUM GOLD SILVER BRONZE").)  Moreover, in many, if not all, of the specimens submitted by ACT, the terms "PLATINUM GOLD SILVER BRONZE" and "BRONZE SILVER GOLD PLATINUM" are not set off from the text or are not a main focal point.  This factor further weighs against its use as a service mark.  *See Rockland Exposition*, 894

F. Supp. 2d at 307; *see also In Re Post Properties, Inc.*, 227 U.S.P.Q. (BNA) ¶ 334 (T.T.A.B.

Aug. 30, 1985) ("We find this use of "QUALITY SHOWS" to be used in the manner of a service

mark. The mark is set off distinctively from the text of the ad copy in an extremely large

typeface. It is not an ordinary informational statement."). The Court finds "PLATINUM GOLD

SILVER BRONZE," and "BRONZE SILVER GOLD PLATINUM" are not service marks. It

will therefore **GRANT** WIN's motion for partial summary judgment on ACT's claim that WIN

infringed "PLATINUM GOLD SILVER BRONZE" and "BRONZE SILVER GOLD

PLATINUM."

### ii. *Whether "PLATINUM," "GOLD," "SILVER," and "BRONZE" Are Certification Marks*

The Lanham Act defines a certification mark as a mark used "by a person other than its

owner" or "which its owner has a bona fide intention to permit a person other than the owner to

use in commerce" to "certify regional or other origin, material, mode of manufacture, quality,

accuracy, or other characteristics of such person's goods or services or that the work or labor on

the goods or services was performed by members of a union or other organization." 15 U.S.C. §

1127 (emphasis added). "A certification mark is a special creature created for a purpose very

different from that of an ordinary trademark or service mark. It is a mark owned by one person

and used by others in connection with their goods or services to certify quality, regional or other

origin."[7] 3 McCarthy on Trademarks and Unfair Competition § 19:91 (5th ed. 2019); *see also*

Restatement (Third) of Unfair Competition § 11 (1995) ("Certification marks indicate that a

---

[7] There are three primary types of certification marks: (1) "[t]he 'Underwriters Laboratories'-type certification of quality of goods or services"; (2) "[t]he "Roquefort Cheese"-type of certification of regional origin"; and (3) "[t]he 'Union Label'-type certification that goods were made or services performed by union labor." 3 McCarthy on Trademarks and Unfair Competition § 19:91 (5th ed. 2019).

person other than the producer or seller of the goods or services certifies that the product meets

the criteria established for authorized use of the certification mark.").  For example, "BBB" is

registrable as a certification mark used to indicate to investors that securities meet the standards

established by Standard and Poor's.  *See In re Standard and Poor's Corp.*, 19 U.S.P.Q.2d 1684

(T.T.A.B. 1991).

Certification marks are "generally entitled to the same kind of protection from

infringement as are other types of marks."  *Id.* § 19:92.50; *see also Int'l Info. Sys. Sec.*

*Certification Consortium, Inc. v. Sec. Univ., LLC*, 823 F.3d 153, 159–60 (2d Cir. 2016) ("In spite

of the differences between certification marks and other types of marks, the Lanham Act

provides that certification marks are generally entitled to the same protection from infringement

as are trademarks.").  The most common examples of infringement of certification marks are

"the use of the mark in a resume of a professional who is in fact not certified by the organization

that is the owner of the mark; and the use of the mark on goods that have not in fact been

certified."  *Id.* at 163 (citation omitted).

WIN argues that it is entitled to summary judgment on ACT's claim for infringement

based on WIN's use of "PLATINUM," "GOLD," "SILVER," and "BRONZE" because ACT

uses these terms only as indications of levels of achievement.[8]  WIN relies on § 1306 of the

USPTO's Trademark Manual of Examining Procedure ("TMEP"), which describes that, like the

requirement for trademark and service marks, a mark cannot be registered if:

---

[8] WIN also appears to argue in its motion that ACT did not adequately plead ownership of
"PLATINUM," "GOLD," "SILVER," and "BRONZE" as certification marks in its complaint.
However, in its reply, WIN focuses only on the merits of whether "PLATINUM," "GOLD,"
"SILVER," and "BRONZE" are certification marks.  Nevertheless, the Court finds that ACT did
adequately allege ownership of "PLATINUM," "GOLD," "SILVER," and "BRONZE" as
certification marks.

the specimen fails to show the applied-for mark functioning as a certification mark . . . .  For example, ***registration should be refused on this basis where the specimen shows use only as an educational or other degree or title awarded to individuals, and not use as a certification mark.***  Titles and degrees indicate qualifications or attainments of a person; they do not pertain to or certify services that have been performed by the person.  *See* TMEP §1306.04(d)(ii).

TMEP § 1306.04 (emphasis added).  However, § 13.04(d)(ii) also describes that:

> Occasionally, it is not clear whether a term is being used to certify that work or labor relating to the goods or services was performed by someone meeting certain standards or by members of a union or other organization to indicate membership, or whether the term is merely being used as a title or a degree of the performer to indicate professional qualifications.  ***Matter that might appear to be simply a title or a degree may function as a certification mark if used in the proper manner.***  *See In re Council on Certification of Nurse Anesthetists*, 85 USPQ2d 1403 (TTAB 2007) (CRNA functions as certification mark used to certify that anesthesia services are being performed by a person who meets certain standards and tests of competency); *In re Software Publishers Ass'n*, 69 USPQ2d 2009 (TTAB 2003) (CERTIFIED SOFTWARE MANAGER used on certificate merely indicates that holder of the certificate has been awarded a title or degree, and is not likely to be perceived as certification mark); *In re Nat'l Ass'n of Purchasing Mgmt.*, 228 USPQ 768 (TTAB 1986) (C.P.M. used merely as title or degree, not as certification mark); *In re Nat'l Ass'n of Legal Secretaries (Int'l)*, 221 USPQ 50 (TTAB 1983) (PROFESSIONAL LEGAL SECRETARY not used on the specimen in such a way as to indicate certification significance); *In re Nat'l Inst. for Auto. Serv. Excellence, supra* (design mark not used simply as a degree or title, but to certify that the performer of the services had met certain standards); *In re Inst. of Certified Prof'l Bus. Consultants*, 216 USPQ 338 (TTAB 1982) (CPBC not used as a certification mark for business consulting services, but only as a title or degree); *In re Prof'l Photographers of Ohio, Inc.*, 149 USPQ 857 (TTAB 1966) (CERTIFIED PROFESSIONAL PHOTOGRAPHER used only as the title of a person, not as a certification mark); *cf. In re Univ. of Miss.*, 1 USPQ2d 1909 (TTAB 1987) (use of university seal on diplomas did not represent use as a certification mark).

TMEP § 13.04(d)(ii) (emphasis added).[9]  "[T]he TMEP is instructive, but 'is not established law.'"  *In re Sones*, 590 F.3d 1282, 1288 (Fed. Cir. 2009) (quotation omitted).  Nevertheless, the

---

[9] Also, although not raised by WIN in its initial motion, the USPTO denied ACT's Trademark Application in its nonfinal Office Action noting that:

> [A] certification mark specimen must show how an authorized party other than the owner uses the mark in commerce to certify "regional or other origin, material, mode of manufacture, quality, accuracy, or other characteristics of that

TMEP represents the USPTO's established policies, and Courts regularly follow its guidance. *See In re Pennington Seed, Inc.*, 466 F.3d 1053, 1059 (Fed. Cir. 2006) (deciding to follow the TMEP's guidance and describing that, although "the TMEP is not established law," it does represent the USPTO's "established policy . . . that is entitled to [the court's] respect").

In response to WIN, ACT argues that "PLATINUM," "GOLD," "SILVER," and "BRONZE" are certification marks because they are used by job seekers "to certify (with ACT's authorization) that such job seekers' services meet certain employment and/or educational qualifications set by ACT." (Doc. 88, at 16.) ACT cites *In re Council on Certification of Nurse Anesthetists*, 85 U.S.P.Q.2d 1403, 2007 WL 894418 (T.T.A.B. 2007), in support, arguing that it has proffered evidence similar to that which the TTAB found sufficient to establish "CRNA" as a certification mark in that case. In *Nurse Anesthetists*, the TTAB considered a certificate issued to certified registered nurse anesthetists that indicates the holder has satisfied requirements for certification and is entitled to recognition as a CRNA, as well as brochures and certificates CRNAs display at their businesses which describe that CRNAs are "advanced practice nurses with specialized graduate-level education in anesthesiology." *Id.* at *8. Based on this evidence,

---

person's goods or services; or that members of a union or other organization performed the work or labor on the goods or services." 37 C.F.R. §2.56(bX5); TMEP §1306.02(aXi)(B).

In the present case, the specimen consists of a certificate issued by applicant. ***The specimen does not show proper certification mark use because it highlights the fact that applicant is using the applied-for mark on a certificate that it provides to consumers. There is nothing showing that the mark used by others on their own services.***

(Doc. 88-6, at 59 (emphasis added).)

the TTAB reversed the USPTO's refusal on the grounds that CRNA does not function as a certification mark:[10]

> We find that the sample certificate, brochure and above literature indicate that the CRNA designation serves as a certification mark. The CRNA designation, when used by a nurse anesthetist certified by applicant, serves to certify a characteristic of anesthesia services performed by him/her, namely that the services are being performed by a person who meets certain standards and tests of competency set by applicant, an indication that the nurse anesthesia services being performed are of the highest quality. Applicant has stated that the certificate and brochure, in particular, are displayed by certified registered nurse anesthetists at their places of business. The certificate and brochure, along with applicant's literature concerning its standards and competency tests, serve to demonstrate that the CRNA designation would be perceived as a certification mark by the ultimate recipients of the services, namely surgical patients, and doctors and hospital administrators.

*Id.* at *10.

"[A] certification mark for services must be used in a manner analogous to that of a service mark, namely in the sale or advertising of the services rendered." *In Re Software Publishers Assoc.*, 69 U.S.P.Q.2d 2009 (T.T.A.B. 2003). "The crucial question in these types of cases is whether the mark is used in such a manner that it would be perceived by the ***relevant purchasing public*** as a certification mark or rather if the use reflects that it would be perceived as merely a title or degree held by the bearer thereof." *Id.* (emphasis added). This question "must be determined on the basis of the manner and context in which the designation is used, as revealed by the specimens and other literature of record, and the significance which the designation is likely to have to members of the relevant public because of the manner in which it is used." *Id.* Accordingly, just as in deciding the service-mark issue, the Court must examine the evidence proffered by ACT to determine whether "PLATINUM," "GOLD," "SILVER," and "BRONZE" are functioning as certification marks. Although much of the evidence submitted by

---

[10] Ultimately, registration of CRNA was refused on alternative grounds. *Id.* at *15–*16.

ACT illustrates that ACT—the owner—is using "PLATINUM," "GOLD," "SILVER," and "BRONZE," there are several pieces of evidence that create at least a genuine issue of material fact as to whether "PLATINUM," "GOLD," "SILVER," and "BRONZE" are used by an authorized party other than ACT—the job seekers—to certify that their workplace skills are of a certain quality.

ACT submitted an example of the certificate that individuals receive after earning the NCRC at different levels which reads: "ACT certifies that Jane P. Sample has earned the ACT National Career Readiness Certificate$^{TM}$ at the Silver level," (Doc. 83-3, at 225), as well as evidence that at least some of these individuals have used their certificates to obtain jobs. (*See* Doc. 88-3, at 2 ("More than 14,000 Georgians found work using their certificates during the one-year period of January 1 to December 31, 2010").) ACT also points to a review of its WorkKeys program by two external experts, commissioned by ACT, that describes that "ACT has combined three of the WorkKeys assessments — Reading for Information, Applied Mathematics, and Locating Information — to develop a portable credential that prospective employees can use to show employers that they have attained a certain level of core employability skills." (Doc. 88-14, at 140.) Although not strong, this evidence raises a question of fact as to whether the relevant purchasing public—prospective employers—would perceive "PLATINUM," "GOLD," "SILVER," and "BRONZE" as certification marks or merely as a title or degree held by the certificate holder. Accordingly, the Court will **DENY** WIN's motion for summary judgment on this claim.

### C.    False Designation of Origin

Claims for false designation of origin are resolved under the same standard as claims for infringement. *Maker's Mark Distillery, Inc. v. Diageo N. Am., Inc.*, 703 F. Supp. 2d 671, 688

n.17 (W.D. Ky. 2010), *aff'd*, 679 F.3d 410 (6th Cir. 2012); *see also Children's Legal Servs. PLLC v. Kresch*, 545 F. Supp. 2d 653, 660 (E.D. Mich. 2008), *aff'd sub nom. Children's Legal Servs., P.L.L.C. v. Saiontz, Kirk & Miles, P.A.*, No. 08-1677, 2009 WL 1868809 (6th Cir. June 18, 2009).  Thus, validity or protectability of a trademark is a threshold issue in resolving claims for false designation of origin.  *T. Marzetti Co.*, 680 F.3d at 633.  Because the Court determined that "PLATINUM GOLD SILVER BRONZE," and "BRONZE SILVER GOLD PLATINUM" are not service marks, it will **GRANT** WIN's motion for partial summary judgment on ACT's false-designation-of-origin claim with respect to "PLATINUM GOLD SILVER BRONZE," and "BRONZE SILVER GOLD PLATINUM."  Conversely, it will **DENY** WIN's motion for partial summary judgment on ACT's false designation of origin claim with respect to "PLATINUM," "GOLD," "SILVER," and "BRONZE" because there remains a genuine dispute of material fact as to the protectability of "PLATINUM," "GOLD," "SILVER," and "BRONZE."[11]

### D.    False Advertising

False-advertising claims under the Lanham Act require a plaintiff to establish that: (1) "the defendant has made false or misleading statements of fact concerning his own product or another's"; (2) "the statement actually deceives or tends to deceive a substantial portion of the intended audience"; (3) "the statement is material in that it will likely influence a deceived consumers' purchasing decisions"; (4) "the advertisements were introduced into interstate commerce"; and (5) "there is some causal link between the challenged statements and harm to the plaintiff."  *Balance Dynamics Corp. v. Schmitt Indus., Inc.*, 204 F.3d 683, 689 (6th Cir. 2000)

---

[11] WIN did not argue that summary judgment was proper on this claim on any basis other than that there is no protectable trademark.  (*See generally* Doc. 81.)

(quoting *Am. Council of Certified Podiatric Physicians & Surgeons v. Am. Bd. of Podiatric Surgery, Inc.*, 185 F.3d 606, 613 (6th Cir. 1999)).

In its amended complaint, ACT alleges that "Defendants' use of "PLATINUM GOLD SILVER BRONZE" and "BRONZE GOLD SILVER PLATINUM" as well as "BRONZE," "SILVER," "GOLD" and "PLATINUM," in commercial advertising or promotion "is a misrepresentation of the nature, characteristics, qualities or geographic origin of its goods, services or commercial activities, in violation of 15 U.S.C. § 1125(a)(1)(B)." (Doc. 121, at 43–44.) Thus, WIN's "false or misleading statement of fact" alleged by ACT is that of a "false designation of origin" stemming from an alleged violation of 15 U.S.C. § 1125(a)(1). Accordingly, ACT's success on this claim requires that it establish an underlying claim for false designation of origin. In other words, ACT must establish ownership of a valid trademark. *T. Marzetti Co.*, 680 F.3d at 633.

As described above, because the Court determined that "PLATINUM GOLD SILVER BRONZE" and "BRONZE SILVER GOLD PLATINUM" are not service marks, it granted WIN's motion for partial summary judgment on ACT's false designation of origin claim with respect to "PLATINUM GOLD SILVER BRONZE" and "BRONZE SILVER GOLD PLATINUM." Therefore, it will also **GRANT** WIN's motion for partial summary judgment on ACT's false-advertising claim with respect to "PLATINUM GOLD SILVER BRONZE," and "BRONZE, SILVER, GOLD, PLATINUM." However, the Court will **DENY** WIN's motion for partial summary judgment on ACT's false designation of origin claim with respect to "PLATINUM," "GOLD," "SILVER," and "BRONZE because there remains a genuine dispute of material fact as to the protectability of "PLATINUM," "GOLD," "SILVER," and "BRONZE."

### IV.    CONCLUSION

For the reasons set forth above, the Court **GRANTS IN PART** and **DENIES IN PART** WIN's motion for partial summary judgment (Doc. 80).  ACT's claims for infringement, false designation of origin, and false advertising premised on WIN's use of "PLATINUM GOLD SILVER BRONZE" and "BRONZE SILVER GOLD PLATINUM" are hereby **DISMISSED WITH PREJUDICE.**  ACT's claims for infringement, false designation of origin, and false advertising premised on WIN's use of "PLATINUM," "GOLD," "SILVER," and "BRONZE" will proceed to trial.

**SO ORDERED.**

*/s/ Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**