*ACT, Inc. v. Worldwide Interactive Network, Inc.*
**U.S. District Court for the Eastern District of Tennessee**
**Case No. 3:18-cv-00186-TRM-HBG**

# EXHIBIT B

**PLAINTIFF AND COUNTER-DEFENDANT ACT, INC.'S
OPPOSITION TO MOTION TO DE-DESIGNATE**

```
 1          IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF TENNESSEE
 2
        VIDEOTAPED DEPOSITION OF TERESA CHASTEEN
 3                    MAY 31, 2019
 4   ------------------------------
     ACT, INC.,                    )
 5            Plaintiff and        )
              Counter-Defendant,)CASE NO.
 6        vs.                      )3:18-cv-00186-TRM-HBG
     WORLDWIDE INTERACTIVE         )
 7   NETWORK, INC.,                )
              Defendant and        )
 8            Counter-Claimant.  )
     ------------------------------
 9
     APPEARANCES:
10       FOR THE PLAINTIFF and COUNTER-DEFENDANT:
11       LAURA L. CHAPMAN, ESQ.
         SHEPPARD, MULLIN, RICHTER & HAMPTON LLP.
12       Four Embarcadero Center, 17th Floor
         San Francisco, California 94111
13       (415) 434-9100
14       FOR THE DEFENDANT and COUNTER-CLAIMANT:
15       W. KYLE CARPENTER, ESQ.
16       CHAD HATMAKER, ESQ.
         WOOLF, McCLANE, BRIGHT, ALLEN
17       & CARPENTER, PLLC
         900 South Gay Street
18       Knoxville, Tennessee 37902
         (865) 215-1000
19       JACOB G. HORTON, ESQ.
20       PITTS & LAKE, P.C.
         1319 Old Weisgarber Road
21       Knoxville, Tennessee 37909
         (865) 584-0105
22
23   ALSO PRESENT:
         ANGIE POPLIN, Videographer
24
25   PAGES 1 - 256
```

Page 1

```
 1              S T I P U L A T I O N

 2          The videotaped deposition of TERESA

 3    CHASTEEN, called as a witness at the instance of

 4    the Plaintiff, taken pursuant to all rules

 5    applicable to the Tennessee Rules of Civil

 6    Procedure by notice on the 31st day of May 2019, at

 7    9 a.m., at the offices of SCOTT & CAIN, 606 W. Main

 8    Street, Suite 222, Knoxville, Tennessee 37902

 9    before Catherine Golembeski, Licensed Court

10    Reporter, Registered Professional Reporter and

11    NJCCR, pursuant to stipulation of counsel.

12          It being agreed that Catherine Golembeski,

13    Licensed Court Reporter, RPR, NJCCR, may report the

14    deposition in machine shorthand, afterwards

15    reducing the same to typewriting.

16          All objections except as to the form of the

17    questions are reserved to on or before the hearing.

18          It being further agreed that all formalities

19    as to notice, caption, certificate, transmission,

20    et cetera, excluding the reading of the completed

21    deposition by the witness and the signature of the

22    witness, are expressly waived.

23

24

25

                                               Page  2
```

```
 1              I N D E X

 2          E X A M I N A T I O N S

 3    TERESA CHASTEEN                              Page

 4    Examination by Ms. Chapman                    6

 5

 6              E X H I B I T S

 7    No.           Description                    Page

 8    Exhibit 252   WorkKeys Publisher Agreement    117

 9    Exhibit 253   E-mail 7/15/08                  119

10    Exhibit 254   E-mail Exchange                 125

11    Exhibit 255   E-mail Exchange                 127

12    Exhibit 256   E-mail 6/23/10                  132

13    Exhibit 257   E-mail 12/15/10                 133

14    Exhibit 258   E-mail 12/16/10                 138

15    Exhibit 259   E-mail Exchange                 140

16    Exhibit 260   First Amendment                 141

17    Exhibit 261   Collective Group of Documents   146

18    Exhibit 262   Procurement Contract            187

19    Exhibit 263   E-mail 3/16/12                  193

20    Exhibit 264   E-mail 1/9/13                   195

21    Exhibit 265   E-mail 5/6/13                   197

22    Exhibit 266   E-mail 1/6/15                   199

23    Exhibit 267   E-mail Correspondence           199

24    Exhibit 268   E-mail 7/25/10                  201

25    Exhibit 269   E-mail 7/29/10                  208
```

Veritext Legal Solutions
866 299-5127
Case 3:18-cv-00186-TRM-HBG   Document 171-2   Filed 08/26/19   Page 4 of 24   PageID #:
13591

```
 1              E X H I B I T S

 2   No.              Description              Page

 3   Exhibit 270    E-mail 8/4/10              210

 4   Exhibit 271    E-mail 8/6/10              217

 5   Exhibit 272    E-mail 8/10/10             219

 6   Exhibit 273    E-mail 8/19/10             220

 7   Exhibit 274    E-mail String              222

 8   Exhibit 275    E-mail String              225

 9   Exhibit 276    E-mail                     227

10   Exhibit 277    E-mail 8/10/10             228

11   Exhibit 278    E-mail 4/4/11              229

12   Exhibit 279    Locating Information Technical

13                  Manual                     233

14   Exhibit 280    WorkKeys Applied Mathematics

15                  Technical Manual           233

16   Exhibit 281    Reading Information Technical

17                  Manual                     233

18

19

20

21

22

23

24

25
                                           Page  4
```

```
 1                THE VIDEOGRAPHER:  We are now on the
 2    record.  The time is 8:57.  Today is Friday, May
 3    the 31st, 2019.  This is the video recorded
 4    deposition of Teresa Chasteen in the matter of ACT,
 5    Incorporated versus Worldwide Interactive Network,
 6    Incorporated.  Filed in the United States District
 7    Court, for the Eastern District of Tennessee, Case
 8    Number 3:18-cv-00186-TRM-HBG.
 9                This deposition is being held at the
10    Law Offices of Scott and Cain, located at 606 West
11    Main Street, Suite 222, Knoxville, Tennessee.  My
12    name is Angie Poplin for the firm of Alpha
13    Reporting Corporation, I am the videographer.  Our
14    court reporter is Cathy Golembeski also with Alpha
15    Reporting corporation.
16                Will counsel please state their names
17    for the record.
18                MS. CHAPMAN:  Laura Chapman, for the
19    Plaintiff, ACT.
20                MR. CARPENTER:  Kyle Carpenter for the
21    Defendant, WIN.
22                MR. HORTON:  Jacob Horton, for the
23    Defendant.
24                THE VIDEOGRAPHER:  The court reporter
25    will now swear in the witness.
```

Page 5

```
 1              TERESA CHASTEEN,
 2    having first been duly sworn, was examined and
 3    deposed as follows:
 4    EXAMINATION BY MS. CHAPMAN:
 5         Q.   Good morning.
 6         A.   Good morning.
 7         Q.   Would you please state and spell your
 8    name, for the record?
 9         A.   Teresa Chasteen, T-e-r-e-s-a,
10    C-h-a-s-t-e-e-n.
11         Q.   Have you ever been known by any other
12    names?
13         A.   Yes, my maiden name is Teresa Caldwell.
14         Q.   How do you spell that?
15         A.   C-a-l-d-w-e-l-l.
16         Q.   Have you ever had your deposition taken
17    before?
18         A.   Yes.
19         Q.   How many times?
20         A.   Once.
21         Q.   When was that?
22         A.   That was mid 1980s.
23         Q.   Were you a party to a lawsuit when your
24    deposition was taken?
25         A.   Yes.
```

Veritext Legal Solutions
866 299-5127

```
1    for the time you were there?
2         A.   Yes.
3         Q.   Do you believe that his testimony, the
4    part that you heard, was incorrect in any way?
5              MR. CARPENTER:  Object to the form.
6         A.   Not that I know of.
7         Q.   Okay.  Let's talk about your
8    educational history.  Did you graduate from high
9    school?
10        A.   Yes.
11        Q.   And where did you go to high school?
12        A.   Roane County High School, R-o-a-n-e.
13        Q.   And where is that?
14        A.   It is in Kingston, Tennessee.
15        Q.   And that's nearby here?
16        A.   Yes.
17        Q.   After high school, did you get further
18   education?
19        A.   Yes.
20        Q.   And what did you -- with regard to your
21   educational history, what happened after high
22   school?
23        A.   Well, some of it happened during high
24   school.  They let me go to college a bit early.
25   And I finished a bachelor's at the University of
```

Page 12

```
1   Tennessee in 1982.
2           Q.    Did you have a major?
3           A.    Yes, curriculum and instruction.
4           Q.    Curriculum and instruction?
5           A.    Yes.
6           Q.    Was there a Department of Education at
7   the University of Tennessee?
8           A.    Yes, it was education.
9           Q.    Okay.  So many of my questions are very
10  obvious, you know what I'm about to say.  But the
11  court reporter has to take down the question.  And
12  I do want to speak slowly enough that the questions
13  get transcribed.  It's a very artificial
14  conversation that we're having, because of the
15  court reporter, and because of the nature of the
16  proceedings.  So it's probably going to take you
17  just a little bit to kind of settle into the rhythm
18  of waiting for me to finish the question.  If you
19  don't do it, I'm sure Mr. Carpenter will intervene
20  and take over.
21               MR. CARPENTER:  I will.
22               MS. CHAPMAN:  And he'll tell you, so.
23          Q.    Okay.  You said it was curriculum and?
24          A.    Instruction.
25          Q.    Instruction.  And that was granted by
```

Page 13

1    the Department of Education at the University of
2    Tennessee?
3              A.    Correct.
4              Q.    Generally speaking, what does a major
5    in curriculum and instruction consist of?
6              A.    It consists of classes on PEDECO G and
7    all kinds of things that are education related.
8              Q.    After you received that degree, what
9    happens next with respect to your educational
10   history?
11             A.    I got a Masters Degree from the
12   University of Tennessee.
13             Q.    Did you, with regard to your
14   bachelor's, did you have any specific distinctions,
15   or honors, or anything of that nature?
16             A.    Yes, but I'm not sure.
17             Q.    What was your Masters Degree in?
18             A.    Education as well.
19             Q.    Was there any specific aspect of
20   education that you focused on with regard to your
21   masters?
22             A.    Well, I focused on -- can I back up a
23   minute?
24             Q.    Of course.
25             A.    So I did part of my masters while I was

Veritext Legal Solutions
866 299-5127

1  still doing my undergrad work.  They let me take 12
2  hours before I got my undergraduate degree.  And so
3  I had started working on an endorsement for public
4  health education.
5       Q.   Okay.  With regard to your masters, was
6  there a particular aspect of education that you
7  focused on?
8       A.   I focused, at the time I was teaching
9  elementary school, and so I focused on elementary
10 endorsement.
11      Q.   What's does an endorsement mean?
12      A.   It means that you can teach in the
13 area.
14      Q.   It's like a certification?
15      A.   Yes.
16      Q.   Okay.  So did you get your masters
17 degree by studying in the evenings, since you were
18 teaching or how did that work?
19      A.   I got my masters, I'm thinking about
20 the timing.  Some of it, I think I was going to
21 college full-time during that transition from
22 bachelors to Masters.
23      Q.   Okay.  Did you write a thesis for your
24 Master's Degree?
25      A.   No.

1    Q.   Did you take any particular classes in

2  assessment development either during your

3  undergraduate or your -- in the course of your

4  Masters studies?

5    A.   Yes.

6    Q.   And how many classes did you take in

7  assessment development?

8    A.   They called it measurement and

9  evaluation, but I'm not sure how many.

10    Q.   Okay.  And was that undergraduate,

11  Masters or both?

12    A.   Both.

13    Q.   Did you have any kind of concentration

14  in measurement and evaluation, either at the

15  undergraduate level or the Masters level?

16    A.   Not at the Masters level.

17    Q.   At the undergraduate level?

18    A.   No.

19    Q.   Okay.  After your Masters degree, did

20  you continue to pursue your education?

21    A.   Yes.

22    Q.   What happens next with regard to your

23  educational history?

24    A.   I completed the course work for an EDD

25  at the University of Tennessee all but

Veritext Legal Solutions
866 299-5127

1    dissertation.

2         Q.    And for someone who doesn't know EDD,

3    what does that mean?

4         A.    Doctor of Education.

5         Q.    How long did that take?

6         A.    Two years.

7         Q.    Did you do that full-time?

8         A.    Yes, because I had a fellowship to do

9    that.

10        Q.    When did the Masters -- when did you

11   obtain the Masters Degree?

12        A.    1982 as well.

13        Q.    When did you start working toward your

14   PhD?

15        A.    1983.

16        Q.    Was that also, the PhD work that you

17   did, was that also at the University of Tennessee?

18        A.    The EDD work was, yes.

19        Q.    I'm sorry, I was mixing EDD and PhD.

20   Thank you for the correction.  So did you not write

21   a dissertation with regard to the EDD, correct?

22        A.    Correct.

23        Q.    Was the EDD awarded to you?

24        A.    No.

25        Q.    And that's because you didn't do the

Veritext Legal Solutions
866 299-5127

1    dissertation, correct?

2         A.    Correct.

3         Q.    So you had completed all the course

4    work for the EDD degree, but you didn't do the

5    dissertation and that's why you say all but

6    dissertation, correct?

7         A.    Correct.

8         Q.    Okay.  Is there a reason you didn't do

9    the dissertation?

10        A.    Not really.  I kind of took a different

11   path.  Sorry.

12        Q.    That's okay.  Did you complete the

13   course work?  When did you complete the course work

14   with regard to the EDD?

15        A.    I think 1985.

16        Q.    What different direction did you take

17   at that point?

18        A.    I went to Faith Theological Seminary.

19        Q.    Where is that?

20        A.    We went -- I say "we", my husband and I

21   went to the Milton, Florida location.

22        Q.    And how long -- what were you studying

23   at the Faith Theological Seminary?

24        A.    I was studying psychology and

25   counseling.

Page 18

1        Q.   And were you working toward a degree?

2        A.   Yes, a PhD.

3        Q.   And did you complete the PhD?

4        A.   I did.

5        Q.   And that was awarded by Faith

6  Theological Seminary in Milton, Florida?

7        A.   Correct.

8        Q.   And they're still in existence?

9        A.   I think so.

10       Q.   When did you get your PhD?

11       A.   1987, I believe.

12       Q.   Did you -- is your PhD in psychology

13  and counseling?

14       A.   Yes.

15       Q.   When you were studying for your

16  Masters, did you take any classes in psychometrics?

17       A.   For my EDD course work, yes.

18       Q.   How many psychometric classes did you

19  take?

20       A.   I don't know exactly, several.

21       Q.   With regard to the PhD that you pursued

22  at the Faith Theological Seminary in psychology and

23  counseling, generally, what did you study?

24       A.   Counseling, all kinds of things about

25  human behavior.  It was more focused too on

Page 19

```
 1    Christian approaches to counseling.
 2         Q.    After you obtained your PhD in
 3    psychology and counseling, did you obtain any kind
 4    of license to be a counselor?
 5         A.    No, I was still teaching.
 6         Q.    Okay.  So you've never been licensed to
 7    be a counselor?
 8         A.    No.
 9         Q.    Okay.  And you have never worked as a
10    counselor, correct?
11         A.    Correct.
12         Q.    Okay.  After you -- you said -- sounds
13    like you were working and going to school at the
14    same time?
15         A.    Correct.
16         Q.    I'll just finish off on the education
17    part first.
18               After you got the PhD, I'm sorry, did
19    you write a dissertation for your PhD?
20         A.    I did.
21         Q.    And what was your dissertation on?
22         A.    It was historical research on all of
23    the educational counseling as well as Christian
24    counseling.
25         Q.    Can you expand a little bit more?
```

Veritext Legal Solutions
866 299-5127

1    A.    Sure.    It went all the way back to all
2    the theories of counseling that there are, many
3    that you've heard many times, Freud and Gestalt,
4    things like that.    And then how that progressed
5    into theories around Christian counseling.
6          Q.    Okay.    Did you defend your
7    dissertation?
8          A.    Yes.
9          Q.    To whom did you defend your
10   dissertation?
11         A.    I defended it to a committee.    Right
12   now I can't think of their names.
13         Q.    Okay.    After you received the PhD from
14   Faith Theological Seminary, did you undertake any
15   other education?
16         A.    I have done some work at the Harvard
17   Kennedy School of Public Policy around Career
18   Readiness by invitation.
19         Q.    When did you do that?
20         A.    In 20 -- let me think.    I believe it
21   was in 2007.
22         Q.    Who invited you to do that?
23         A.    Dr. Bill Simons.
24         Q.    And who is he?
25         A.    He was a professor there that was

Page 21

Veritext Legal Solutions
866 299-5127
Case 3:18-cv-00186-TRM-HBG   Document 171-2   Filed 08/26/19   Page 17 of 24   PageID #: 13604

1     leading initiatives around Career Readiness.

2          Q.   And how many courses did you take at

3     Harvard Kennedy School of Public Policy on Career

4     Readiness?

5          A.   It was a week-long event.

6          Q.   Is it fair to call it a week-long

7     seminar?

8          A.   Well, I thought it was a little more

9     than that, but.

10          Q.   Okay.

11          A.   It was certainly continuing education.

12          Q.   Did you obtain any kind of

13     certification after that experience?

14          A.   I don't think so.

15          Q.   Okay. Generally speaking, what did you

16     get out of that experience?

17          A.   Well, we came up with all kinds of

18     ideas to make career readiness part of public

19     policy all across the education network in the

20     U.S., strategies that we could do that.

21          Q.   Have there been any other efforts on

22     your part with regard to education that we haven't

23     already talked about today?

24          A.   With formal degrees?

25          Q.   Formal degrees or any formal continuing

 1    education.  Well, let's break it down.  I think
 2    that's fair.  How about with regard to formal
 3    degrees?
 4         A.   No more formal degrees.
 5         Q.   How about with regard to taking courses
 6    that didn't lead to another formal degree?
 7         A.   Yes.
 8         Q.   Okay.  What other courses have you
 9    taken?
10         A.   Too many.
11         Q.   Okay.
12         A.   I took 18 hours of graduate English.
13    That's all I can think of.
14         Q.   In terms of continuing education, other
15    than the Harvard Kennedy School for Public
16    Policies, have you engaged in any other continuing
17    education?
18         A.   I did an eight-week program at the FBI
19    Academy.
20         Q.   When was that?
21         A.   That was in 2014 or '15.
22         Q.   And why did you do that?
23         A.   I was invited.
24         Q.   And what was the focus of that program?
25         A.   It was to -- the focus?

Veritext Legal Solutions
866 299-5127

```
 1              I declare under penalty of perjury
 2      under the laws that the foregoing is
 3      true and correct.
 4
 5              Executed on ___July 10___ , 20_19_,
 6      at _____, _____.
 7
 8
 9
10              _____
11
12                      WITNESS SIGNATURE
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Veritext Legal Solutions
866 299-5127

INSTRUCTIONS FOR READING/CORRECTING YOUR DEPOSITION

To assist you in making corrections to your deposition testimony, please
Follow the directions below. If additional pages are necessary, please furnish
Them and attach the pages to the back of the errata sheet.

This is the final version of your deposition transcript.

Please read it carefully. If you find any errors or changes you wish to make,
Insert the corrections on the errata sheet beside the page and line numbers.

If you are in possession of the original transcript, do NOT make any changes directly
on the transcript.

Do NOT change any of the questions.

After completing your review, please sign the last page of the errata sheet,
Above the designated "Signature" line and return the transcript to your attorney.

ERRATA SHEET

| Page | Line | | |
|------|------|---|---|
| 14 | 6 | Change: | Pedagogy |
| | | Reason: | misspelled |
| 19 | 11 | Change: | 1992 |
| | | Reason: | 1987 was incorrect year |
| 21 | 23 | Change: | Symonds |
| | | Reason: | misspelled |
| 25 | 11 | Change: | 1992 |
| | | Reason: | 1987 was incorrect year |
| 23 | 4 | Change: | Saterfiel |
| | | Reason: | misspelled |
| 33 | 6 | Change: | S-a-t-e-r-f-i-e-l |
| | | Reason: | misspelled |
| 33 | 12 | Change: | Sweaney |
| | | Reason: | misspelled |
| 33 | 13 | Change: | Sweaney |
| | | Reason: | misspelled |
| 34 | 8 | Change: | Sweaney |
| | | Reason: | misspelled |
| 34 | 25 | Change: | Saterfiel and Sweaney |
| 23 | 12 | | See Attached |

| | | Reason: | misspelled |
|---|---|---|---|
| 42 | 20 | Change: | SBA |
| 52 | 2 | Reason: | misspelled |
| | | Change: | Sweaney |
| 84 | 16 | Reason: | misspelled |
| | | Change: | Kwong |
| 84 | 16 | Reason: | misspelled |
| | | Change: | Karl |
| 84 | 18 | Reason: | misspelled |
| | | Change: | Guider |
| 84 | 18 | Reason: | misspelled |
| | | Change: | Miranda Beer |
| 92 | 4 | Reason: | misspelled |
| | | Change: | Sweaney |
| 133 | 24 | Reason: | misspelled |
| | | Change: | Sweaney |
| 209 | 12 & 13 | Reason: | misspelled |
| | | Change: | Kilijanek |
| 213 | 9,10,11,12,18,21 | Reason: | misspelled |

Subject to the above changes, I certify that the transcript is true and correct.

No changes have been made. I certify that the transcript is true and correct.

_Teresa C Chasteen_    07-11-19
(signature)                (date)

| 213 | 24 | Sweaney |
|---|---|---|
| | | misspelled |
| 214 | 2 | Sweaney |
| | | misspelled |
| 221 | 2 | Kilijanek & Sweaney |
| | | misspelled |

I also have in excess of 18 graduate hours in each of several other collateral areas including Curriculum and Instruction and Psychological Measurement and Evaluation.

```
 1              C E R T I F I C A T E

 2    STATE OF TENNESSEE

 3    COUNTY OF KNOX

 4         I, Catherine Golembeski, Licensed Court

 5    Reporter and a Registered Professional Reporter, do

 6    hereby certify that I reported in machine shorthand

 7    the deposition of TERESA CHASTEEN, called as a

 8    witness at the instance of the Plaintiffs, that the

 9    said witness was duly sworn by me; that the reading

10    and subscribing of the deposition by the witness

11    was not waived; that the foregoing pages were

12    transcribed under my personal supervision and

13    constitute a true and accurate record of the

14    deposition of said witness.

15         I further certify that I am not an attorney

16    or counsel of any of the parties, nor an employee

17    or relative of any attorney or counsel connected

18    with the action, nor financially interested in the

19    action.

20    Dated: June 12, 2019

21

22

23                    <%8338,Signature%>

                      Catherine Golembeski, LCR# 778

24                    Registered Professional Reporter

25                    Expiration Date:


                                            Page 256
```