*ACT, Inc. v. Worldwide Interactive Network, Inc.*
**U.S. District Court for the Eastern District of Tennessee**
**Case No. 3:18-cv-00186-TRM-HBG**

# EXHIBIT E

**PLAINTIFF AND COUNTER-DEFENDANT ACT, INC.'S**
**OPPOSITION TO MOTION TO DE-DESIGNATE**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

_____ )
                                  )
ACT, INC.,                        )
                                  )
        Plaintiff,                )
                                  )
vs.                               )   Case No.:  3:18-CV-186
                                  )
WORLDWIDE INTERACTIVE NETWORK,    )
INC.,                             )
                                  )
        Defendant.                )
_____ )


## MOTION PROCEEDINGS
### BEFORE THE HONORABLE H. BRUCE GUYTON

**July 8, 2019**
**10:03 a.m. to 10:49 a.m.**

**APPEARANCES:**

**FOR THE PLAINTIFF:**        YASAMIN PARSAFAR, ESQUIRE
                              Sheppard, Mullin, Richter & Hampton
                              Four Embarcadero Center
                              17th Floor
                              San Francisco, California 94111

                              THOMAS S. SCOTT, JR., ESQUIRE
                              Scott & Cain
                              550 West Main Street
                              Suite 601
                              Knoxville, Tennessee 37902

**FOR THE DEFENDANT:**        W. KYLE CARPENTER, ESQUIRE
                              J. CHADWICK HATMAKER, ESQUIRE
                              Woolf, McClane, Bright,
                              Allen & Carpenter
                              900 South Gay Street
                              Suite 900
                              Knoxville, Tennessee 37902

(Proceedings recorded by mechanical stenography, transcript
produced by computer-aided transcription.)

### REPORTED BY:
Rebekah M. Lockwood, RMR, CRR
Official Court Reporter
(865) 210-6698
P.O. Box 1823
Knoxville, Tennessee

APPEARANCES (CONTINUED):

FOR THE DEFENDANT:        ROBERT E. PITTS, ESQUIRE
                          JACOB G. HORTON, ESQUIRE
                          RAYMOND E. STEPHENS, ESQUIRE
                          Pitts & Lake PC
                          1319 Old Weisgarber Road
                          Knoxville, Tennessee 37909

Rebekah M. Lockwood, RMR, CRR
Official Court Reporter
(865) 210-6698
P.O. Box 1823
Knoxville, Tennessee 37901

Case 3:18-cv-00186-TRM-HBG  Document 171-5  Filed 08/26/19  Page 3 of 33  PageID #: 13713

```
 1            (Call to Order of the Court)

 2            THE COURTROOM DEPUTY:  Case Number 3:18-CV-186, ACT,

 3   Inc. versus Worldwide Interactive Network.

 4            Here on behalf of the plaintiff is Thomas S. Scott,

 5   Jr. and Yasamin Parsafar.  Is counsel for the plaintiff present

 6   and ready to proceed?

 7            MS. PARSAFAR:  Yes.

 8            THE COURTROOM DEPUTY:  Here on behalf of the

 9   defendant is Jacob Horton, Raymond Stephens, Robert Pitts, W.

10   Kyle Carpenter, J. Chadwick Hatmaker.  Is counsel for the

11   defendant present and ready to proceed?

12            MR. CARPENTER:  We are.

13            THE COURT:  All right.  Good morning, Counsel.

14            This matter is basically a continuation of earlier

15   proceedings where we addressed motion to compel filed by the

16   plaintiff.  The Court has reviewed, as much as possible, the

17   documents that were filed up to and including through yesterday

18   by the plaintiff.

19            The Court did review Document 113, of course, which

20   was filed on July 3rd.  I know generally categories of matters

21   that are in issue.

22            So, Ms. Parsafar, will you be addressing the matter

23   today?

24            MS. PARSAFAR:  Yes.

25            THE COURT:  Would you come to the podium, please?
                    UNITED STATES DISTRICT COURT
```

1          MS. PARSAFAR:  Yes, Your Honor.

2          THE COURT:  All right.  If you would tell the Court,

3    then, what documents and/or interrogatory answers you believe

4    that you are entitled to that you have not received.

5          MS. PARSAFAR:  Yes, Your Honor.

6          We still have not received a -- supplemental

7    responses to our first set of interrogatories, which are still

8    at issue in our -- in opposition to our first motion to compel

9    responses to those interrogatories.  WIN represented that it

10   would supplement its responses if discovery continued.

11   Discovery closes in three weeks on June 30th, and our summary

12   judgment motions are due next month, and we still have not

13   received supplemental responses that --

14         THE COURT:  What are you planning on doing about the

15   scheduling in this case?  I mean, you just amended the

16   complaint.  Correct?

17         MS. PARSAFAR:  Correct.

18         THE COURT:  Do you think -- is this a case that you

19   think is still on track to be tried on the current trial date?

20         MS. PARSAFAR:  Yes.  We do believe so, Your Honor.

21   Our plaintiff's amendments don't require additional discovery,

22   and we believe that WIN's -- Defendant WIN's amendments will be

23   dismissed on a motion to dismiss.

24         The first set of interrogatories, as we discussed

25   last time, requests that --

UNITED STATES DISTRICT COURT

1            THE COURT:  With regard to some of these responses,

2    it looks like there's a motion to allow -- for a document to be

3    filed under seal.  Any reason why the Court can't grant that

4    motion today?  I think it was just filed.

5            MS. PARSAFAR:  We filed WIN's revenue summaries, I

6    believe, under seal on the sole basis that WIN has designated

7    those documents as highly confidential.

8            THE COURT:  Any objection, Mr. Carpenter?

9            MR. CARPENTER:  No, Your Honor.

10           THE COURT:  All right.  That motion will be granted.

11   We'll enter the appropriate order.

12           All right.  Sorry for the interruption.  Go ahead.

13           MS. PARSAFAR:  Thank you, Your Honor.

14           THE COURT:  Okay.  Can you be a little more specific,

15   though, about these supplemental responses?

16           MS. PARSAFAR:  Yeah.  So the first issue is

17   interrogatories 1 through 19, and that was the basis or our

18   first motion to compel.  WIN has not supplemented our

19   responses.  The interrogatories ask for the facts that support

20   WIN's claims and defenses.  And all we received is their legal

21   position.  They did not include facts, and they did represent

22   that they would be supplementing as discovery continued to

23   include facts, and they have a duty to do so.  We still have

24   not received those yet.  And so that is -- that is the first

25   issue, the first set of interrogatories.

                    UNITED STATES DISTRICT COURT

1          Would you like to do one issue at a time, or should I

2   keep going?

3          THE COURT:  Well, I guess my question is, if you have

4   an outstanding request on every interrogatory 1 through 19 for

5   a supplement?

6          MS. PARSAFAR:  Yes, Your Honor.

7          THE COURT:  All right.  Okay.  So your position is

8   all the same?

9          MS. PARSAFAR:  Yes.

10          THE COURT:  Okay.  What's next?

11          MS. PARSAFAR:  The next issue is, the Court's May 17

12   order states that defendant represents that it produced

13   detailed summaries of its assessment revenues from its business

14   dealings in multiple states and that it will also produce

15   summaries of cost information once said summaries has been

16   created.  Once plaintiff has received these documents, if it is

17   unsatisfied, it may contact the court to set a hearing.

18          That is the second issue.  First, this order came out

19   two months ago.  We have not received the cost summaries.

20   Second, the revenue summaries that they did produce were

21   reviewed by our expert who determined that they were

22   insufficient and inaccurate.  And that is in the expert report,

23   which I have brought along, if you would like to see a copy of

24   it.

25          May I approach?

UNITED STATES DISTRICT COURT

1          THE COURT:  Yes.

2          MS. PARSAFAR:  If you turn to Page 4.  At the top

3     left, it says Page 4 of 14.  It says Fulcrum, which is our

4     expert witness on damages, has reason to believe that the

5     documents available to --

6          THE COURT:  Hold on, hold on.  Let me catch up with

7     you.  Okay.  I'm with you.  Go ahead.

8          MS. PARSAFAR:  So under Section A, Fulcrum has reason

9     to believe that the documents available to Fulcrum and, hence,

10    the amounts contained in the above heading and tables within

11    the section are incomplete.  Fulcrum identified multiple

12    invoices that were not included in the WIN prepared summaries.

13    See Exhibit 1 for a summary of such identified concerns based

14    on WIN invoices.  The uncertainty regarding the completeness of

15    WIN's records and productions is made worse by WIN providing

16    its accounting software QuickBooks file that would likely

17    clarify the uncertainties but refusing to provide the password

18    for this file that would allow its actual use.  This failure to

19    provide this relevant contemporaneous accounting file also

20    affects WIN's cost analysis, which is discussed in

21    Section 2(b).

22          Now, Your Honor ordered that WIN would not have to

23    produce the QuickBooks file which would allow our expert to

24    obtain the information that he needs because WIN represented

25    that it has passwords and links to live bank accounts.  Those

UNITED STATES DISTRICT COURT

1    issues would be covered under the protective order in this case

2    if WIN were to designate it highly confidential.  But if

3    there's some reason not to trust the law firm, what WIN could

4    do, which we propose, is provide versions of those QuickBooks

5    files with the links and passwords redacted, so that our expert

6    could have the information they need to fully analyze WIN's

7    revenues and also costs.  We still have not received the cost

8    summaries, which our expert also noted in his report, at the

9    top left, Page 3 of 14.

10          The bottom of the page says WIN should not be allowed

11   to deduct any costs from the disgorged revenues because WIN

12   failed to produce contemporaneous accounting records to

13   substantiate its costs.

14          Again, Your Honor's order came out on May 17th for

15   WIN to produce its costs summaries.  It's been two months.  We

16   have not received them.  And according to our expert who has

17   reviewed many documents and invoices that we provided from WIN,

18   their summaries are simply not accurate.

19          Can I continue?

20          THE COURT:  Yes.

21          MS. PARSAFAR:  The third issue, Your Honor, is that

22   your May 17 order required WIN to supplement its responses to

23   our second set of interrogatories and our second and third set

24   of RFPs.  And the order said that WIN should respond by

25   identifying responsive documents by Bates number.

UNITED STATES DISTRICT COURT

1        Rather than fulfilling their obligation to review and

2    find relevant material to produce to identify in response to

3    our discovery requests, what WIN did is they responded by

4    saying, here's a search string, attached are Bates numbers for

5    all the documents that resulted from these -- from this search

6    string, and we think these documents are most likely to have

7    responsive information.  That is insufficient, and it does not

8    satisfy their burden in this case.

9        They're doing exactly what they did last time,

10   whereas last time they dumped 700,000 documents on us and told

11   us to go fish.  This time they have identified a total of

12   $41,000, which may or may not be responsive and may not include

13   all the responsive material.

14       They simply continue to fail to comply with their

15   discovery obligations in this case.  Their conduct is

16   sanctionable.  Courts have imposed sanctions where parties

17   engaged in discovery misconduct, including, among other things,

18   failing to review documents before producing them.

19       They didn't review the first time, and they didn't

20   review and identify responsive material pursuant to the Court's

21   order.  They gave us a list of 40,000 documents, which may or

22   may not be responsive.

23       If WIN -- our request is that WIN either be required

24   to go through and identify responsive information pursuant to

25   the Court's order, or if ACT is going to have to review these

UNITED STATES DISTRICT COURT

1    41,000 documents to determine what's responsive, WIN should

2    have to pay for that review, and they should be precluded from

3    offering any additional evidence not in those 40,000 documents

4    at trial.

5              I'd like to give an example, if I may.  In response

6    to interrogatory number 20.

7              THE COURT:  Is that from the second set of

8    interrogatories?

9              MS. PARSAFAR:  Yes, in the second set of

10   interrogatories.

11             Interrogatory number 20 says, "State separately by

12   year and entity the amount of money WIN has invoiced to each

13   entity to which WIN has sold its assessment since 2012."

14             Then interrogatory number 20 requests to "State

15   separately by each year and entity the amount of revenue WIN

16   has collected from each entity to which WIN has sold its

17   assessments since 2012."

18             In response, WIN identified search terms and a

19   spreadsheet responding to both of these with 250 documents.  I

20   reviewed those 250 documents, and I would like to tell you what

21   I found in them as an example of how their document dumps

22   always include nonresponsive information and waste ACT's time

23   and money having to go through, only to determine they're not

24   responsive, and then to have to move to compel responsive

25   information.

UNITED STATES DISTRICT COURT

1        The document -- the 250 documents included e-mails

2   about invoicing for programs other than WIN's career readiness

3   assessments, invoices for contract services and e-mails

4   discussing them, invoicing issues with ACT, financial

5   information from 1996 to 2011, which was before WIN even

6   developed or began selling its assessments, e-mails regarding a

7   2006 South Carolina workforce development program, which has

8   nothing to do with the issues in this case and predate WIN's

9   development of its competing assessments, invoices from 2000 to

10  2000 -- 2013 to 2016 relating to various entities in South

11  Carolina that predate the RFP response and sale of assessments

12  at issue in this case, a 2010 audit of the Department of

13  Management Services First District Court of Appeal courthouse

14  construction project that has nothing to do with this case,

15  invoices about on-site trainings that are pre 2017, which is

16  the relevant time period that have nothing to do with this

17  case, invoices to various entities for professional development

18  services, e-mails about enrollment in a K-12 program that have

19  nothing do in this case, a memorandum from the South Carolina

20  Department of Revenue.

21        This is what happens every time.  WIN avoids its

22  discovery obligations by not reviewing and identifying

23  responsive material, and ACT spends tens of thousands of

24  dollars to review so far over a hundred thousand document to

25  determine that the majority of them are not responsive and

                    UNITED STATES DISTRICT COURT

1  still cannot find the information that it needs for summary

2  judgment and for trial.

3          So, again, with respect to that issue, we are

4  requesting that WIN, if they're not going to go through and

5  identify responsive information, that they pay ACT's cost to

6  review the 40,000 document, 41,000-plus documents they

7  identified, and that they're precluded from relying on any

8  other information at trial.

9          The next issue is that Your Honor limited in your

10  May 17 order the -- their responses to interrogatories to only

11  the state of South Carolina.  Since then -- and the reason was

12  because that was the state that was mentioned in the complaint.

13  Since then, as you know, ACT has moved to amend its complaint,

14  which the Court granted on July 3rd in docket 110, and the new

15  complaint lists other states, including West Virginia, Arizona

16  and Kentucky, at docket 103-1, for example, in Paragraph 86,

17  96, 104 through 106, and 101.

18          And so ACT respectfully requests that WIN's

19  interrogatory responses not be limited to only the state of

20  South Carolina, because there are other states at issue in this

21  case.

22          And the last issue, Your Honor, is that in your

23  May 17 order, you -- pursuant to our motion to dedesignate

24  WIN's production, which, as you know, was entirely produced

25  over 700,000 documents AEO.  You asked WIN to provide

1    spreadsheets identifying the AEO attorney.

2          During the -- while that motion was pending and in

3    the briefing, WIN argued that two types of documents were AEO,

4    its assessments and its financial information.  That was what

5    was discussed at the briefing and at the hearing, and that is

6    what is addressed in the Court's order at Page 30 -- docket 89

7    at Page 30 and docket 89 at Page 31.

8          What WIN gave to us is a spreadsheet of over 80,000

9    documents, and we have not reviewed all 80,000 of the

10   documents.  But in the many documents that we have reviewed, it

11   is clear that they have identified much more material than just

12   their financial documents and their assessments as AEO.

13   There's still 80,000 documents that remain AEO, and they have

14   nothing to do with actual copies of the assessments or

15   financial information.

16         So we would like an order dedesignating all of WIN's

17   documents that are not assessments or financial information.

18   We're going to be filing summary judgment motions and other

19   documents, and we should not have to burden the Court with

20   sealing orders, sealing motions every time for documents that

21   are only requested sealing based on WIN's designation, which is

22   not appropriate.

23         There's one other issue I would like to point out,

24   Your Honor.  This goes back to the first issue on their

25   supplement to their first set of interrogatories.  Their

                    UNITED STATES DISTRICT COURT

1  objections were based on two things. One, they said that the
2  interrogatories asking for their facts were premature because
3  it was early. That was in March. Discovery is closed at the
4  end of this month. Another objection they have was that they
5  were premature because many of them, according to WIN, were the
6  subject of expert testimony. Expert reports have all been
7  submitted. WIN did not submit rebuttal reports for two -- for
8  three of ACT's experts, and the time for expert testimony and
9  reports is passed. So those objections should all be
10  overruled, and they should be required to give us the factual
11  basis for their claims and defenses that we can be used to
12  assess summary judgment.

13          Thank you.

14          THE COURT: Anything else?

15          MS. PARSAFAR: (Moving head sided to side.)

16          THE COURT: All right. Thank you, Counsel.

17          MS. PARSAFAR: Thank you.

18          THE COURT: Mr. Carpenter.

19          MR. CARPENTER: Your Honor, I must say this has been
20  enlightening, because I will tell you that until we got here
21  this morning, I did not know what ACT's complaint was. I
22  didn't know if they're complaining that we'd identified too
23  many documents or too few documents. It was just that whatever
24  we had done was not appropriate.

25          They demanded that we meet and confer. We gave them

                  UNITED STATES DISTRICT COURT

1    a time.  We said we can do it while I was on vacation.  I

2    contacted Mr. Pitts' office and Chad Hatmaker and said, "Hey,

3    we need to do this.  Set up a time."

4           And we wrote back and said, "Thursday, any time after

5    two o'clock or between two and four, we can meet and confer."

6           Never heard back.  Didn't hear a word.  That was the

7    same time that the Court -- they had demanded a telephone

8    hearing with the Court, and the Court set out a schedule that

9    said that the Court could handle it on -- at certain times.

10   And while I was on vacation, I made arrangements for us to tell

11   them when our times, we could do it, and we were going to

12   convey that at the meet and confer, and they have never

13   responded to the Court.

14           Now, these specific problems that have been

15   identified, let's go through them one by one, because as I

16   understand, the first one dealt with interrogatories with the

17   original interrogatories 1 through 19.

18           And as I look back at the Court's May 17th order, and

19   of course, I didn't even have a clue what they were complaining

20   about till this morning, but as I look back at the Court's

21   order, their motions to compel as to 1 through 19 was denied in

22   your May 17th order.  So I think that if there's going to be a

23   complaint about 1 through 19, there's going to have to be a new

24   motion.

25           I understand as we go forward, as we learn things, we

UNITED STATES DISTRICT COURT

1    have a duty to supplement. But their demand that they made

2    back before your order of May 17th has been denied. So I don't

3    know what basis they have to stand here and complain today.

4          The second complaint had to do with financial

5    summaries. Here's what the Court had to say on Page 20 of its

6    May 17th order. "Defendant also represents that it produced

7    detailed summaries of its revenue -- of its assessment revenues

8    from its business dealings in multiple states, and that it will

9    also produce summaries of cost information once such summaries

10   have -- has been created. Once plaintiff has received these

11   documents, if it is unsatisfied, it may contact the Court to

12   set a hearing."

13         Well, the Court did not order us to create anything.

14   We said it was our intention to create cost -- summaries of

15   cost information. It is still our intention, but we haven't

16   done that yet. And so I don't think that we are required to

17   create things and produce them. I do think that we've got an

18   obligation once they're produced, and we're working on them

19   now, to give them over. But the Court has not ordered us to do

20   anything with the cost information, the financial summaries

21   that we haven't done. So I don't know what the complaint is

22   there.

23         The third thing dealt with the interrogatories 20

24   through 25 and the request for production. On Page 21, the

25   Court, talking about interrogatories 20 through 24 and 20

UNITED STATES DISTRICT COURT

1   through 25, says, first, as Ms. Parsafar has noted, the Court

2   limited the response to South Carolina.  And we did -- we took

3   the option under Rule 33 to produce business records.  And the

4   Court said, in its responses to these interrogatories,

5   defendant did not specify the records that must be reviewed.

6   Defendants shall supplement its responses to interrogatories 20

7   through 25 within 14 days in compliance with Rule 33D.

8           That is exactly what we did.  We searched documents,

9   and we answered interrogatories, and we said here is a

10  spreadsheet where you can find the documents which are

11  responsive.  And in some instances, there might be several

12  thousand documents.  In one, as Ms. Parsafar has indicated,

13  there are 250.  In some, there might be a hundred documents.

14  But we went through and we searched to identify the documents.

15          And then when we did -- when we responded, we said in

16  order to -- for example, interrogatory number 20, in order to

17  identify the business records previously produced to ACT that

18  are most likely to contain information responsive to this

19  interrogatory, the documents produced by WIN were searched

20  using the following terms.  This one says South Carolina and

21  invoice and bill to, not technical report or curriculum.

22          That -- we said we have searched.  This is how we

23  searched.  Nobody has ever come back and said, well, your

24  search was too broad, or your search was too narrow, or could

25  you add 2012 to this search.  I mean, we have done a lot of

UNITED STATES DISTRICT COURT

1    work trying to comply with the Court's order and doing exactly

2    what we thought the Court ordered us to do, go back through

3    this large volume of documents and identify the documents where

4    you think this information can be found.  The's what we did.

5    That's what I think the Court told us to do.

6          And nobody ever complained about -- nobody ever said

7    your searches are wrong, why don't you tweak this search this

8    way.  Until we got here today, I had no idea whether any of

9    these documents had ever been reviewed by ACT.  I now know that

10   250 have, their complaints about those.  Nobody has ever picked

11   up the phone and given me a call and said, you know, we got a

12   problem with this, we need to work this out.

13         We get these e-mails demanding things, and then they

14   don't meet and confer, and then they come in here and complain

15   to the Court.  They want the Court to reverse its order of

16   May 17th and now include additional stakes.  Well, the -- their

17   motion to amend was only granted on July 3rd.  The Court

18   inquired whether this case could be tried as scheduled.  I

19   think clearly it cannot.

20         But we raised that in a telephone conference with

21   Judge McDonough before he went to Europe.  He put down an order

22   allowing both sides amendments, and his order says that any

23   changes to the schedule will take place after he has dealt with

24   motions to dismiss.  My interpretation of that is, that the

25   parties are to file their motions to dismiss and deal with

1    that, and then we will deal with the discovery on any new

2    issues that survive the motions to dismiss.

3         Among those -- I mean, that -- they've -- their

4    motion to amend adds a party. Obviously, there's going to be a

5    whole lot of discovery that's going to be required, and I think

6    that these additional states fall within that category.

7         But, clearly, we haven't done anything wrong since

8    July the 3rd regarding discovery on these other states. And I

9    think that we have done exactly what the Court expected us to

10   do and exactly what we were required to do in terms of

11   identifying attorneys' eyes only materials and dedesignate.

12        And I'll point out to the Court that, clearly, this

13   is not a perfect situation on either side. On both sides,

14   we've come across documents that have been designated

15   attorneys' eyes only and needed to be changed. We've taken

16   depositions in this case, and I think we're up to about 400

17   exhibits in the depositions.

18        And from time to time, in a deposition, one side or

19   the other will say, "I want to show this witness this document

20   which you've designated attorneys' eyes only. Can you

21   reconsider that?"

22        And we've said, "Yeah, you know, we'll remove that

23   from this document, this particular document."

24        Now, when we've talked together, when we're

25   face-to-face, these things don't take on this sort of

UNITED STATES DISTRICT COURT

1   magnitude.

2           This is not a situation where they need something to

3   prepare for trial that they don't have.  It is not a situation

4   where we have failed in our discovery obligations.  It's a

5   situation simply where they want to complain, where they want

6   to try to use discovery as a shovel to beat us over the head,

7   rather than discovery for the purpose of trying to learn about

8   the lawsuit.

9           We've complied with the Court's May 17th order.  To

10  the extent that we misinterpreted the order in any way, nobody

11  has pointed it out to us, but we'll be glad to try to fix

12  anything that we have misinterpreted.  But as I read the

13  Court's order, we've clearly done what the Court ordered us to

14  do, and we shouldn't have to redo this thing.

15          Does the Court have anything further?

16          THE COURT:  You mentioned financial summaries and

17  cost information and that your client was working on them.

18          MR. CARPENTER:  We are.

19          THE COURT:  Is there a schedule for that?

20          MR. CARPENTER:  Well, Your Honor, we ran into some

21  problems with personnel and some people being out of the office

22  that needed to be.  We are working on it.  And I think within

23  the next few weeks, we can get it done.

24          THE COURT:  Anything else?

25          MR. CARPENTER:  No, Your Honor.

                    UNITED STATES DISTRICT COURT

1          THE COURT:  Counsel, did you have anything else you

2     wanted to say on the matter today?

3          MS. PARSAFAR:  Yes, I do.  Thank you very much.

4          First, I would like to address the representations

5     that Mr. Carpenter made about ACT's meet-and-confer efforts.

6     They are false.  We reached out to WIN for weeks to discuss

7     these issues.  They first ignored us and then asked to defer

8     until after mediation.  And then when mediation failed, they

9     continued to ignore us.

10         And because in light of the upcoming motion for

11    summary judgment deadlines and the close of discovery, we could

12    not wait any longer, and we requested a hearing pursuant to the

13    Court's May 17 order.

14         Mr. Carpenter says this is the first time that he's

15    hearing of these issues, but if you look at the e-mail that we

16    sent to Ms. Nease back on June 5th, which was a month ago, it

17    lists out the issues, and these issues have been represented to

18    WIN before that, weeks before that, in e-mails.

19         If Your Honor would like, I am happy to file on the

20    record or provide copies of our correspondence with WIN's

21    counsel, so that you can see that we did ask to meet and confer

22    many times before we put in our hearing requests, and that we

23    did raise the issues with them of their spreadsheets being

24    insufficient and not in compliance with the Court's order, and

25    that they responded and said they were sufficient.

```
 1          Would you like us to file copies of that
 2   correspondence so that the Court can review it?
 3          THE COURT:  Just give me a minute, please.
 4          MS. PARSAFAR:  Sure.
 5          THE COURT:  I'm looking at your e-mail to Ms. Nease
 6   of June 5.
 7          MS. PARSAFAR:  And, Your Honor, before we sent this
 8   e-mail to Ms. Nease, we had e-mails to WIN asking them to meet
 9   and confer either on the phone or --
10          THE COURT:  I said, will you give me a minute,
11   please?
12          MS. PARSAFAR:  Yes.
13          THE COURT:  All right.  Go ahead.  What's your
14   question?
15          MS. PARSAFAR:  Would you like to see the
16   correspondence between -- between ACT's counsel and WIN's
17   counsel requesting meet-and-confer on these issues, because I'm
18   happy to provide copies to the Court.
19          THE COURT:  I'll leave that up to your discretion.  I
20   normally don't tell lawyers what to file and not file.
21          MS. PARSAFAR:  Would we have permission to file them?
22          THE COURT:  You have permission to if you want to.
23          MS. PARSAFAR:  Thank you, Your Honor.
24          THE COURT:  As does the other side, if they have
25   anything they want to file on that point.
```

UNITED STATES DISTRICT COURT

1          MS. PARSAFAR:  Thank you, Your Honor.

2          The next issue that Mr. Carpenter raises, he keeps

3     saying that they're not required to create cost and revenue

4     summaries.  That's correct.  They're not required to do it.

5          It's also not a substitute for discovery and their

6     contemporaneous business records to have self-serving revenue

7     summaries that they provided to us that our expert has already

8     looked at the revenue summaries and determined that the

9     information is not accurate.  We have no reason to believe that

10    their cost summaries are going to be any different or accurate.

11         That's why they're asking for their QuickBooks

12    records, which is the most accurate way to get their revenue

13    and summary and cost information, and they can simply redact

14    password or account information.

15         If they -- if we wait for them to create cost

16    summaries, we're going to need more time for our expert to

17    review them to determine that they're also not accurate and

18    there's simply no time for that.  Expert reports have already

19    been submitted, and there's no reason for them to create

20    self-serving evidence, when all they need to do is download

21    their QuickBooks file and produce it to us with their passwords

22    redacted if the Court would like them to redact the information

23    instead of having it protected under the protective order.

24         The next issue, Mr. Carpenter keeps saying, oh, we

25    searched, here's the search, here's the search, the list of

UNITED STATES DISTRICT COURT

1    documents that resulted from our search.  A search is not a

2    substitute for their obligation to review documents and parse

3    out irrelevant information before they identify them.  That was

4    stated by the Court in -- in ReedHycalog UK v. United Diamond

5    Drilling Services, 2008 U.S. District Lexis 93177, at Page 8,

6    Eastern District of Texas, October 3rd, 2008.  The Court

7    stated, "Part of a litigant's discovery obligation is to parse

8    out irrelevant information."

9         Again, in another case, the Court says, "There's no

10   basis for shifting the burden of document-by-document review to

11   the Court or to opposing counsel," which is what they're doing

12   here by just running a search and having us look through the

13   documents.  That's case U.S. Magnesium LLC v. ATI Titanium LLC,

14   2:17-CV-00923.  It's an order on August 3rd, 2018, at Page 6.

15        So they keep saying they complied with their

16   obligations by running a search.  Running a search is not

17   sufficient.  They need to review the documents and identify

18   what's responsive instead of shifting that burden to us.

19        Again, Mr. Carpenter repeated that nobody complained

20   about searches.  It's in the e-mail to Ms. Nease, and this was

21   after we had sent e-mails to WIN.  So that is also false.

22             THE COURT:  Anything else?

23             MS. PARSAFAR:  That's all.

24             THE COURT:  All right.  Thank you, Counsel.

25             MS. PARSAFAR:  Thank you.

                        UNITED STATES DISTRICT COURT

1          THE COURT:  Mr. Carpenter, do you want to --

2          MS. PARSAFAR:  Oh, I'm sorry, I forgot to say one

3    more thing.

4          Mr. Carpenter said that the Court denied our motion

5    to compel the first set of interrogatories, but that's not

6    true.  Page 17 of the order says it's not clear to the Court

7    whether plaintiff's first set of interrogatories are still in

8    dispute.  If there's a dispute, to contact chambers.

9          That's what we did.  There's a dispute.  They said in

10   their opposition to their first motion to compel, they would

11   supplement as discovery continued.  They haven't.  Expert

12   reports has passed.  Discovery is about to close.  They have

13   not given us the factual basis for their claims and defenses as

14   requested in the interrogatories.

15         Thank you.

16         THE COURT:  Anything else?

17         MR. CARPENTER:  Very briefly, Your Honor.

18         I will file for the record our e-mail where we

19   offered to meet and confer on June 19th, and there was never a

20   response.  I didn't mean to say, if I did, that they had never

21   said meet and confer.  They've said meet and confer a hundred

22   times.  It's always they send an e-mail at 11:30 at night

23   saying we need to meet and confer tomorrow morning.  Tell us

24   what your availability is.  We did say we ought to put this off

25   till after the mediation.  And then we wrote and said let's

UNITED STATES DISTRICT COURT

1  have the meet-and-confer on Wednesday, June 19th, two o'clock

2  in the afternoon, two to four, any time two to four.  No

3  response.

4         I -- the only thing I want to address is this idea

5  that we are required to review these documents, because Rule 33

6  gives us the option to produce business records.  And it says,

7  "If the answer to an interrogatory may be determined by

8  examining, auditing, compiling, extracting, or summarizing the

9  party's business records, including electronically stored

10 information, and if the burden of deriving or ascertaining the

11 answer will be substantially the same for either party, the

12 responding party may answer by, one, specifying the records

13 that must be reviewed in sufficient detail to enable the

14 interrogating party to locate and identify them as readily as

15 the responding party could."

16        That's the option which we've taken.  And as I read

17 the Court's order, the Court said, okay, you can do that, but

18 you didn't specify.  Go back and specify.  So we ran the

19 searches and we specified.  And I think that's exactly what

20 we're required to do under Rule 33.

21        THE COURT:  Anything else?

22        MR. CARPENTER:  No, Your Honor.

23        THE COURT:  All right.  Thank you.

24        MS. PARSAFAR:  I'm sorry, Your Honor, can I respond

25 to what he just said about Rule 33?

UNITED STATES DISTRICT COURT

1          THE COURT:  Do you think he misread it?

2          MS. PARSAFAR:  I think he's incorrect, because when

3    he runs searches, that doesn't tell us that the documents

4    listed, that we're going to be able to derive responsive

5    information as readily as WIN can by reviewing their own

6    documents and identifying what is responsive.  When they dump

7    that many documents on us, we have to review them, and then

8    we -- we'll never know if they have identified all the

9    responsive documents or not, because they haven't looked at

10   them.

11         So it's not a substitute.  And Courts have held,

12   which is in our briefing, which I've stated here, that shifting

13   the burden of review, regardless of Rule 33(d), from one party

14   to another party is sanctionable.

15         It's not as readily identifiable to us to look at the

16   documents and determine whether they're responsive and whether

17   all the responsive information is there.  It's their records.

18   They know how their records are kept.  They should review them,

19   and they should identify what's responsive, not dump 41,000

20   documents on us to figure out whether they are there or not,

21   what we're looking for, and then have to come back to move to

22   compel 40,000 documents later and hundreds of thousands of

23   dollars, only to determine, like I read off to you the

24   examples, that the responsive information is not there, and

25   it's a bunch of unresponsive information.  They should review

UNITED STATES DISTRICT COURT

1    the documents and identify them.

2              THE COURT:  Okay.  I think we're going around in

3    circles now.  Anything else?

4              MS. PARSAFAR:  Thank you.  No, that's all.

5              THE COURT:  Are we finished?

6              MR. CARPENTER:  I trust the Court can read Rule 33.

7              THE COURT:  Was there anything else that either party

8    wanted to bring before the Court today that I haven't

9    addressed?

10             MR. CARPENTER:  Your Honor, there's one thing that I

11   want to bring up just -- and it's not ripe for decision, but to

12   give the Court a heads-up.

13             On May 31st, Ms. Parsafar sent me an e-mail asking me

14   for all dates that I was not available in July.  That's what --

15   on Monday June 3rd, I wrote her back and said I'm available

16   anytime in July except July 3rd through the 5th and the week of

17   the 15th.

18             So what they've done now is, they've set a deposition

19   of the State of Arizona for July 19th.

20             And I immediately wrote her back and said, you know,

21   I told you I wasn't available that week.

22             And her response is basically pound sand.  We've

23   worked around your schedule enough, and we're not going to do

24   anything about this.

25             So if they insist on this deposition going forward on

                    UNITED STATES DISTRICT COURT

1   the 19th, then I'm probably going to have to file a motion to

2   compel, and I'm just giving the Court's a heads-up on that.

3                MS. PARSAFAR:  Your Honor, may I respond?

4                THE COURT:  Yes.

5                MS. PARSAFAR:  Your Honor, we only have till

6   July 30th to take depositions.  There were two weeks in June

7   where we worked around WIN's counsel's vacation schedule and

8   did not schedule depositions during that time to respect their

9   vacation.  As you can see here, there's five attorneys

10  representing WIN.  For them to block out another week in July

11  because --

12               THE COURT:  I understand.  Okay.  Let's see if

13  there's an issue, and then I'll deal with it.  I really don't

14  want to give an advisory opinion on something that might get

15  worked out.

16               But let me ask you this, and I know I asked you at

17  the outset, I find it -- I've done a few lawsuits over the

18  years, and I find it hard to believe that this discovery

19  deadline is going to hold at the end of this month.  In fact, I

20  find it hard to believe your trial date is going to hold, if

21  this case goes forward beyond the motion stage.

22               So I don't -- do you have any thoughts on that,

23  Mr. Scott?  You know about how lawsuits go and tempo.  I'm not

24  saying you don't, Counsel, at the podium, but I see Mr. Scott

25  with his -- he's thinking, do I agree with that or not?  I'm

                       UNITED STATES DISTRICT COURT

1   not going to force you to say anything, Mr. Scott, if you don't

2   want to, but there's an awful lot on this case.  We're talking

3   about discovery ending in three weeks in this case?

4           MR. SCOTT:  I think Ms. Parsafar can respond more

5   accurately than could I.

6           THE COURT:  All right, sir.

7           All right.  Anything else?

8           MS. PARSAFAR:  Again, I just want to say that ACT's

9   amendments don't require additional discovery, although

10  Mr. Carpenter just represented to you that when we added

11  Defendant Teresa Chasteen, that would require additional

12  discovery, that's inconsistent with what he -- we and he told

13  the district report -- district court.  Teresa Chasteen has

14  already been deposed, and we're not going to need additional

15  discovery there.

16          THE COURT:  That's fine.  Maybe I'm wrong.  Maybe

17  y'all are ready to go to trial right now.  I don't know.  I

18  don't know.  Maybe you'll be in three weeks.  I just -- if you

19  can, great.  But I don't really want to give an advisory ruling

20  on an issue that's just been raised today, hasn't been

21  discussed by the parties.

22          MS. PARSAFAR:  Thank you, Your Honor.

23          MR. CARPENTER:  Your Honor, I just -- I mean, I

24  cannot sit here and be accused now twice of saying something

25  false.  I didn't tell the Court that Ms. Chasteen -- adding

UNITED STATES DISTRICT COURT

1   Ms. Chasteen wouldn't require any additional time.  They have
2   contended that she is a new party.  Obviously, it's going to
3   require additional time.
4           THE COURT:  Like I say, that issue is not before the
5   Court.
6           MR. CARPENTER:  I understand.
7           THE COURT:  All right.  So there's nothing else that
8   actually is before the Court today that we haven't discussed.
9   Right?
10          MR. CARPENTER:  There's not.
11          THE COURT:  All right.  I'm sure you-all can work
12  this out as reasonable as you-all are, gifted attorneys as you
13  all are.  In the meantime, we'll rule on these matters.
14          Madam Clerk, we'll be in recess until two o'clock.
15          THE COURTROOM DEPUTY:  All rise.  This honorable
16  court stands in recess.
17      (Proceedings adjourned at 10:49 a.m.)
18
19
20
21
22
23
24
25
                    UNITED STATES DISTRICT COURT

1 **CERTIFICATE OF REPORTER**

2 STATE OF TENNESSEE

3 COUNTY OF KNOX

4         I, Rebekah M. Lockwood, RMR, CRR, do hereby certify

5 that I was authorized to and did stenographically report the

6 foregoing proceedings; and that the foregoing pages constitute

7 a true and complete computer-aided transcription of my original

8 stenographic notes to the best of my knowledge, skill, and

9 ability.

10     I further certify that I am not a relative, employee,

11 attorney, or counsel of any of the parties, nor am I a relative

12 or employee of any of the parties' attorneys or counsel

13 connected with the action, nor am I financially interested in

14 the action.

15     IN WITNESS WHEREOF, I have hereunto set my hand at

16 Knoxville, Knox County, Tennessee this 12th day of July, 2019.

17

18

19

20                              _____

21                           REBEKAH M. LOCKWOOD, RPR, CRR

                            Official Court Reporter

                            United States District Court

22                             Eastern District of Tennessee

23

24

25