UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| ACT, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:18-CV-186-TRM-HBG |
| ) | |
| ) | |
| WORLDWIDE INTERACTIVE NETWORK, ) | |
| INC., ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM AND ORDER**

This case is before the undersigned pursuant to 28 U.S.C. § 636, the Rules of this Court, and Standing Order 13-02.

Now before the Court are the following Motions: (1) Plaintiff's Motion to Compel [Doc. 113],[1] (2) Defendant's Motion to Compel Discovery [Doc. 135], and (3) Defendant's Motion to Compel De-Designation [Doc. 157]. The parties appeared for a hearing on July 8, 2019, with respect to Plaintiff's Motion to Compel. Attorneys Yasamin Parsafar and Thomas Scott, Jr., appeared on behalf of Plaintiff. Attorneys Jacob Horton, Raymond Stephens, Robert Pitts, Kyle Carpenter, and Chadwick Hatmaker appeared on behalf of Defendant. Following the hearing, Defendant filed the above Motions, and the Court finds oral argument unnecessary as to these Motions.

---

[1] Plaintiff's Motion is titled, "Documents for Consideration at July 8, 2019, Discovery Hearing Pursuant to Court's May 17, 2019 Order." [Doc. 113]. The Motion, however, was filed as a result of unresolved discovery disputes stemming from Plaintiff's original motion to compel. Thus, the Court will refer to Plaintiff's filing as a "Motion to Compel."

The Court has considered the filings in this case, and for the reasons further explained below, the Court hereby **GRANTS IN PART** Plaintiff's Motion [**Doc. 113**] and Defendant's Motion [**Docs. 135**], and **GRANTS** Defendant's Motion [**Doc. 157**].

I. ANALYSIS

The Court will address the Motions in the order in which they were filed.

A. **Plaintiff's Motion to Compel**

By way of background, on May 17, 2019, the Court entered a Memorandum and Order [Doc. 89] ("May Order"), resolving a number of discovery disputes but allowing the parties to contact the Court if certain issues were not resolved. The instant disputes originate from Plaintiff's motion to compel and the May Order. Specifically, in the instant Motion, Plaintiff raises three issues: (1) Defendant's responses to Plaintiff's First Set of Interrogatories; (2) Defendant's damages-related information, and (3) Defendant's Supplemental Responses to Plaintiff's Additional Request for Production and Interrogatories.

During the July hearing on these issues, the parties disagreed as to whether they had conducted a meet and confer. This disagreement is not new. *See* [Doc. 89 at 10] (explaining that counsel cannot agree as to whether they actually met and conferred). The parties also filed supplemental briefs detailing their respective positions on whether a meet and confer occurred. The Court has reviewed the emails, and for the most part, they simply contain one party's request for a meet and confer with a proposed date (the proposed date usually being the following day) and the other party's response that he/she is not available on the proposed date. It does not appear to the Court that either party is *refusing* to participate in a meet and confer. In any event, given that the issues were the subject of Plaintiff's previous motion and the Court directed Plaintiff to

contact Chambers if the issues were not resolved, the Court finds it appropriate to consider the merits of Plaintiff's requests.

### 1. Plaintiff's First Set of Interrogatories

As mentioned above, Plaintiff raised this issue in its first motion to compel. After the hearing on this issue and prior to the Court issuing an order, Plaintiff served additional discovery, along with an "emergency motion," stating that it served additional discovery as an attempt to narrow discovery. Thus, it was not clear to the Court at the time whether Plaintiff's First Set of Interrogatories were still in dispute. The Court directed Plaintiff to contact Chambers if this issue was still in dispute, and Plaintiff did so.

Here, Plaintiff argues that Defendant's responses to its First Set of Interrogatories are still deficient for the same reasons. Specifically, Plaintiff states that Defendant's responses contain legal positions and no factual information. At the July hearing, Defendant argued that the Court's May Order already determined the issue and that Plaintiff should have filed a new motion.

The Court finds that Plaintiff was not required to file another motion. The Court explicitly directed Plaintiff to contact Chambers to set a hearing if the issue was still in dispute. Plaintiff did so, and therefore, the Court finds another motion reasserting the same arguments unnecessary.

Turning to the merits of the dispute, the Court notes that Plaintiff's Interrogatories 1-19 request Defendant to state all facts in support of its defenses. Defendant utilized general objections, which this Court disfavors, and then objected to each Interrogatory on the basis that it is a contention interrogatory. Defendant also responded to the Interrogatories, in large part, by setting forth arguments and legal conclusions. In its response [Doc. 41] to Plaintiff's motion to compel, Defendant argued that it provided facts with respect to Interrogatory Nos. 4 and 5 and that while it responded to Interrogatory No. 4, the discovery request was premature. Defendant

3

continued that it did set forth facts, but additional facts would potentially be discovered and that it would supplement accordingly. Defendant argued that it set forth facts in response to Interrogatory No. 10 and its responses to Interrogatory Nos. 12-14 incorporated the response to Interrogatory No. 10. Further, with respect to Interrogatory Nos. 8 and 14, Defendant states that the facts are equally available to Plaintiff.

Federal Rule of Civil Procedure 33 governs interrogatories and the responses thereto. Rule 33(a)(2) states, "An interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact . . ." The Sixth Circuit has recognized the "general view . . . that contention interrogatories are a perfectly permissible form of discovery." *Starcher v. Correctional Med. Sys.*, 144 F.3d 418, 421 n. 2 (6th Cir. 1998). The Court notes the Rule 33 authorizes the Court to defer answers to contention interrogatories "because they may create disputes between the parties which are best resolved after much or all of the discovery has been completed . . ." *Wood for use & benefit of Johnson v. Nw. Airlines, Inc.,* No. 209CV02317BBDDKV, 2010 WL 11598163, at *4 (W.D. Tenn. Mar. 16, 2010) (citing Fed. R. Civ. P. 33(b) Advisory Committee Note (1970)).

In the present matter, the original discovery deadline expired on July 30, 2019, and therefore, the Court finds it unnecessary to defer responses any longer. The Court has reviewed Defendant's responses to the Interrogatories, and for the reasons set forth below, the Court finds that Defendant has not provided sufficient factual answers to several Interrogatories.

Specifically, the Court **ORDERS** Defendant to supplement its responses to Interrogatory Nos. 1-7, 11-17 because the responses contain little, if any, facts. For instance, Defendant points to Interrogatory Nos. 4 and 5 in support of its argument that it set forth facts in its responses. In response to these interrogatories, Defendant states that Plaintiff's work lacks sufficient creativity

4

and originality to constitute copyrightable material. This response does not set forth any facts as to why such work lacks creativity or originality. Defendant continues in its response that Plaintiff consented to the uncontrolled use of such works by others, but Defendant does not provide any facts as to the identity of "others." Similarly, with regard to the unfair competition and false designation claims in Plaintiff's Complaint, Defendant responds that ten states use Plaintiff's terms but Defendant only lists Georgia and South Carolina.[2] These are a few examples of the missing facts from Defendant's response.

With respect to Interrogatory Nos. 12 and 13, Defendant incorporates "specifically including, *but not limited to*," facts set forth in specific paragraphs of its Answer and Counterclaim, and in response to Interrogatory Nos. 14, 15, and 17, Defendant incorporates the facts alleged in its Answer and Counterclaim. [Doc. 38-2] (Emphasis added). This practice is impermissible. *See Atlanta Coca-Cola Bottling Co. v. Transamerica Ins. Co.*, 61 F.R.D. 115, 120 (N.D. Ga. 1972) ("Defendant is correct in stating that incorporation by reference of the allegations of a pleading is not a responsive and sufficient answer to an interrogatory."); *see also Ntakirutimana v. CHS/Cmty. Health Sys., Inc.,* No. CV L-09-114, 2011 WL 13135608, at *3 (S.D. Tex. June 28, 2011) (stating that "qualifiers, such as the 'include, but are not limited to' used by Plaintiffs, render interrogatory answers vague, evasive and incomplete" and noting that "other district courts addressing the issue have specifically held that answers to interrogatories should not refer to pleadings or other documents").

With respect to Interrogatory Nos. 8-10, and 18-19, Defendant does provide some facts in response to these Interrogatories. Because the Court is not aware of "all the facts" in this case,

---

[2] Defendant lists ten states and Washington, D.C., in response to Interrogatory No. 18, but Rule 33 requires that each interrogatory be answered separately. [Doc. 38-2].

however, Defendant **SHALL** supplement these interrogatories if there are additional facts it has uncovered throughout discovery in this case. *See* Fed. R. Civ. P. 26(e)(1) (explaining a parties' duty to supplement). Accordingly, Plaintiff's request is well taken in part, and the Court **ORDERS** Defendant to supplement its responses to the above Interrogatories on or before **November 25, 2019.**

2. **Defendant's Damages Information**

In the Court's May Order, the undersigned declined to order Defendant to provide its QuickBooks in ".QBW" format because Defendant represented that such a production would include active links to its financial institution accounts. [Doc. 89 at 20]. Further, Defendant stated that it produced detailed summaries of its assessment revenues from its business dealings in multiple states and that it would produce summaries of cost information once such summaries had been created. [*Id.*]. The Court directed Plaintiff to review such discovery upon receipt, and if it was unsatisfied, to contact the Court for a hearing. [Doc. 89 at 20].

In the instant matter, Plaintiff states that it is unsatisfied for a multiple of reasons. Specifically, Plaintiff argues that Defendant did not produce cost summaries and that Defendant's revenue summaries are incomplete. Plaintiff states that there are discrepancies between the invoices produced and the revenue summaries that Defendant prepared and that multiple invoices were not included. Plaintiff proposed that Defendant provide a copy of its QuickBooks with passwords and account information redacted. At the hearing, Defendant argued that the Court did not order it to produce such summaries, although its intention was to create such summaries. Defendant stated that it ran into personnel issues, but it was working on producing the cost summaries.

6

As an initial matter, the reason that the Court did not order Defendant to produce cost summaries is because Defendant represented to the Court that it intended to do so. *See* [Doc. 84] (Defendant's response to Plaintiff's emergency motion, stating that defense counsel indicated in an email to Plaintiff "that it would produce summaries of cost information once those summaries had been created" and arguing that Plaintiff "has received, or will receive shortly," from Defendant "all information regarding [Defendant's] finances that is relevant to this case."). Thus, based on this representation, the Court did not find an order was necessary. Plaintiff has shown that it needs completed financial information from Defendant. Accordingly, the Court **ORDERS** Defendant to provide Plaintiff with its QuickBooks on or before **November 25, 2019,** in a format that allows for appropriate redactions. Defendant may redact any passwords and account information and make appropriate designations pursuant to the Protective Order in this case.

3. **Defendant's Supplemental Responses to Plaintiff's Additional Request for Production and Interrogatories**

By way of background, the instant disputes were the subject of Plaintiff's emergency motion, which was filed after the March hearing but prior to the Court entering an order. Plaintiff's emergency motion requested that the Court order Defendant to supplement its responses to Plaintiff's second set of interrogatories and second and third requests for production of documents. The Court ordered Defendant to supplement its responses to the second set of document requests and if responsive documents had already been produced, to provide the bates-stamped number of the document. The Court also directed Defendant to comply with Rule 34(b)(2)(C) by stating whether any documents were withheld based on objections. The Court issued a similar direction with respect to the third requests for production of documents but declined to order Defendant to provide its Quickbooks in a certain format, which contained active links to its financial institution.

Finally, with respect to the Interrogatories, the Court ordered Defendant to specify the records to be reviewed but limited such discovery to South Carolina.

At the July hearing, Plaintiff specifically raised issues with Defendant's response to Interrogatory No. 20, which provides: "State separately, by year and entity, the amount of money [Defendant] has invoiced to each entity to which [Defendant] has sold its assessments since 2012." Plaintiff argued that it reviewed 250 documents that Defendant produced in response to this request and that such a review was a waste of its time and that Defendant included documents that were created before 2012. In response, Defendant stated that it limited its response to South Carolina, to which it had sold assessments since 2012. Defendant states that the interrogatory does not seek documents only after 2012 and that the "2012" limitation refers to entities and not to invoices.

With respect to the instant dispute, Plaintiff states that in response to the discovery requests, Defendant attached spreadsheets of over forty thousand bates numbers resulting from Defendant's proposed search parameters that Defendant described as "most likely" to include responsive information. Plaintiff states that Defendant did not review the documents for responsiveness prior to producing the spreadsheets. Plaintiff also requests that the Court amend its previous order to include additional states because, after the Court's May Order was filed, it filed an Amended Complaint. At the hearing, Defendant argued that it is permitted to produce business records in response to interrogatories under Rule 33 and that it chose to do. Defendant stated it provided Plaintiff a spreadsheet with the search terms that were utilized for the documents.

As an initial matter, the Court notes that because Plaintiff's motion to amend was granted, information related to Florida, West Virginia, Arizona, and Kentucky is now relevant, and therefore, the Court **GRANTS** Plaintiff's request for discovery as it relates to these states.

As explained in the Court's May Order, parties have the option to produce business records in response to interrogatories: Specifically, Rule 33(d) provides as follows:

> **(d) Option to Produce Business Records.** If the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records (including electronically stored information), and if the burden of deriving or ascertaining the answer will be substantially the same for either party, the responding party may answer by:
>
> **(1)** specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could; and
>
> **(2)** giving the interrogating party a reasonable opportunity to examine and audit the records and to make copies, compilations, abstracts, or summaries.

Fed. R. Civ. P. 33. Defendant responded by specifying records by bates number. This is permissible under the Rule. The issue with Defendant's responses is that they state, "In order to identify the business records previously produced to ACT that *are most likely* to contain information responsive to this interrogatory, the documents produced by Defendant were searched using the following search terms . . ." [Doc. 113-3]. The documents are either responsive or not. Stating that the documents "most likely" contain responsive information is not acceptable, and the Court **ORDERS** Defendant to supplement and/or amend its responses.

Further, with respect to Interrogatory No. 20, there appears to be some misunderstanding as to what Plaintiff requested. Given Plaintiff's clarification, the Court **ORDERS** Defendant to respond in accordance with Plaintiff's clarification. Defendant **SHALL** produce its supplemental responses on or before **November 25, 2019.**

### B. Defendant's Motion to Compel [Doc. 135]

In Defendant's Motion, it seeks an order compelling Plaintiff to provide full and complete responses to its First Set of Requests for Production. Defendant states that certain responses, including, but not limited the responses to Requests No. 13, 67, 87, and 185, indicate that Plaintiff would produce responsive, non-privileged documents located after a reasonable search. Defendant argues that Plaintiff has not produced communications responsive to these requests. Defendant states that Plaintiff has taken the position that it is not obligated to produce responsive emails absent an agreement between the parties as to the parameters such as the custodians, dates ranges, and search terms for the emails sought. Defendant states that Plaintiff also improperly suggests that the parties should be limited to twenty search terms per custodian. Defendant states that on July 8, 2019, three weeks prior to the close of discovery, it provided Plaintiff with a list of search terms, but Plaintiff refused to produce any information, stating that Defendant's request was untimely.

In Response [Doc. 159], Plaintiff states that Defendant's Motion should be denied for four reasons. First, Plaintiff states that Defendant's motion has already been adjudicated, and it was denied. Second, Plaintiff argues that Defendant did not conduct a meet and confer. Third, Plaintiff states that the motion is untimely. Finally, Plaintiff argues that the Motion violates Local Rule 37.2 because it does not provide a verbatim recitation of each document request that is subject of the dispute. Despite Plaintiff's arguments, it states that it "is in the process of running the search terms." [Doc. 159 at 6].

In its Reply [Doc. 162], Defendant argues that the Court denied its previous motion as moot based on Plaintiff's representation that it was producing documents. Defendant states that Plaintiff never produced that responsive communications/emails that are the subject of the present motion.

Defendant disputes Plaintiff's statement that Defendant did not meet and confer. Defendant argues that Plaintiff claims that it is in the process of running the search terms, yet Defendant has not received responsive communications and emails. Defendant argues that Plaintiff's reliance on Local Rule 37.2 is inequitable. Defendant explains that Plaintiff is "attempting to avoid its obligation to respond to specific requests by relying upon its stated position in the Discovery Plan of the Parties for producing communications and emails while simultaneously attempting to thwart [Defendant's] attempt to compel production of communications and emails by, in essence, arguing that [Defendant's] motion fails to give [Plaintiff] and the Court notice as to which Requests for Production are at issue." [Doc. 162 at 2-3].

By way of background, in the May Order, the Court noted as follows:

> In Plaintiff's Second Status Report, it asserts that since the hearing "it produced 800 additional documents-the vast majority of which relate to the 'creation, development, and ownership' of Plaintiff's works of authorship." [Doc. 66 at 1]. In addition, in response to Defendant's Motion to Strike, Plaintiff again asserted, "The issues in [Defendant's] motion are resolved and [Defendant] makes no argument to the contrary in its response to the Status Reports. The Court should deny [Defendant's] motion to compel as moot. Defendant did not file a reply brief. Accordingly, it appears to the Court that Plaintiff has produced the information that Defendant sought, and therefore, the Motion to Compel [**Doc. 39**] is **DENIED AS MOOT.**

[Doc. 89 at 23].

As mentioned above, Plaintiff argues that Defendant did not meet and confer. It appears that the parties have discussed this discovery issue via email communications. Although the Court encouraged the parties to conduct telephone and video conferences, the undersigned did not order it. *See* [Doc. 89] (observing that the back-and-forth letters and emails do not seem to be helpful

and "encourage[ing] the parities to call one another or utilize video conferencing").[3] Plaintiff also argues that Defendant violated Local Rule 37.2, which provides that discovery motions shall include verbatim recitation of each discovery request and response subject of the motion or a copy of the actual discovery document that is the subject of the motion. E.D. Tenn. L.R. 37.2. Defendant filed the discovery at issue and Plaintiff's responses thereto. [Doc. 135-1 and Doc. 135-2]. In its Motion, Defendant listed the discovery requests that seek communications. [Doc. 135 at 2]. Accordingly, the Court finds Plaintiff's arguments not well taken.

The Court has considered the parties' remaining arguments, and the Court **ORDERS** Plaintiff to produce only the discovery that it has agreed to produce as shown in the parties' chart in [Doc. 159-10 at 4]. *See also* [Doc. 159 at 6] ("ACT is in the process of running the search terms."). First, in response to a number of discovery requests, Plaintiff stated that it will produce documents. [Doc. 135-2]. In addition, the parties have been working on search parameters and have come to some agreements. [Doc. 159-10 at 4]. Given Plaintiff's original response that it will produce documents, the Court finds it appropriate for Plaintiff to produce such documents.

The Court will not, however, require Plaintiff to run any additional searches. As mentioned above, the Court denied Defendant's motion to compel this discovery because Plaintiff represented to the Court, and Defendant did not respond, that Defendant's motion was moot. Defendant did not bring this issue to the Court's attention until July 30, 2019, the deadline for discovery. The parties' chart shows a number of disagreements (i.e., relevancy and overbroad) regarding the

---

[3] The Court notes that Defendant's email highlights the problems the parties create with respect to the telephonic meet and confers. *See supra* page 2. For instance, Defendant's email, dated July 30, 2019, at 10:00 a.m., requests a meet and confer that same day at 1:30 and 3:30 p.m. [Doc. 135-5 at 2]. Defendant's Motion was filed at 4:38 p.m. on July 30, 2019, claiming that Plaintiff "did not respond to Defendant's request to meet and confer prior to the filing of this motion." [Doc. 135 at 4].

proposed search terms. The Court does not have sufficient information to rule on such objections and declines to do so without any briefing. *See Hendricks v. Hazzard*, No. 2:11–cv–399, 2013 WL 4052873, at *3 (S.D. Ohio Aug. 12, 2013) ("The proponent of a motion to compel discovery bears the initial burden of proving that the information sought is relevant.") (quoting *O'Malley v. NaphCare Inc.,* 311 F.R.D. 461, 463 (S.D. Ohio 2015). Accordingly, Defendant's Motion to Compel [**Doc. 135**] is **GRANTED IN PART.** Plaintiff **SHALL** produce the above discovery on or before **November 25, 2019.**

      **C.**      **Defendant's Motion to Compel De-Designation [Doc. 158]**

Defendant requests that Plaintiff de-designate the Expert Report of David Nolte and the Amended Expert Report of David Nolte (collectively, "Expert Reports"). Defendant states that Plaintiff designated the Expert Reports as "Highly Confidential/Attorneys' Eyes Only" ("AEO"), meaning that defense counsel cannot discuss the findings of the Expert Reports or the information relied upon in the Expert Reports with Defendant. Defendant states that it is entitled to review the Expert Reports to determine whether the information relied upon by Nolte is true and accurate, particularly because Plaintiff expressed in open court that Nolte believes that Defendant's financial information is faulty and incomplete. Defendant asserts that Plaintiff's AEO designation has created an unfair contest where Defendant is forced to blindly defend against Plaintiff's alleged claims and is prohibited from consulting with its attorney on the fundamental issue of damages. Defendant states that as a practical matter, it is impossible to imagine how Nolte's testimony can be received at trial if the Expert Reports are AEO.

Further, Defendant states that the majority of the information relied upon by Nolte in reaching his damages calculation is Defendant's own financial information—information that Plaintiff has no privacy interest in. The remaining information relied upon by Nolte in his Expert

13

Reports includes Plaintiff's profits and revenues, which Plaintiff chose to put at issue. Defendant asserts that when a plaintiff chooses to place its own protected information at issue when pursuing claims against a defendant, the plaintiff must bear the consequences of its actions, including disclosing its protected information to the defendant, even where the defendant is a competitor.

Plaintiff responds [Doc. 171] that disclosure of its financial information would create substantial risk of serious harm that cannot be avoided by less restrictive means. Plaintiff states that Defendant agreed to work with a redacted version of the Expert Reports, and Plaintiff invited Defendant to provide a redacted report. Defendant did not do so. Plaintiff states that it will provide redacted Expert Reports by the first week of September. Plaintiff states that it will be harmed by downgrading the confidentiality designation because Defendant is a competitor and has admitted to copying Plaintiff's work product to obtain a contract with Plaintiff's former customer. Plaintiff states that in an effort to vie for the South Carolina contract, Defendant presented false qualifications to provide the career ready test that South Carolina asked for in a Request for a Proposal. Plaintiff explains that Defendant Chasteen reported she had a Ph.D., when she in fact does not. Plaintiff argues that a party's cost and profit information is routinely held as AEO, especially in matters between competitors. Plaintiff states that the information at issue is its pricing, cost, and profit margins and that the harm in permitting Defendant to see this information outweighs the importance of disclosure.

Defendant filed a Reply [Doc. 202], arguing that its interest in examining the evidence that will be used against it to establish damages far outweighs Plaintiff's desire to keep its financial information confidential, which is addressed by the Protective Order in place. Defendant states that Plaintiff cannot claim that it suffered monetary damages as a result of Defendant's conduct and simultaneously refuse to show Defendant how it calculated its alleged damages or what

evidence it intends to use to support them. Defendant states that it did not agree to redactions but offered redactions as an option and told Plaintiff that if such proved unsatisfactory, the parties would need to address the issue.

As the parties already noted, a Protective Order was entered in this matter. The Protective Order provides, in relevant part:

> "Confidential" designation shall mean that the document is comprised of confidential research, development, financial, or commercial information which is not publicly known and is of technical or commercial advantage to its possessor, in accordance with Fed. R. Civ. P. 26(c)(1)(G) and (b); and
>
> "Highly Confidential/Attorneys' Eyes Only" designation shall mean that the document is comprised of trade secrets or other extremely sensitive and confidential research, development, financial or other commercial information, the disclosure of which would create a substantial risk of serious harm that could not be avoided by less restrictive means.

[Doc. 34 at 2]. Information designated as AEO may be disclosed to attorneys, experts, and the Court. [*Id.* at ¶ 12].

"An AEO designation is the most restrictive possible protective order, as it confines dissemination of discovery materials only to the opposing party's attorneys and other consultants/experts specified in the agreement." *Penn, LLC v. Prosper Bus. Dev. Corp.,* No. 2:10-CV-0993, 2012 WL 5948363, at *4 (S.D. Ohio Nov. 28, 2012) (other quotations omitted). "In general, courts utilize "attorneys' eyes only" protective orders when especially sensitive information is at issue or the information is to be provided to a competitor." *Westbrook v. Charlie Sciara & Son Produce Co.,* No. 07-2657 MA/P, 2008 WL 839745, at *4 (W.D. Tenn. Mar. 27, 2008), *aff'd,* No. 07-2657, 2008 WL 11417501 (W.D. Tenn. Dec. 9, 2008). The party

that designated the documents as AEO has the burden of showing that such designation is proper. *Penn, LLC,* 2012 WL 5946363, at *4.

In establishing that the designation is proper, the party "must describe the alleged harm it will suffer from any disclosure with a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Id.* (internal quotation omitted); *see also K & M Int'l, Inc. v. NDY Toy, L.L.C.,* No. 1:13CV771, 2015 WL 520969, at *4 (N.D. Ohio Feb. 9, 2015) ("[M]any courts have required a party seeking [the AEO] designation to describe the alleged harm it will suffer from any disclosure with a "particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements."). "In the business context, such a showing requires specific demonstrations of fact, supported where possible by affidavits and concrete examples." *Id.* (quotations omitted). Further, "the court must balance the difficulties imposed upon [a party] against the need to protect information from abuse by competitors." *U.S. ex rel. Daugherty v. Bostwick Labs.,* No. 1:08-CV-354, 2013 WL 3270355, at *2 (S.D. Ohio June 26, 2013) (other quotations omitted).

First, Defendant argues that Plaintiff has taken the position that Defendant's financial information contained in the Expert Reports is incomplete. Defendant states that it needs to review such information and that Plaintiff has no privacy interest in Defendant's own financial information. The Court agrees that Defendant may review its own financial information. *See* [Doc. 34 at ¶ 7] (discussing when AEO information may be disclosed to others).

With respect to Defendant's request to de-designate Plaintiff's financial information, the Court finds this request well taken. Plaintiff has filed the Declaration of Steve Schuring [Doc. 171-6], its Vice President of Finance & Accounting. Schuring states that Defendant is Plaintiff's

competitor and that Plaintiff believes that Defendant stole work product and sold it at cheaper prices to Plaintiff's customers. [*Id.* at ¶ 2]. Schuring states as follows:

> 3. I reviewed page 9 of Mr. Nolte's report and the quoted and referenced document bearing Bates No. ACT000003206, designated "Highly Confidential Attorneys' Eyes Only" Under the Protective Order. This document contains Plaintiff's highly confidential and sensitive financial information. It includes Plaintiff's confidential pricing information relating to price proposals submitted by Plaintiff to the State of South Carolina in response to its Request for Proposal. This information maintained by Plaintiff as confidential. It is extremely sensitive and competitive, and if disclosed to Defendant it would put Plaintiff at a competitive disadvantage and at substantial risk of serious harm that could not be avoided by less restrictive means, because it would allow Defendant to use this information to continue to undercut Plaintiff's prices.
>
> 4. I reviewed pages 10-11 and 20-23 of Mr. Nolte's report and the quoted referenced document bearing Bates No. ACT0024654, and designated "Highly Confidential Attorneys' Eyes Only" under the Protective Order. This information by Plaintiff is confidential. It contains Plaintiff's highly confidential and sensitive financial information. It contains Plaintiff's metrics relating to Plaintiff's review, costs and expenses, and operating income for Plaintiff's program 40 WorkKeys Assessments. This information is extremely sensitive and competitive, and if disclosed to Defendant it would put Plaintiff at a competitive disadvantage and at substantial risk of serious harm that could not be avoided by less restrictive means because it would allow Defendant to use this information to unfairly compete with Plaintiff and continue to undercut Plaintiff's prices.

Plaintiff has not established that its financial information is appropriately designated per the terms of the parties' agreed upon Protective Order. The above Declaration reiterates the parties' definition of AEO in the Protective Order and makes the conclusionary statement that disclosing such information will cause Plaintiff competitive harm. *See* [Doc. 34 at ¶9] (stating that such information "shall be used only for purposes of this suit"). Further, the Court has balanced the difficulties imposed upon Defendant against the need to protect such information and finds that

Defendant needs such information to adequately prepare its defense in this case. Accordingly, Defendant's request is well taken.

## II.   CONCLUSION

Accordingly, for the reasons explained above, the Court **GRANTS IN PART** Plaintiff's Motion to Compel [**Doc. 113**] and **GRANTS IN PART** Defendant's Motion to Compel Discovery [**Doc. 135**], and **GRANTS** Defendant's Motion to Compel De-Designation [**Doc. 157**].

   **IT IS SO ORDERED.**

ENTER:

*[signature: Bruce Guyton]*
United States Magistrate Judge