UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| ACT, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:18-CV-186-TRM-HBG |
| | ) | |
| | ) | |
| WORLDWIDE INTERACTIVE NETWORK, | ) | |
| INC., and TERESA CHASTEEN, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This case is before the undersigned pursuant to 28 U.S.C. § 636, the Rules of this Court, and Standing Order 13-02.

Now before the Court is a Motion for Sanctions Due to the Spoliation of Evidence [Doc. 362], filed by Defendants Worldwide Interactive Network, Inc., ("WIN") and Teresa Chasteen. In summary, Defendants seek sanctions for Plaintiff's alleged failure to engage in discovery in good faith, the alleged destruction of evidence, or the alleged failure to produce relevant information. In response, Plaintiff seeks sanctions [Doc. 374] against defense counsel for filing the Motion. Defendants' Motion and Plaintiff's request for sanctions are ripe for adjudication. Accordingly, for the reasons explained below, the Court **DENIES** Defendants' Motion [**Doc. 362**] and **DENIES** Plaintiff's request [**Doc. 374**] for sanctions against defense counsel.

### I. POSITIONS OF THE PARTIES

Defendants' Motion [Doc. 362] seeks sanctions against Plaintiff "for failing to engage in discovery in good faith and for apparently destroying, or at least failing to produce, relevant information." [*Id.* at 1]. Defendants request that the Court give "a mandatory adverse inference

instruction that [Plaintiff] had documents in its possession which most likely would have been relevant to this case, but failed to preserve and produce the documents, and therefore, the jury should assume that [Plaintiff] feared [that] the contents of the destroyed documents would have been adverse, or detrimental to its case." [*Id.*]. Specifically, Defendants request that the Court instruct the jury that "at the time [Plaintiff] made its statements regarding the alignment and interchangeability of WIN's assessment in its June 2018 letters to job profilers and potential WIN customers in South Carolina, [Plaintiff] had no evidence to support those statements." [*Id.*]. In the alternative, Defendants seek a permissive inference instruction that Plaintiff "had documents within its possession which most likely would have been relevant to this case, but failed to preserve and produce the documents, and therefore, unless other evidence is provided to contradict this presumption, the jury may presume that [Plaintiff] feared [that] the contents of the destroyed documents would have been adverse or detrimental to its case." [*Id.*].

For grounds, Defendants state that Plaintiff has only produced approximately 178 email chains and that Plaintiff claims it is unable to produce additional emails because of its document retention program, which is to keep emails for their useful life, plus twelve (12) months. Defendants argue that despite Plaintiff's claim, most of the emails produced in this case were written in 2016 or earlier, which is more than one year prior to the time that the lawsuit was filed. In addition, Defendants argue that Plaintiff's Privilege Log contains emails from 2003, 2008, 2010, and 2013. Defendants question why Plaintiff has only produced one relevant email from 2017, which is when South Carolina issued its request for proposal. Defendants argue that South Carolina's decision to award Defendant WIN the contract was the event that led to the lawsuit. Defendants argue that they have requested all documents and communications pertaining to alignment between Plaintiff's WorkKeys assessment and any other readiness assessment,

2

including Defendant WIN's assessments, because the issue of alignment is directly relevant to Plaintiff's advertising claim and Defendant WIN's claims of intentional inference with business relations and false advertising. Defendants argue that Plaintiff has failed to explain why only one email exists from 2017, when all emails in existence in or created after May 2017 (one year from when the lawsuit was filed), should have been reserved and retained.

Further, Defendants state in addition to the e-mail retention and production issues, Plaintiff's Rule 30(b) witness, Marsha Stientjes, testified that historical documents were located in the archives. Defendants state that when they served discovery requesting such documents, Plaintiff responded that it destroyed such documents ten to fifteen years ago. Defendants state that later, Plaintiff produced documents, which consisted of correspondence from the 1990s and technical manuals from the early 2000s. Defendants state that while the Court has granted summary judgment on Plaintiff's copyright infringement claim, Defendant WIN is filing a motion to reconsider that decision, and the historical documents are directly relevant to its claim.[1] Further, Defendants claim that they did not move to compel Plaintiff to produce the historical documents earlier because they believed that such documents did not exist.

Plaintiff filed a Response [Doc. 374], denying any spoliation occurred. Plaintiff states that Defendants were not diligent in pursuing email discovery and resisted Plaintiff's efforts to agree on search terms until the close of discovery nine months ago. Plaintiff states that in the parties'

---

[1] Defendant WIN filed its motion to reconsider [Doc. 360] on April 9, 2020, arguing that the Court erred by entering summary judgment in favor of Plaintiff on the issues of copyright validity and infringement. Defendant WIN argued that Plaintiff jointly published a document with the Comprehensive Adult Student Assessment System ("CASAS") in 1997, which contained Level Descriptions similar to Plaintiff's allegedly protected Skill Definitions. [*Id.* at 1-2]. Defendant argued that the jointly published document contains an express disclaimer that the content of the document is not copyrighted and may be reproduced. [*Id.* at 4]. The Court, however, denied Defendant WIN's motion to reconsider [Doc. 372].

discovery plan, the parties agreed to cooperate in order to identify the proper custodians, search terms, and date ranges for email production requests. Plaintiff states that the parties met and conferred on August 2, 2019, and subsequently agreed on several search terms and custodians. Plaintiff states that later, the Court denied Defendant WIN's renewed motion to compel and ordered Plaintiff to produce only the discovery that it had agreed to produce. Plaintiff states that it produced additional documents in compliance with the Court's Order and that Defendants never voiced any dissatisfaction to Plaintiff.

Further, Plaintiff argues that it had no duty to preserve old emails until 2018 when it first learned of Defendant WIN's wrongful conduct at issue. Plaintiff states that the Court has already decided this issue when it found that there was no evidence that Plaintiff became aware of any indication of infringement before 2018. Plaintiff argues that Defendants' claimed suspicion about the number of emails Plaintiff produced is disingenuous. First, Plaintiff states that Defendants requested emails between Defendant WIN and Plaintiff's former employees, but the parties' relationship terminated after a dispute that resulted in a settlement agreement nearly a decade ago. Plaintiff argues that, therefore, there was minimal correspondence between the parties. Plaintiff avers that with respect to the pre-2012 emails, it had no duty to preserve these emails and that it only maintained them for their useful life plus twelve (12) months. Plaintiff clarifies that "useful life" means three months.

Plaintiff states that the fact that it procured and logged some old documents does not contradict its retention policy and practice. Plaintiff states that with respect to some emails, it was able to locate paper printouts because Plaintiff's legal department retained them due to issues with Defendant WIN's payments and performance of the publishing contract that Plaintiff terminated in 2010. In addition, Plaintiff states that during the deposition of Defendant Chasteen, she

4

referenced a 2001 agreement between the parties. Neither party had produced the 2001 agreement, but Plaintiff was able to locate and produce it. Plaintiff argues that Defendants have failed to show why the pre-2012 emails are relevant, and therefore, prejudicial for Defendants not to have them.

With respect to recent emails, Plaintiff states that Defendants cannot meet their burden in showing sanctions are warranted. First, Plaintiff states that Defendants' search terms do not encompass the recent emails. For instance, Plaintiff states that while Defendants claim that Plaintiff did not produce emails concerning the South Carolina contract, Defendants never requested them. Plaintiff argues that "South Carolina" was not on the list of search terms and that Defendants failed to identify why Plaintiff's internal discussions regarding the upcoming bid opportunity would be relevant to this case. In addition, Plaintiff argues that Defendants failed to identify any agreed upon terms with respect to WorkKeys 2.0 or how such information is relevant to this case. Plaintiff states that while Defendants claim they requested all documents and communications pertaining to alignment, the parties agreed on specific search terms related to alignment, and Plaintiff produced the documents resulting from its search.

Plaintiff argues that it cannot be sanctioned for destroying documents from the 1990s when it had no knowledge of the instant dispute until 2018. Plaintiff argues that its Rule 30(b)(6) witness, who left the company in 2012, testified that versions of the WorkKeys Applied Math Technical Manual were probably put in the archives, but she did not know if such documents were actually in the archives. Further, Plaintiff argues that Defendants have not shown any prejudice by not having such documents.

Citing to Rule 11 and 28 U.S.C. § 1927, Plaintiff moves for sanctions against defense counsel for filing the instant Motion. Plaintiff argues that this is the third motion Defendants filed within a month. Plaintiff argues that not only is the instant Motion baseless, but defense counsel

5

makes numerous false statements and misrepresentations in the Motion. For instance, Plaintiff argues that defense counsel makes false accusations that Plaintiff destroyed 2017 communications about the South Carolina bid, but Defendants never proposed, and Plaintiff was not ordered, to run such a search. In addition, Plaintiff states that Defendants erroneously argued that Plaintiff claimed that its product update was key to the issue of alignment. Plaintiff argues that it did not produce documents related to alignment between Defendant WIN's assessments and Plaintiff's assessments because they do not exist. Further, Plaintiff asserts that WorkKeys 2.0 was not included in the search terms that Defendants asked the Court to rule on. Third, Plaintiff argues that defense counsel makes the false statement that Plaintiff admitted that WorkKeys 2.0 had no substantive changes. Plaintiff argues this statement is not true, but in any event, Plaintiff was not required to produce such emails. Finally, Plaintiff states that defense counsel misleads the Court into believing that it moved for reconsideration on the issue of copyright authority in order to justify Defendants' argument that Plaintiff is allegedly hiding historical documents, but Defendant WIN's motion to reconsider had nothing to do with authorship. Plaintiff argues that defense counsel has violated his duties of professional responsibility.

Defendants filed a Reply [Doc. 386], arguing that their Motion should be granted because Plaintiff has failed to explain the inconsistencies in its discovery responses and productions and why certain evidence remains absent. Defendants state that Plaintiff has failed to produce a single piece of evidence showing that the false statements made in its June 2018 letters are truthful or that Plaintiff had a good-faith basis to believe them to be truthful when it made them. Defendants argue, therefore, an adverse inference is warranted. Defendants state that Plaintiff failed to comply with its duty to preserve and produce documents. Defendants dispute Plaintiff's assertion that it had no reason to know of potential litigation with Defendants prior to February 2018, but even if

6

this were true, Plaintiff should have implemented a litigation hold on the date that it filed the Complaint. Defendants argue that according to Plaintiff's purported document retention policy, it should have preserved all emails contained in Plaintiff's files fifteen (15) months prior to the date of filing the Complaint. Defendants state that Plaintiff has only produced one email from 2017 and has failed to explain why. Defendants argue that Plaintiff has never confirmed a litigation hold.

In addition, Defendants argue that Plaintiff originally claimed it destroyed historical documents, but Plaintiff recently produced historical documents dating back to 1997, with no explanation as to the late production. Further, Defendants argue that Plaintiff has an obligation to produce the documents identified in its initial disclosures, and it cannot now use the lack of search terms as an excuse to shirk its discovery obligations. Defendants state that while Plaintiff tries to excuse its failure on the parties' discovery plan, this does not mean that Plaintiff is not required to produce emails within the scope of Rule 26(b)(1). Defendants state that the fact that neither "South Carolina" nor "2.0" appear on the list of agreed-upon search terms is merely a technicality. Defendants state that emails relating to South Carolina and WorkKeys 2.0 are relevant. Defendants state that they also requested that Plaintiff search for all forms of the word "align." Defendants argue that even if the discovery plan were required to be followed, the search term limitation applies only to emails and not to other forms of electronically stored information or hard copies. Defendants state that Plaintiff cannot cherry-pick the historical documents it chooses to produce.

Finally, Defendants argue that sanctions are not warranted against their defense counsel. Defendants aver that Plaintiff failed to comply with the procedural process for raising Rule 11 violations. Defendants argue that their Motion is not frivolous.

7

Plaintiff filed a Reply [Doc. 390] to its request for sanctions arguing that defense counsel was objectively unreasonable to contend that Plaintiff can be sanctioned for following the parties' discovery plan. Further, Plaintiff asserts that it did implement a litigation hold before the action was filed and that Defendants never filed a motion to compel regarding a litigation hold implemented by Plaintiff. Plaintiff further states that it has sufficiently explained its document production in this case. In addition, Plaintiff states that Defendants have waived their argument that Plaintiff relied on a list of search terms for producing documents as Defendants' argument is tardy and irrelevant as to spoliation. Plaintiff further asserts that Defendants have waived any argument about initial disclosures. Finally, Plaintiff maintains that sanctions are warranted against defense counsel for filing the Motion.

## II.     ANALYSIS

The Court will first address Defendants' Motion [Doc. 362] and then turn to Plaintiff's request for sanctions.

### A.     Defendants' Motion

As summarized above, Defendants request sanctions against Plaintiff for failing to preserve or produce evidence in this case. In their Motion, Defendants cite to *Byrd v. Alpha All. Ins. Corp.,* which states that a court may sanction a litigant for spoliation of evidence if three conditions are met as follows:

> First, the party with control over the evidence must have an obligation to preserve it at the time it was destroyed. Second, the accused party must have destroyed the evidence with a culpable state of mind. And third, the destroyed evidence must be relevant to the other side's claim or defense.

8

518 F. App'x 380, 383 (6th Cir. 2013) (other citations omitted). "The party seeking the sanction bears the burden of proof in establishing these facts." *Id.* Defendants also cite to Rule 37(e) in support of their request, which provides as follows:

> **(e) Failure to Preserve Electronically Stored Information.** If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
> **(1)** upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>
> **(2)** only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>
> **(A)** presume that the lost information was unfavorable to the party;
>
> **(B)** instruct the jury that it may or must presume the information was unfavorable to the party; or
>
> **(C)** dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37; *see Katebian v. Missaghi*, No. 18-13379, 2020 WL 1285638, at *7 (E.D. Mich. Mar. 18, 2020) ("Notably, Rule 37(e) only applies if the information *cannot be restored or replaced through additional discovery.*") (Emphasis in *Katebian*).

Defendants argue that Plaintiff has not produced emails or historical documents. The Court will address these in turn.

### 1. Email Production

Defendants allege three main facts that they argue demonstrates Plaintiff destroyed evidence or failed to produce evidence. Defendants state that, according to Plaintiff's retention policy, emails are stored for fifteen (15) months. First, Defendants argue that Plaintiff produced

9

emails that are much older than fifteen (15) months. Second, Defendants argue that if Plaintiff followed its retention policy, it should have produced emails from 2017. Third, Defendants argue that Plaintiff has produced no evidence showing that it had a good-faith reason for making statements in letters sent to job profilers regarding alignment of Defendant WIN's assessments.

First, the Court agrees with Plaintiff that simply because Plaintiff produced older emails does not necessarily mean recent emails were intentionally destroyed or withheld. Plaintiff explains that it searched computer share drives, which are not automatically purged. [Doc. 374-5 at ¶ 4]. Timothy Conlon, Plaintiff's Senior Counsel, explained the following in his Declaration:

> 2. ACT located paper printouts of old emails and produced them. ACT searched its servers and share drives pursuant to Dkt. 159-10 at 4-8 and produced responsive documents.
>
> 3. Emails are stored on severs and in the cloud. ACT previously maintained emails for useful life plus 12 months. It was my understanding that, in the past, useful life for emails was three months. The current policy is that ACT maintains emails for 15 months from creation.
>
> 4. ACT employees can save particular documents of emails outside of their Outlook mailbox including to a share drive, desktop or c:\ drive. After an employee leaves ACT, emails saved to their desktop or c: \drive are deleted from their personal laptop as part of a destruction process to wipe the computer clean. Emails are deleted from the shares drives when an employee specifically deletes a particular email from a share drive.

[*Id.* at ¶¶ 2-4]. Similarly, Defendants' argument about the quantity of emails produced does not mean that Plaintiff has destroyed or withheld documents. Defendants' speculation is not sufficient to justify spoliation sanctions. Accordingly, Defendants' argument is not well taken.

In addition, Defendants argue that Plaintiff did not produce emails created in 2017 or later that relate to South Carolina or Workkeys 2.0. Defendants also assert that Defendant WIN requested that Plaintiff search for all forms of the word "align," which Defendant WIN sought in

10

Case 3:18-cv-00186-TRM-HBG   Document 448   Filed 07/16/20   Page 10 of 20   PageID #: 36542

its Request for Production of Documents Nos. 15 and 17. The Court finds that the instant matter is better characterized as a discovery dispute, which should have been brought to the Court's attention much earlier, rather than a situation warranting sanctions for spoliation. The Court agrees with Defendants that pursuant to Plaintiff's email retention policy, emails created in 2017 should have been preserved as the Complaint was filed on May 14, 2018. Thus, Plaintiff should have retained emails from at least February 2017, meaning that emails relating to South Carolina's request for proposals and Plaintiff's introduction of WorkKeys 2.0 would have been retained pursuant to Plaintiff's own retention policy. Plaintiff, however, does not state that such emails were destroyed pursuant to the retention policy but instead insists that Defendants never properly requested them during discovery and that the deadline expired in July 2019.

In the parties' discovery plan, Defendant WIN agreed to a "requirement that the parties cooperate to identify the proper custodians, search terms, and date ranges for email production requests." [Doc. 29 at 10]; *see Eshelman v. Puma Biotechnology, Inc.*, No. 7:16-CV-18-D, 2017 WL 2992095, at *3 (E.D.N.C. July 13, 2017) ("Puma makes no argument, beyond the purported relevancy of the documents, as to why the terms of the Joint Discovery Plan should not be enforced. The court assumes the agreement was the product of serious discussion and contemplation by two counseled parties and that it reflects the interests of the parties."). Defendants do not dispute that they did not request Plaintiff to search for the terms, "South Carolina" or "2.0." On July 8, 2019, approximately three weeks before the close of discovery on July 30, 2019 [Doc. 76 at 2], Defendants sent Plaintiff a list of search terms. Neither the term "South Carolina" nor "2.0" appears on the list of search terms. [Doc. 159-9 at 2-5]. On July 30, 2019, the deadline for discovery, Defendant WIN moved the Court to compel Plaintiff to produce the documents associated with the search terms provided, but the Court ordered "Plaintiff to

11

produce only the discovery that it ha[d] agreed to produce as shown in the parties' chart in [Doc. 159-10 at 4]." [Doc. 224 at 12].  The Court declined to order any further productions.

In their reply brief, Defendants take a different approach.  Defendants assert that Plaintiff did not produce several categories of documents, including documents relating to South Carolina and WorkKeys Assessment 2.0, as part of Plaintiff's initial disclosures.  Defendants assert that Plaintiff has an obligation to produce the documents identified in its initial disclosures.  Plaintiff states that initial disclosures were served two years ago.  Plaintiff argues that Defendants never moved to compel such documents, and in any event, their argument is meritless.  Plaintiff states that the documents at issue in the instant Motion are the summary report, which no longer exists, and emails for which Defendant WIN had every opportunity to provide search terms.  Plaintiff maintains that the relevant documents have been produced.

The Court agrees that Plaintiff has an obligation to produce documents that it identified in its initial disclosures and that the failure to produce such documents results in such documents being excluded, unless the failure to produce was substantially justified or harmless, which is not at issue here.  Fed. R. Civ. P. 37(c)(1).  Defendants, however, have requested an adverse inference instruction but have not shown that Plaintiff failed to preserve such documents.

Defendants also assert that they requested documents relating to the term "align."  The parties agreed on specific terms related to alignment as follows: (1) emails between the parties that contain all forms of the word "align," including "aligned" and "alignment," and (2) emails sufficient to show Plaintiff definition or definitions of the term alignment.  [Doc. 159-10 at 4].  Plaintiff states that it ran these searches and produced these documents.  Defendants state that Plaintiff's interpretation of the agreed upon search terms is overly narrow and that for example, Plaintiff's internal emails are also responsive.  The parties agreed, however, in July 2019 on what

12

to search with respect to this term. [*Id.*]. Accordingly, the Court finds Defendants' argument not well taken.

Finally, Defendants argue that Plaintiff has not produced documents or communications showing that Plaintiff had a good-faith reason for making the statements in its letters it sent to job profilers regarding Defendant WIN's assessments. Defendants state that instead, Plaintiff's Rule 30(b)(6) witness testified that she signed the letters without looking at Defendant WIN's assessments. Defendants state that as such, they are entitled to a jury instruction that when Plaintiff made its statements in the letter, they were made without any evidence supporting them. Plaintiff states that the documents that show its good faith include correspondence that was exchanged in June 2018 before Plaintiff sent the letters. Plaintiff states that such correspondence between counsel has already been produced. Plaintiff argues that Defendant WIN failed to provide any substantiation of alignment, although it acknowledged that it had to have substantiation to pursue its advertising claim. Defendants reply that Plaintiff's attempt to blame Defendant WIN for the false statement is nonsensical.

The Court finds that this is not a dispute about spoliation. Instead, this dispute is about the sufficiency of the evidence. Defendants argue that there is no evidence to show Plaintiff made the statements to job profilers in good faith. Plaintiff points to correspondence, which was produced, and claims that Defendant WIN did not provide substantiation. These are all arguments that the jury will weigh and consider, and they do not support a spoliation sanction. Accordingly, Defendants' argument is not well taken.

### 2. Historical Documents

Defendants also raise concerns over Plaintiff's production of historical documents. Defendants argue that Plaintiff's Rule 30(b)(6) witness testified that historical documents were

13

located in the archives. Defendants state that in Plaintiff's response to a discovery request, Plaintiff responded that such documents were destroyed ten to fifteen years ago. Defendants submit that subsequently, Plaintiff provided documents from the 1990s and 2000s, which show that such documents still exist. Marcia Stientjes, Plaintiff's Rule 30(b)(6) witness, testified as follows during her deposition:

> Q. There were versions that were developed prior to this; is that correct?
>
> A. Yes.
>
> Q. And were would those other versions have been kept?
>
> A. They were initially kept in, in our workforce development area, and then they were replaced they were probably – excuse me – probably put in archives.

[Doc. 363-4 at 7]. Later, Stientjes testified:

> A. Again, it would be the same thing. There were preliminary – there was a preliminary technical manual that I believe included reading for information and applied math.
>
> Q. Where would we find the preliminary documents, to your knowledge?
>
> A. Archives.

[*Id.* at 8]. In addition, she testified:

> Q. If we wanted to find the team members for each of these publications, how would that be done?
>
> A. I don't know.
>
> Q. Would those documents be in archives?
>
> Ms. Chapman: Object to the form. Calls for speculation.
>
> A. I don't—I don't know. I don't think they –we listed the team members for each of those, no.

14

[*Id.* at 9]. Finally, she testified as follows:

> Q. And do you think that minutes or historical comments in those meetings may be preserved in archives?
>
> A. It would be a summary report. It was in archives when I was here. I don't know after that.

[*Id.* at 11].

As mentioned above, Defendants primarily argue that Plaintiff's actions and statements are inconsistent with respect to historical documents. The Court notes that Plaintiff's actions and testimony have been somewhat confusing with respect to historical documents. For instance, when referring to earlier versions of reports that the WorkKeys team developed, Stientjes testified that such versions were "probably put in archives," [Doc. 364-4 at 7], she testified that technical manuals to her knowledge were put into archives, [*id.* at 8], documents listing team members for each publication were not in the archives, [*id.* at 9], and that a summary report was put into archives when she was with Plaintiff but does not know what happened to the summary report after that. [*id.* at 11]. Stientjes retired in 2012. Plaintiff's responses to Defendant Chasteen's discovery responses, however, state that archived paper material was destroyed ten to fifteen years ago, which would have been before Stientjes retired. In addition, it is not clear how Plaintiff was able to produce other historical documents.

The problem for Defendants, however, is it is not clear how these historical documents are relevant to the case. Defendants state that it is filing a motion to reconsider the Court's Order granting summary judgment to Plaintiff on its copyright claim against Defendant WIN and that the development of Plaintiff's assessments is directly relevant to the element of authorship. Defendants, however, did not move to reconsider based on authorship, and in any event, the Court denied Defendants' motion to reconsider. Further, Defendants state that the historical documents

15

are relevant to Plaintiff's copyright claim against Defendant Chasteen, the central issue of alignment, and Defendant WIN's false adverting claim, in addition preserving the record on appeal. [Doc. 363 at 7]. Defendants do not provide the Court with any information other than this conclusionary statement. In their reply brief, Defendants argue that the documents "are at least relevant to the issues of willful infringement and punitive damages." [Doc. 386 at 12]. Again, Defendants do not provide the Court with any information as to how they are relevant. Accordingly, the Court finds Defendants' arguments not well taken.

### B. Plaintiff's Request for Sanction

Plaintiff requests sanctions against defense counsel pursuant to Rule 11 and 28 U.S.C. § 1927. Plaintiff further states that defense counsel violated Tennessee Rules of Professional Conduct 3.3 and 8.4(c). For grounds, Plaintiff states that Defendants have filed three frivolous motions within a month (the instant Motion included). In addition, Plaintiff submits that Defendants' instant Motion contains numerous false statements and misrepresentations.

The Court will begin with 28 U.S.C. § 1927, which provides as follows, "Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. "For a court to award sanctions under § 1927, the attorney or party need not have acted with 'subjective bad faith' but must have acted with 'something more than negligence or incompetence.'" *Estate of Romain v. City of Grosse Pointe Farms*, No. 14-CV-12289, 2020 WL 3263823, at *2 (E.D. Mich. June 17, 2020) (quoting *Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater*, 465 F.3d 642, 646 (6th Cir. 2006)). Further, courts have explained that "[s]anctions are appropriate if an attorney 'abuses the judicial

16

Case 3:18-cv-00186-TRM-HBG   Document 448   Filed 07/16/20   Page 16 of 20   PageID #: 36548

process or knowingly disregards the risks that his or her conduct will needlessly multiply the proceedings.'" *Id.* (quoting *Sater*, 465 F.3d at 646).

In relevant part, Rule 11 requires attorneys who present motions to the Court to certify that the motion

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law.

Fed. R. Civ. P. 11 (b)(1) and (2). The Rule further provides that any motion for Rule 11 sanctions "must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b)." Fed. R. Civ. P. 11(c)(2). Further, a request for Rule 11 sanctions must not be filed or presented to the Court if the challenged motion is corrected within 21 days after service. Fed. R. Civ. P. 11(c)(2). Finally, "On its own, the court may order an attorney, law firm, or party to show cause why conduct specifically described in the order has not violated Rule 11(b)." Fed. R. Civ. P. 11(c)(3).

"The decision to award Rule 11 sanctions is within the discretion of the district court." *Teno v. Iwanski*, No. 3:18-CV-159, 2020 WL 2843217, at *4 (E.D. Tenn. June 1, 2020). The standard is whether the attorney's "conduct was reasonable under the circumstances." *Id.* (*citing Union Planters Bank v. L & J Dev. Co.*, 115 F.3d 378, 384 (6th Cir. 1997)). "This is to be viewed from an objective standpoint: 'A judge should not use hindsight to determine the reasonableness of an attorney's acts, but should use an objective standard of what a reasonable attorney would have done at that time.'" *Id.* (quoting *In re Triple S Restaurants, Inc.*, 519 F.3d

17

575, 579 (6th Cir. 2008)) (other citations omitted). The Advisory Committee Notes provide a number of factors a court may consider:

> Whether the improper conduct was willful, or negligent; whether it was part of a pattern of activity, or an isolated event; whether it infected the entire pleading, or only one particular count or defense; whether the person has engaged in similar conduct in other litigation; whether it was intended to injure; what effect it had on the litigation process in time or expense; whether the responsible person is trained in the law; what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case; what amount is needed to deter similar activity by other litigants.

Fed. R. Civ. P. 11 advisory committee's note.

Finally, Tennessee Rules of Professional Responsibility 3.3 and 8.4(c) require candor toward the Court and prohibit attorneys from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation. Tenn. R. Prof'l Responsibility 3.3 and 8.4(c).

As mentioned above, Plaintiff moves for sanctions, arguing that Defendants have filed three frivolous motions within a month. In addition, Plaintiff argues that defense counsel made four false statements in the instant Motion as follows: (1) Plaintiff destroyed its 2017 communications about the South Carolina bid, (2) Plaintiff contends that WorkKeys 2.0 is key to the issue of alignment, (3) Plaintiff produced no emails about the WorkKeys 2.0 development, and (4) Plaintiff admitted that WorkKeys 2.0 had no substantive changes. Finally, Plaintiff argues that defense counsel attempts to mislead the Court into believing that Defendant WIN moved for reconsideration on the issue of copyright authority and that the historical documents are directly related to the authorship at issue in Plaintiff's copyright infringement claim.

As an initial matter, the Court declines to consider Rule 11 sanctions because Plaintiff did not comply with the procedures for requesting such sanctions. "Before a party may file a motion

18

for Rule 11 sanctions, he or she must serve the opposing party with a copy of the proposed motion." *Teno*, 2020 WL 2843217, at *5 (citing Fed. R. Civ. P. 11(c)(2)). "If the opposing party withdraws or corrects the challenged paper, claim, defense, contention, allegation or denial within twenty-one days for service of the proposed motion, the motion is not to be filed with the court." *Id.* (citing Fed. R. Civ. P. 11(c)(2)). "This provision creates a 'safe harbor' in which a party may correct problems before becoming subject to potential sanctions." *Id.* Further, a Rule 11 motion must be separate from other motions or papers. *Rasmussen v. Fleetwood Enterprises, Inc.*, No. CIVA 06-CV-13883-DT, 2007 WL 1106138, at *7 (E.D. Mich. Apr. 10, 2007).

Defendants argue that Plaintiff did not comply with the procedural process for raising Rule 11 violations, and Plaintiff does not mention Rule 11 in its Reply [Doc. 390]. "When a party moves for Rule 11 sanctions, it must follow the Rule's strict procedural mandate." *Darnell v. Arthur*, 782 F. App'x 413, 417 (6th Cir. 2019). Accordingly, the Court will not consider Plaintiff's request for Rule 11 sanctions.

In addition, and as mentioned above, Plaintiff also requests sanctions, arguing that Defendants have filed three frivolous Motions within a month. The Court has already denied sanctions against Defendant WIN for filing its motions for sanctions [Doc. 355], which related to an expert's and Plaintiff's counsel's conduct at an expert's deposition. Further, the fact that Defendant WIN filed a motion to reconsider a ruling on summary judgment does not necessarily mean that defense counsel has unreasonably and vexatiously multiplied the proceedings. In its motion to reconsider, Defendant WIN acknowledged that the requirement of copyright notice had been eliminated but argued that the Court relied on cases that should not control the circumstances in the instant matter. While this argument did not prevail, the Court does not find that it unreasonably and vexatiously multiplied the proceedings. Finally, while the Court has denied

19

Defendants' instant Motion, this too does not mean that Defendants have unreasonably and vexatiously multiplied the proceedings. As the Court explained above, although Plaintiff did not produce some documents in this case, the Court simply finds that Defendants cannot meet their burden in establishing that spoliation occurred. The Court has considered Plaintiff's remaining arguments, but the undersigned does not find that they support sanctions.

### III. CONCLUSION

Accordingly, for the reasons stated above, Defendants' Motion for Sanctions Due to the Spoliation of Evidence [**Doc. 362**] and Plaintiff's request [**Doc. 374**] for sanctions against defense counsel are **DENIED**.

ENTER:

_____
United States Magistrate Judge